## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

**JESSICA LIGHT**
    **Plaintiff,**

    **vs.**

**NEW HAVEN BOARD OF EDUCATION, MARGARET-MARY GETHINGS in her individual capacity.**
    **Defendant**

**Plaintiff requests a trial by jury**

**March 30, 2022**

## COMPLAINT

## I.  INTRODUCTION

1.  Plaintiff Jessica Light, a longstanding public-school teacher for the New Haven Board of Education, resident of the City of New Haven, and parent to two children attending New Haven public schools, spoke out publicly as a citizen and as a parent, raising matters of public concern related to COVID-19 safety measures in the school system. An independent investigation carried out by outside counsel concluded that, in at least four instances, Plaintiff was the subject of retaliation. Plaintiff brings this action against Defendants New Haven Board of Education and Margaret-Mary Gethings (in her individual capacity) for their unlawful retaliation against Plaintiff because of her constitutionally protected speech in violation of the First Amendment to the United States Constitution and Connecticut General Statute § 31-51q. Plaintiff also asserts claims of false light and defamation against Defendant Gethings. Plaintiff seeks to recover damages for injuries sustained because of her violation of her constitutional rights and damage to her reputation.

MONARCH LAW LLC
36 RUSS STREET • HARTFORD, CONNECTICUT 06106
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

## II.  PARTIES

2.  Plaintiff Jessica Light (hereinafter "Plaintiff" or "Ms. Light") is an individual residing in New Haven, Connecticut.

3.  Defendant the New Haven Board of Education (hereinafter "NHBE") was and is an agent or entity of the City of New Haven with its principal place of business located at 54 Meadow Street, #3, New Haven, CT 06519.

4.  Defendant NHBE constitutes an employer, for purposes of Conn. Gen. Stat. § 31-51q.

5.  At all relevant times, Defendant Margaret-Mary Gethings ("Ms. Gethings") was the Principal at Worthington Hooker School, a public elementary school located in the City of New Haven. At all relevant times, Defendant Gethings was acting under color of state law and was employed by the NHBE.

## III.   JURISDICTION

6.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it asserts federal questions under 42 U.S.C. § 1983 and the First Amendment to the U.S. Constitution and because claims under Conn. Gen. Stat. § 31-51q also present a federal question. This Court has personal jurisdiction over each of the Defendants. This Court has supplemental jurisdiction over the state law common law claims pursuant to 28 U.S.C. § 1367.

7.   Venue is appropriate pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to this complaint occurred within this district.

## IV.   FACTS

### A.  Plaintiff's Protected Speech

8.  At all times relevant to this complaint, Ms. Light was a resident of the City of New Haven, a parent to elementary school students enrolled at Worthington Hooker School, and a teacher at Worthington Hooker School.

MONARCH LAW LLC
36 RUSS STREET • HARTFORD, CONNECTICUT 06106
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

9. Beginning in the summer of 2020, Ms. Light made several public statements and inquiries regarding the school district's response to the COVID-19 pandemic.

10. These statements or activity included, but were not limited to:

    a.    Participating in a car caravan with the New Haven Teacher's Union speaking openly about the need for a unified district-wide plan to reopen schools safely. Ms. Light's comments were televised.

    b.    Speaking out at New Haven Board of Education meetings raising concerns over the need for a unified district-wide plan to reopen schools safely and requesting answers to COVID-19 related health and safety questions.  In January 2021, Ms. Light voiced her disagreement with the anticipated return to in person instruction given that the vaccine would be available in short order. In February 2021, she urged the Board of Education to adopt a unified district wide policy regarding COVID-19. In March 2021, she raised questions about lack of consistency in COVID-19 safety rules across the district and the challenges of enforcing safety protocols.

    c.    A Facebook post from March 9, 2021 where in response to a post from another New Haven public school employee displaying data of reported COVID-19 cases at Worthington Hooker, Ms. Light in her capacity as a parent to children attending Worthington Hooker, responded "I don't think letters were sent" and "Hooker never sent a letter," referring to letters notifying parents of known cases of COVID-19 at the school.

**B. Defendants Repeatedly Retaliated Against Plaintiff for her Protected Activity**

11. Defendant Gethings and the Assistant Principal Jenny Clarino ("Ms. Clarino") were aware of Ms. Light's public comments, and over an extended period, Defendants systematically retaliated against Plaintiff for her above mentioned constitutionally protected speech.

MONARCH LAW LLC
36 RUSS STREET • HARTFORD, CONNECTICUT 06106
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

12. Defendant Gethings used her authority and influence to falsely accuse Ms. Light of wrongdoing and cast her in a negative light to colleagues and members of the New Haven community in which Ms. Light resides and where her children attend school.

13. Plaintiff was subjected to targeted hostility. The acts of Ms. Gethings and Ms. Clarino were designed to and had the effect of isolating Ms. Light from her peers and her community.

14. On November 2, 2020, a meeting was held with Ms. Gethings, Ms. Clarino, and Ms. Light during work hours. At this meeting, Ms. Gethings warned Ms. Light that not all her speech was protected by the first amendment and accused Ms. Light of creating a false narrative about the school.

15. Later, in November 2020, after the November 2, 2020 meeting, Ms. Gethings called Ms. Light into her office and told her that she should not be speaking to parents on her cell phone and accused Ms. Light of spreading hysteria and panic in the school community. Ms. Light, a member of the community and parent to two elementary school students at Worthington Hooker told Ms. Gethings that she could not sever ties with the community, but that she would never give any false information.

16. On March 9, 2021, after Ms. Light posted on Facebook as described supra, Ms. Light was pulled out of her classroom for an unscheduled meeting with Ms. Gethings and Ms. Clarino. This meeting lasted about ninety minutes. Ms. Gethings and Ms. Clarino referenced Ms. Light's comments at the Board of Education meeting regarding COVID-19 safety concerns and accused Ms. Light of a creating a negative narrative about the school.

17. At this meeting on March 9, 2021, Ms. Gethings accused Ms. Light of leaking information to parents about a Teacher ("Teacher X") having contracted COVID-19. Ms. Light repeatedly denied leaking any information regarding Teacher X. Without any basis, Ms. Gethings and Ms. Clarino put the burden on Ms. Light to identify where the leak had come from, even though she had nothing to do with it.

18. On March 12, 2021, in response to Ms. Light's public Facebook post, Ms. Gethings emailed the staff at Worthington Hooker, "It has been brought to our attention from several community members including staff and parents that WHS is being mentioned with inaccurate information which also includes social media. We ask that if you are aware of any negative talk or postings, to please help protect and preserve our school. We hope that people will refrain from making their own inferences and/or misrepresenting our school. We must always keep in mind that we are working together and not against each other."

19. On March 22, 2021, after Ms. Light had spoken publicly at the Board of Education Meeting about COVID-19 safety measures, Ms. Gethings emailed Ms. Light expressing her disappointment at Ms. Light for discussing the issue publicly at the Board of Education meeting.

20. On March 26, 2021, Ms. Light was scheduled for a 15-minute TEVAL meeting.  Ms. Gethings and Ms. Clarino reprimanded Ms. Light for over an hour for Ms. Light's public statements to the Board of Education on March 22, 2021 and having posted on Facebook regarding COVID (the March 9, 2021 post referenced supra). Ms. Gethings stated to Ms. Light that the Facebook post was "not your place" and referenced "other staff people who feel it's very hard to work with you because of your public comments."   At this meeting Ms. Gethings and Ms. Clarino, without any basis, once again falsely accused Ms. Light of spreading rumors about Teacher X. Ms. Gethings and Ms. Clarino threatened Ms. Light that Teacher X would be filing an official complaint against Ms. Light related to the alleged public statements.

21. On March 26, 2021, at this same meeting, Ms. Gethings informed Ms. Light that she was being reassigned from her third-grade position to first grade for the 2021-2022 school year. At Worthington Hooker, Ms. Light had only taught the third grade and her teaching experience for 14 years in the New Haven Public Schools was in third, fourth, fifth, and sixth grades. Ms. Light made clear that teaching first grade was challenging for her because she suffered from

MONARCH LAW LLC
36 RUSS STREET • HARTFORD, CONNECTICUT 06106
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

severe dyslexia which makes it difficult to teach the phonics curriculum for first grade. Ms. Gethings explained that Ms. Light needed to be reassigned because her son was entering the third grade and there were concerns about having a parent teaching the same grade level. There is no districtwide policy or school policy that would prevent a parent teaching the same grade as their child. When asked during the investigation the rationale for moving Ms. Light to the first grade, the investigation revealed that "Ms. Gethings and Ms. Clarino offered different explanations" and that there "were some aspects of the explanations provided by Ms. Gethings and Ms. Clarino that were not consistent." Of note, Ms. Gethings and Ms. Clarino said in the investigation that a reason Ms. Light was reassigned from third grade to first grade was that Paul Salem a grade level partner had requested not to have Ms. Light in his class. The investigation revealed that (1) Mr. Salem never requested any assignment changes, (2) that Mr. Salem's only question to Ms. Gethings was how best to navigate the relationship if he had Ms. Light's son in his class, and (3) Mr. Salem's comments came only after a decision had been made to reassign Ms. Light, so it couldn't have had any bearing on the decision.

22. On March 31, 2021, Ms. Light was asked to attend a meeting with Ms. Gethings, Ms. Clarino, the school Union representative (Ms. Morrison) and Teacher X who had contracted COVID-19. Without any proof or even a claim by anyone with knowledge that Ms. Light had been the source of the leak regarding Teacher X, Ms. Light was one again falsely accused of violating Teacher X's privacy. At this meeting, among other things it became clear to Ms. Light that Teacher X believed that Ms. Light had violated her privacy because Ms. Gethings and Ms. Clarino had told Teacher X that Ms. Light had told parents and posted online about Teacher X having COVID-19. Ms. Gethings and Ms. Clarino continued to perpetuate this lie about Ms. Light even though Ms. Light had denied ever telling anybody about Teacher X's medical condition and they had no evidence to support this accusation.

MONARCH LAW LLC
36 RUSS STREET • HARTFORD, CONNECTICUT 06106
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

23. At this meeting on March 31, 2021, Teacher X disputed Ms. Light's claims that she had emailed Ms. Light letting her know that she had COVID-19. When Ms. Light showed Teacher X a screen shot of an email Teacher X had sent informing her that she had COVID-19, Teacher X tried to apologize to Ms. Light. Rather than allow Teacher X to apologize, Ms. Gethings interrupted Teacher X's apology and continued to suggest that Ms. Light had been the source of the leak. Ms. Gethings' animus toward Ms. Light was so strong that she was unwilling to allow for a simple apology to Ms. Light for what was shown to be an inaccurate statement by Teacher X.  In front of Teacher X, Ms. Gethings stated to Ms. Light, "We hear that you are saying it wasn't you but I need you to know that every person said you were the source." When Ms. Light asked who these people were, Ms. Gethings continued berating Ms. Light stating, "I am not giving you a name I am giving you my truth that there is not another person in our community whether it is a parent or a teacher that has not said that you were how they found out." Ms. Gethings said she wouldn't tell Ms. Light who the people were out of fear that Ms. Light would go to these sources and drag them in. The investigation found that there were no such individuals and that Ms. Light had never done any negative actions toward any of her colleagues.

24. Without any basis, Ms. Gethings and Ms. Clarino had reached out to teachers and parents asking if Ms. Light had in fact stated anything about Teacher X's medical condition impugning Ms. Light's integrity and creating false rumors about Ms. Light.

25. On or about April 20, 2021, Ms. Light was asked to attend a meeting with Ms. Gethings and Ms. Clarino. Ms. Light asked her union representative to be present. Ms. Gethings continued to express her concern over Ms. Light's public speaking and the Facebook post.

26. On or about April 30, 2021, Ms. Light filed a complaint alleging retaliation by Ms. Gethings and Ms. Clarino.

**MONARCH LAW LLC**
**36 RUSS STREET • HARTFORD, CONNECTICUT 06106**
**TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039**

27. On or about May 26, 2021, Ms. Light needed to use the bathroom around dismissal time and asked a paraprofessional Ms. Maffuid, who regularly watched classes as part of her job responsibilities, to watch her class.  Although it is extremely common to watch a teacher's class for a short period, the following day, Ms. Gethings called Ms. Maffuid into her office and shut her door asking Ms. Maffuid why she had covered for Ms. Light and stating that teachers cannot leave their class.  Ms. Gethings admonished Ms. Maffuid in a reprimanding tone for assisting Ms. Light. Ms. Maffuid was confused because she did not believe she had done anything wrong in helping Ms. Light for a few minutes.  Immediately after Ms. Maffuid told Ms. Light about Ms. Gethings' reprimand for helping Ms. Light.

28. On or about June 7, 2021, Ms. Gethings and Ms. Clarino filed a cross- complaint against Ms. Light (hereinafter the "cross-complaint"). Upon information and belief, Ms. Gethings and Ms. Clarino claim that Ms. Light engaged in the following conduct:

    a. Submitted and fabricated false statements to Human Resources in retaliation for their decision to change Ms. Light from the Third Grade to the First Grade for the 2021-2022 school year.

    b. Intentionally created a hostile work environment for Administration and Staff,

    c. Undermined administration, breached confidentiality and created intentional and unnecessary anxiety for school families.

29. The filing of the cross-complaint was a retaliatory action by Ms. Gethings and Ms. Clarino.

30. An independent investigation was done by Berchem & Moses into this cross complaint, and none of Ms. Gethings or Ms. Clarino's allegations against Ms. Light were substantiated. The investigation fully exonerated Ms. Light of any wrongdoing. To summarize some of the findings, "there was no evidence that Light ever intentionally sought to create hostility for anyone"; "no evidence that [Ms. Light's public statements] actually caused any meaningful disruption in the school environment", "any implication that Light falsified the complaint as

MONARCH LAW LLC
36 RUSS STREET • HARTFORD, CONNECTICUT 06106
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

retaliation for it was not borne out", "Light's public speech, while at times controversial, does not create a hostile work environment".

31. On or about August 24, 2021, during the pendency of the investigation into allegations of retaliation brought by Ms. Light, Mr. Salem, a third-grade teacher with whom Ms. Light had a positive working relationship, contacted Ms. Light. He shared with Ms. Light that he had found documents printed on his school printer that included emails from Ms. Light's husband, David Bianchine, to Ms. Gethings and Ms. Clarino about Mr. Bianchine and Ms. Light's child, who was a student at Worthington Hooker Elementary in Ms. Alden's class. Mr. Salem was contacting Ms. Light because he believed Ms. Light had printed these sensitive documents. Ms. Light had not printed these documents. Rather as the investigation by Berchem & Moses revealed, the documents had been printed by Ms. Gethings. Ms. Gethings could not explain why these sensitive documents pertaining to Ms. Light's son, a student at Worthington Hooker, would have been printed or placed on Mr. Salem's printer.  The investigation concluded that Ms. Gethings' actions suggested retaliation against Ms. Light.

**C.  Plaintiff files an official complaint of retaliation**

32. Having been subjected to a constant barrage of hostile acts, as further detailed in the investigative report by Berchem & Moses, Ms. Light filed a complaint of retaliation with the NHBE.

33. On or about April 30, 2021, Ms. Light filed a formal complaint of retaliation based on her constitutionally protected speech with Human Resources.

34. For months, Ms. Light was strung along by Human Resources with no indication of concrete steps to address her serious complaint of retaliation.

35. In mid-summer of 2021, Taryn Bonner of Human Resources told Ms. Light that the investigation had been tainted by the administration (the very people that were being accused of retaliation) and therefore needed to be outsourced.

MONARCH LAW LLC
36 RUSS STREET • HARTFORD, CONNECTICUT 06106
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

36. In August of 2021, only after Ms. Light hired an attorney to represent her interests in this matter, the NHBE hired Berchem & Moses to conduct an internal investigation into the issues of retaliation brought forth by Ms. Light.

37. In August of 2021, the 2021-2022 school year began at Worthington Hooker. Ms. Light began her year as a first-grade teacher, following Ms. Gethings' decision to transfer Ms. Light from third grade to first grade, in retaliation for Ms. Light's public speech.

38. Ms. Light began the school year feeling isolated from her peers and administration. She was eating lunch alone and observing other teachers keep their distance from her.

39. At the beginning of the school year, Ms. Clarino would come into Ms. Light's classroom and watch Ms. Light teach without giving Ms. Light any feedback.

40. At the beginning of the school year, none of the supplies Ms. Light has ordered had arrived. Ms. Gethings falsely accused Ms. Light of not filling out the form.

41. On September 15, 2021, the school celebrated National Dot Day. Most of the teachers were told to wear polka dots to celebrate the day. Ms. Light was not approached by the administration with this information. A parent asked Ms. Light why she was the only teacher without polka dots.

42. On October 7, 2021, Ms. Light learned from a teacher at Worthington Hooker, Tim Shortt, who had recently been elected as the school's union steward that at a meeting he had with Ms. Gethings and Ms. Clarino as union steward, Ms. Gethings and Ms. Clarino stated that a few teachers thought that Mr. Shortt might be in "cahoots with Ms. Light."

43. During the investigation Ms. Gethings and Ms. Clarino denied discussing Ms. Light with Mr. Shortt, and the investigation concluded that Ms. Gethings and Ms. Clarino lacked credibility on the issue. In short, the investigation concluded that the preponderance of the evidence "supports that Ms. Clarino and Ms. Gethings made negative commentary regarding Ms. Light in the meeting with Mr. Shortt, suggesting they were working together

to undermine building administration." Most disturbingly, this instance of retaliation

occurred while the investigation into prior instances of retaliation was taking place.

44. The comments made by Ms. Gethings and Ms. Clarino were intended to undermine Ms.

Light's union representation at the school.

45. In October 2021, Ms. Light began to suffer severe emotional distress from the months of

retaliation and isolation in the workplace and lack of finality or response to her complaint.

46. Ms. Light's treating physician diagnosed Ms. Light with "PTSD triggered by a hostile work

environment".

47. Ms. Light, under medical advice went out on approved family medical leave due to her

diagnosis. Concurrently with her FMLA, Ms. Light took sick days in order to receive

payment for her time off.  The administration never offered to place her on paid leave

pending the outcome of the investigation.

**D.  The independent investigation by Berchem & Moses concludes Ms. Light engaged in
protected activity and was retaliated against by Ms. Gethings for her public speech**

48. The investigation was concluded in December 2021 and a report summarizing the

investigation and its findings was issued on or about December 3, 2021 (a copy of the

report is attached hereto as Exhibit A to this Complaint).

49. Among other things, the investigation concluded that Ms. Light had engaged in protected

speech and that she had been retaliated against in at least four instances by Ms. Gethings.

50. The investigation also concluded, contrary to Ms. Gethings assertion, that there was no

evidence that Ms. Light's comments actually caused any meaningful disruption in the

school environment.

51. The investigation concluded that the accusations regarding Ms. Light and the spread of

information regarding Teacher X was unfair to Ms. Light in several respects. The

investigation recognized that Ms. Light was brought into a meeting by Ms. Gethings to

make peace with Teacher X for conduct that Ms. Light had denied engaging in and for
which there was no evidence. The investigation concluded that Ms. Gethings gave no
serious consideration to Ms. Light's statements denying wrongdoing and that Ms. Gethings
shamed Ms. Light for denying the conduct. The investigation concluded that Ms. Gethings
lied about the fact that "every person" said that Ms. Light was the source of
misinformation.  The investigation concluded that the acts of Ms. Gethings toward Ms.
Light regarding Teacher X were in retaliation for her unrelated Facebook posts.

52. The investigation noted that Ms. Light continues to suffer harm from this incident in that
the false light in which Ms. Light was placed by Ms. Gethings strained the relationship
between Teacher X and Ms. Light.

53. The investigation concluded that Ms. Gethings retaliated against Ms. Light on May 26,
2021, several days after Ms. Gethings had learned that Ms. Light had filed a retaliation
complaint with Human Resources.

54. The investigation concluded that the "preponderance of the evidence indicates that Ms.
Gethings placed the documents there or printed them directly to Mr. Salem's printer,
whether from his classroom or elsewhere. Given that there is no legitimate reason for Mr.
Sale to have been given these documents, this suggests retaliation against Ms. Light."

55. The investigation also concluded that there was a continued pattern by Ms. Gethings to
separate Ms. Light from the support of her colleagues as evidenced by the admonishment of
Ms. Maffuid, the papers placed on Mr. Salem's printer which could present Ms. Light and
her husband as difficult parents and the comment to Mr. Shortt suggesting that any alliance
with Ms. Light is indicative of an effort to take down the administration.

56. The investigation determined that Ms. Clarino spoke to a potential witness during the
pendency of the investigation after being instructed not discuss the investigation while it
was pending,

**MONARCH LAW LLC**
**36 RUSS STREET • HARTFORD, CONNECTICUT 06106**
**TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039**

**E. Despite conclusive evidence of retaliation by Ms. Gethings, including efforts by Ms. Gethings to obstruct the investigation, the NHBE does nothing to protect Ms. Light from further retaliation by Ms. Gethings continuing to harm Ms. Light.**

57. At the conclusion of the investigation, Ms. Light reached out to Human Resources to see what would be done to successfully reintegrate her into the classroom and protect her from further retaliation by Ms. Gethings.

58. Ms. Light requested that in light of the outcome of the investigation substantiating her claims of retaliation, that the District retroactively reinstate the PTO days that she used during her FMLA leave due to the severe emotional distress suffered because of the retaliation.

59. Based on the serious findings of retaliation in the Investigative Report, many which occurred after Ms. Light came forward with the complaint of retaliation, Ms. Light expected that Ms. Gethings would be removed from any supervisory role vis-à-vis Ms. Light.

60. Ms. Light first contacted Human Resources on December 9, 2021 to discuss her return to work. In an email from December 9, 2021, Ms. Light wrote to the school administration stating how she wanted to discuss a timeline, process and assurances for a safe return to school. Among other things, she asked the district to consider certain restorative actions including:

    a. Retroactively converting her FMLA leave to paid leave, as the investigation proved her workplace was unduly hostile.

    b. Assurances that her position as a third-grade teacher would be restored next school year, as the investigation showed the decision to move her grade was based on "conflicting" reasons and false fabricated statements and her son would not be in the third-grade next year.

   c.   A restorative justice process with her colleagues, as the investigation revealed

        negativity and hostility toward Ms. Light.

61. Human Resources delayed any type of meeting with Ms. Light, regarding Ms. Light's

    return to work.

62. Ms. Light's treating doctor submitted a note in January 2022 stating:

    > On 5/12/21, she began reporting increased anxiety and decreased mood as she began feeling she was being pushed out of the school for being outspoken about what COVID protocols should be in place.  She reported being taken off committees, having her regular 3rd grade teaching assignment taken from her and given 1st grade for which she felt ill prepared, tensions increased as she was accused of things she did not do. Etc. These events triggered her anxiety, depression, and PTSD.  She has been out on medical leave for this reason.  However, since the investigation into this supported the patient's claims, she has improved significantly and is ready and able to return to work. However since the principal, who was the subject of the investigation, still remains in the same position, I feel this would again trigger her symptoms. My recommendation is that Ms. Light be allowed to work where she would not have contact with the principal, Ms. Gethings.  If that is not possible, safeguards must be put in place to prevent any retaliation which might cause a recurrence or exacerbation of symptoms.

63. All the while, Ms. Light was using her sick time to remain out of work waiting for a

    substantive plan to return to work with safeguards in place.

64. On Friday January 14, 2022, after weeks requesting a meeting and with no concrete

    response to her December 9th email, a virtual meeting was held. Present at the meeting were

    Taryn Bonner, Labor Relations Manager, Lisa Mack, Human Resources Director, Pat

    Delucia and Leslie Blatteau, Executive Leaders for Local 933 and Ms. Light.

65. At the outset of the meeting, the administration informed Ms. Light that the school would

    not be converting her FMLA leave to paid leave and/or restoring the sick days she used to

    cover her FMLA due to PTSD suffered because of retaliation from her supervisors.

66. At the meeting, among other things, Ms. Light inquired of Ms. Bonner and Ms. Mack, what

    steps would be taken to protect her and her children from retaliation by Ms. Gethings in

    light of the conclusive findings in the investigation. The Union President, fully supported

MONARCH LAW LLC
36 RUSS STREET • HARTFORD, CONNECTICUT 06106
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

Ms. Light's request for safeguards to ensure Ms. Light could return to work safely. Several safeguards were proposed by the union including:

   a.  Ensuring that Ms. Light has union representation at all meetings with her administrators, not just disciplinary

   b.  Appointing a different instructional manager (rather than Ms. Gethings or Ms. Clarino) to oversee Ms. Light's performance and that Ms. Light not be given a rating for the 2021-2022 school year.

   c.  Scheduling a mediation with Ms. Gethings and a separate one with Ms. Clarino before Ms. Light returns to work to begin a constructive dialogue prior to Ms. Light reentering the school building.

   d.  Allowing Ms. Light to do some grade level observation prior to reintegrating into her first-grade class.

67. At this meeting, Ms. Bonner stated that the requests seemed realistic but that she would have to do some work and circle back with Ms. Light and the Union.

68. Ms. Light made clear, as did the union Vice President Mr. Delucia, that if there was a delay from the NHBE in continuing the discussion regarding safeguards, that Ms. Light would continue to be out on sick leave given her doctor's notes. Ms. Bonner stated that the call would be concluded and that she would work like "an energizer bunny" to get a response to Ms. Light and the union.

69. Ignoring the agreements of January 14, 2022, and without providing any response to the discussion points raised in that meeting relative to safeguards, on January 18, 2022, Ms. Mack sent Ms. Light a letter stating that Ms. Light was expected to return to work on Tuesday January 18, 2022.

70. On January 18, 2022, Ms. Light responded to Ms. Bonner, letting her know that the letter was inconsistent with what was discussed at the January 14, 2022 meeting where

MONARCH LAW LLC
36 RUSS STREET • HARTFORD, CONNECTICUT 06106
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

safeguards for her safe return to school were discussed. Ms. Light noted that "I have not

received any substantive response from you or the District to any of the points I raised or

that the union raised on my behalf. Nor has there been any interactive process to address

my doctor's notes and the implementation of safeguards to ensure my physical and mental

health considering the retaliation which I suffered and may still be subjected to.  As I said at

the meeting, if appropriate safeguards are not put in place, I cannot return to work, nor

should I be expected to, and I will be taking another sick day on January 18, 2022. I am

ready and willing to return to work when it is safe to do so, and nothing has been done to

address my legitimate concerns.  Our last communication was that you were arranging

mediation and were going to get back to me by the end of the day Friday, because my

doctor has authorized me to return once the environmental health risks have been

addressed. Please call if you would like to discuss next steps.  I truly want to return as soon

as possible."

71. On January 19, 2022, the union wrote to Human Resources in support of Ms. Light, "as we

continue to wait for updates regarding the schedule for the agreed upon return-to-work

mediation for Ms. Light at Worthington Hooker, the union would like to ask for

Ms. Light to be put on paid administrative leave from Tuesday, January 18, 2022 until the

date of the mediation/her return to work. The mediation is a necessary component for

Ms. Light's safe return and she is ready to participate. We are waiting on HR to schedule

the mediation so Ms. Light can get back to work."

72. On January 24, 2022, Ms. Light reiterated to Human Resources that she is simply

requesting a non-hostile workplace free of retaliation, which she would expect would be

provided to all employees.

MONARCH LAW LLC
36 RUSS STREET • HARTFORD, CONNECTICUT 06106
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

73. On January 26, 2022, Ms. Bonner, without any substantive response to the safeguards proposed on January 14th stating that it was the District's expectation that Ms. Light return to work as directed, threatening that "failure to do so may be considered insubordination".

## V.    CAUSES OF ACTION:

### A.  COUNT ONE: VIOLATION OF CONN. GEN. STAT. § 31-51q (as to Defendant NHBE)

1- 73.  The allegations above are incorporated by reference into this Count as if fully set forth herein.

74. Ms. Light exercised her rights to free speech and assembly protected by the first amendment to the United States Constitution and/or §§ 4 and 14 of article first of the Connecticut Constitution.

75. Plaintiff's speech was protected under § 31-51q of the Connecticut General Statutes.

76. Plaintiff's exercise of her constitutional rights did not substantially or materially interfere with her bona fide job performance or with her working relationship with her employer.

77. Defendant had knowledge of Plaintiff's protected speech and retaliated repeatedly against Plaintiff by engaging in the conduct described above.

78. As a result of Defendant's conduct, Plaintiff has suffered damages, including but not limited to, lost compensation, wages, and benefits, emotional distress, and loss of enjoyment.

79. Defendant acted with reckless disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

80. Plaintiff has also incurred and continues to incur attorney's fees and costs.

MONARCH LAW LLC
36 RUSS STREET • HARTFORD, CONNECTICUT 06106
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

**B.  COUNT TWO: RETALIATION BASED ON THE EXERCISE OF FREE SPEECH IN VIOLATION OF 42 U.S.C. § 1983 (as to Defendant Gethings)**

1- 73.  The allegations above are incorporated by reference into this Count as if fully set forth herein.

74. Based on the foregoing, Defendant Gethings retaliated against Plaintiff in violation of 42. U.S.C. § 1983 and the First Amendment.

75. Plaintiff spoke as a citizen on matters of public concerns and Defendant Gethings had knowledge of Plaintiff's constitutionally protected speech.

76. Defendant Gethings' conduct violated Plaintiff's civil rights guaranteed by the First Amendment to the United States Constitution as enforced through 42 U.S.C. §1983.

77. Because of Defendant Gethings' intentional retaliation against Plaintiff, Plaintiff has sustained damages, including but not limited to, lost compensation, wages and benefits, emotional and physical distress, damage to reputation, and loss of enjoyment of life.

78. Plaintiff has also incurred and will continue to incur attorney's fees and costs.

79. Defendant Gethings' reckless indifference to Plaintiff's federally protected rights entitles Plaintiff to an award of punitive damages.

**C.  COUNT THREE: FALSE LIGHT (as to Defendant Gethings)**

1-73.    The allegations above are incorporated by reference into this Count as if fully set forth herein.

74. The aforementioned conduct by Defendant Gethings placed Plaintiff in a false light which would be highly offensive to a reasonable person.

75. Defendant Gethings had knowledge of or acted and continues to act in reckless disregard as to the false light in which Plaintiff would be placed.

76. The aforementioned actions of Defendant Gethings placed Plaintiff in a false light for which the Plaintiff has suffered injuries and damages.

77. As a consequence of Defendant Gethings' actions against Plaintiff, Plaintiff has sustained damages, including but not limited to, lost compensation, wages and benefits, emotional and physical distress, damage to reputation and loss of enjoyment of life.

**D.  COUNT FOUR: DEFAMATION (as to Defendant Gethings)**

1-73.   The allegations above are incorporated by reference into this Count as if fully set forth herein.

74. Defendant Gethings published defamatory statements.

75. The defamatory statements identified the Plaintiff to a third person or third persons.

76. The defamatory statements were published to a third person or third persons.

77. Plaintiff's reputation suffered injury because of the statement(s).

78. Defendant Gethings made the statement with actual knowledge that it was false or with reckless disregard of whether it was false.

79. Because of Defendant Gethings' actions against Plaintiff, Plaintiff has sustained damages, including but not limited to, lost compensation, wages and benefits, emotional and physical distress, damage to reputation and loss of enjoyment of life.

80. Plaintiff is entitled to punitive damage where Defendant Gethings acted with actual malice when publishing the defamatory statements.

MONARCH LAW LLC
36 RUSS STREET • HARTFORD, CONNECTICUT 06106
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that the following relief be awarded:

1.  Compensatory economic and non-economic damages.

2.  Past and future economic damages.

3.  Punitive damages.

4.  Interest.

5.  Plaintiff's costs and attorney's fees.

6.  Prejudgment and post-judgment interest available under law.

7.  Such other legal and equitable relief as the Court may deem just.

Done at Hartford, Connecticut this 30th day of March, 2022.

THE PLAINTIFF,
JESSICA LIGHT

*/s/ Anthony J. Interlandi*

BY: _____

Anthony J. Interlandi (ct27512)
MONARCH LAW LLC
tony@monarchlawct.com

MONARCH LAW LLC
36 RUSS STREET • HARTFORD, CONNECTICUT 06106
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039