UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **JESSICA LIGHT,** | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | **3:22-cv-00425 (AVC)** |
| | : | |
| **v.** | : | |
| | : | |
| **NEW HAVEN BOARD OF EDUCATION,** | : | |
| **MARGARET-MARY GETHINGS in her** | : | |
| **individual capacity** | : | |
| **Defendants.** | : | **MAY 12, 2022** |

## ANSWER AND AFFIRMATIVE DEFENSES

By and through their attorneys, the New Haven Board of Education ("the Board") and

Principal Margaret Mary-Gethings (collectively "Defendants") hereby respond to Jessica

Light's complaint as follows:

## I.    INTRODUCTION

**1.    Plaintiff Jessica Light, a longstanding public-school teacher for the New Haven Board of Education, resident of the City of New Haven, and parent to two children attending New Haven public schools, spoke out publicly as a citizen and as a parent, raising matters of public concern related to COVID-19 safety measures in the school system. An independent investigation carried out by outside counsel concluded that, in at least four instances, Plaintiff was the subject of retaliation. Plaintiff brings this action against Defendants New Haven Board of Education and Margaret-Mary Gethings (in her individual capacity) for their unlawful retaliation against Plaintiff because of her constitutionally protected speech in violation of the First Amendment to the United States Constitution and Connecticut General Statute § 31-51q. Plaintiff also asserts claims of false light and defamation against Defendant Gethings. Plaintiff seeks to recover damages for injuries sustained because of her violation of her constitutional rights and damage to her reputation.**

Answer: Paragraph 1 is an inappropriate argument and summary of the claims, instead of the

factual allegations required by the FRCP.  Accordingly, no response is required.  As set forth

below, though, Defendants deny that they violated any of Plaintiff's rights, and deny that

Plaintiff is entitled to any relief in this matter. Therefore, Defendants deny Paragraph 1 in its

entirety.

## II.    PARTIES

**2.    Plaintiff Jessica Light (hereinafter "Plaintiff" or "Ms. Light") is an individual residing in NewHaven, Connecticut.**

<u>Answer</u>: Defendants admit the allegations in Paragraph 2.

**3.    Defendant the New Haven Board of Education (hereinafter "NHBE") was and is an agent or entity of the City of New Haven with its principal place of business located at 54 Meadow Street, #3, New Haven, CT 06519.**

<u>Answer</u>: Defendants admit the allegations in Paragraph 3.

**4.    Defendant NHBE constitutes an employer, for purposes of Conn. Gen. Stat. § 31-51q.**

<u>Answer</u>: Defendants admit the allegations in Paragraph 4.

**5.    At all relevant times, Defendant Margaret-Mary Gethings ("Ms. Gethings") was the Principal atWorthington Hooker School, a public elementary school located in the City of New Haven. At all relevant times, Defendant Gethings was acting under color of state law and was employed by the NHBE.**

<u>Answer</u>: Defendants admit the allegations in Paragraph5.

## III.    JURISDICTION

**6.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it asserts federal questions under 42 U.S.C. § 1983 and the First Amendment to the U.S. Constitution and because claims under Conn. Gen. Stat. § 31-51q also present a federal question. This Court has personal jurisdiction over each of the Defendants. This Court has supplemental jurisdiction over the state law common law claims pursuant to 28 U.S.C. § 1367.**

<u>Answer</u>: Defendants admit the allegations in Paragraph 6.

**7.    Venue is appropriate pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to this complaint occurred within this district.**

<u>Answer</u>: Defendants admit the allegations in Paragraph 7.

IV.    FACTS

**8.    At all times relevant to this complaint, Ms. Light was a resident of the City of New Haven, a parent to elementary school students enrolled at Worthington Hooker School, and a teacher at Worthington Hooker School.**

Answer: Defendants admit the allegations in Paragraph 8.

**9.    Beginning in the summer of 2020, Ms. Light made several public statements and inquiriesregarding the school district's response to the COVID-19 pandemic.**

Answer: Defendants admit the allegations in Paragraph 9.

**10.    These statements or activity included, but were not limited to:**

> **a.    Participating in a car caravan with the New Haven Teacher's Union speaking openly about the need for a unified district-wide plan to reopen schools safely. Ms. Light's comments were televised.**
> **b.    Speaking out at New Haven Board of Education meetings raising concerns over theneed for a unified district-wide plan to reopen schools safely and requesting answers to COVID-19 related health and safety questions. In January 2021, Ms. Light voiced her disagreement with the anticipated return to in person instruction given that the vaccine would be available in short order. In February 2021, she urged the Board of Education to adopt a unified district wide policy regarding COVID-19. In March 2021, she raised questions about lack of consistency in COVID-19 safety rules across the district and the challenges of enforcing safety protocols.**
> **c.    A Facebook post from March 9, 2021 where in response to a post from another NewHaven public school employee displaying data of reported COVID-19 cases at WorthingtonHooker, Ms. Light in her capacity as a parent to children attending Worthington Hooker, responded "I don't think letters were sent" and "Hooker never sent a letter," referring to letters notifying parents of known cases of COVID-19 at the school.**

Answer: Defendants admit that Ms. Light submitted written comments at the Board's January 2021 meeting, and that Ms. Light spoke during the public comment portion of the Board's meetings in February and March 2021.  Defendants further admits that Plaintiff commented on a Facebook post on March 9, 2021.  Defendants deny that Plaintiff indicated that she made that post in her capacity of a parent of a child attending Worthington Hooker.  That Facebook

11170597                                      3

post speaks for itself. The Board has insufficient knowledge or information upon which to

admit or deny the remaining allegations in Paragraph 10, most of which are based on

Plaintiff's own beliefs and views.

**11.    Defendant Gethings and the Assistant Principal Jenny Clarino ("Ms. Clarino") were aware of  Ms. Light's public comments, and over an extended period, Defendants systematically retaliated against Plaintiff for her above mentioned constitutionally protected speech.**

Answer: Defendants admit that Principal Gethings and Assistant Principal Jenny Clarino were

generally  aware of Plaintiff's comments at the Board meetings, and her March 2021 Facebook

comments.  Defendants deny the remaining allegations in Paragraph 11.

**12.    Defendant Gethings used her authority and influence to falsely accuse Ms. Light of wrongdoingand cast her in a negative light to colleagues and members of the New Haven community in which Ms. Light resides and where her children attend school.**

Answer: Defendants deny the allegations in Paragraph 12.

**13.    Plaintiff was subjected to targeted hostility. The acts of Ms. Gethings and Ms. Clarino were designed to and had the effect of isolating Ms. Light from her peers and her community.**

Answer: Defendants deny the allegations in Paragraph 13.

**14.    On November 2, 2020, a meeting was held with Ms. Gethings, Ms. Clarino, and Ms. Light during work hours. At this meeting, Ms. Gethings warned Ms. Light that not all her speech was protected by the first amendment and accused Ms. Light of creating a false narrative about the school.**

Answer: Defendants deny the allegations in Paragraph 14, except admit that Plaintiff met with

Ms. Gethings and Ms. Clarino on November 2, 2020, at which time Plaintiff was given a

copy of a form printed by her union, which explained that not all speech was protected in the

workplace.

**15.    Later, in November 2020, after the November 2, 2020 meeting, Ms. Gethings called Ms. Light  into her office and told her that she should not be speaking to parents on her**

**cell phone and accused Ms. Light of spreading hysteria and panic in the school community. Ms. Light, a member of the community and parent to two elementary school students at Worthington Hooker told Ms. Gethings that she could not sever ties with the community, but that she would never give any false information**.

<u>Answer</u>: Defendants admit that Ms. Gethings met with Plaintiff again in November 2021, and informed her that pursuant to school policy she and other Worthington Hooker staff members should refrain from sharing personal cell phone numbers to members of the school community.  Defendants further admit that Plaintiff made statements similar to those alleged in Paragraph 15, but deny that was what Plaintiff was being asked. Defendants deny any remaining allegations in Paragraph 15.

**16.    On March 9, 2021, after Ms. Light posted on Facebook as described <u>supra</u>, Ms. Light was pulled out of her classroom for an unscheduled meeting with Ms. Gethings and Ms. Clarino. This meeting lasted about ninety minutes. Ms. Gethings and Ms. Clarino referenced Ms. Light's comments at the Board of Education meeting regarding COVID-19 safety concerns and accused Ms. Light of a creating a negative narrative about the school**.

<u>Answer</u>: Defendants admit that Ms. Gethings and Ms. Clarino met with Plaintiff at some point to discuss Plaintiff's comments at the Board meeting and her not waiting for Ms. Gethings and Ms. Clarino to obtain answers to Plaintiff's questions from Central Office. Defendants deny any remaining allegations in Paragraph 16, including the allegation that any such discussion lasted ninety minutes.

**17.    At this meeting on March 9, 2021, Ms. Gethings accused Ms. Light of leaking information to parents about a Teacher ("Teacher X") having contracted COVID-19. Ms. Light repeatedly denied leaking any information regarding Teacher X. Without any basis, Ms. Gethings and Ms. Clarino put the burden on Ms. Light to identify where the leak had come from, even though she had nothing to do with it**.

<u>Answer</u>: Defendants incorporate the response to Paragraph 16 into this response to Paragraph 17.  Defendants admit that Ms. Gethings and Ms. Clarino asked Plaintiff about whether she

11170597

disclosed information about Teacher X having COVID to parents in the school community,

and that Plaintiff denied providing such information.  Ms. Gethings and Ms. Clarino then

asked Plaintiff if she knew where the information came from then.  Defendants deny any

remaining allegations in Paragraph 17.

**18.    On March 12, 2021, in response to Ms. Light's public Facebook post, Ms. Gethings emailed thestaff at Worthington Hooker, "It has been brought to our attention from several community members including staff and parents that WHS is being mentioned with inaccurate information which also includes social media. We ask that if you are aware of any negative talk or postings,to please help protect and preserve our school. We hope that people will refrain from making their own inferences and/or misrepresenting our school. We must always keep in mind that we are working together and not against each other."**

Answer: Defendants admit that, on March 12, 2021, Ms. Gethings sent an email to all staff at

Worthington Hooker that contains the language quoted in Paragraph 18.  That emails speaks

for itself in its entirety.  Defendants deny that email mentioned or targeted Plaintiff, and deny

that it was sent solely in response to Plaintiff's Facebook comments.

**19.    On March 22, 2021, after Ms. Light had spoken publicly at the Board of Education meeting    about COVID-19 safety measures, Ms. Gethings emailed Ms. Light expressing her disappointment at Ms. Light for discussing the issue publicly at the Board of Education meeting.**

Answer: Defendants admit that Ms. Gethings emailed Plaintiff on March 22, 2021, after

Plaintiff brought the same questions to the Board that she had previously brought to Ms.

Gethings, and that Ms. Gethings informed her that she was awaiting full details from central

office.  Defendants deny that the remaining allegations in Paragraph 19 accurately

characterize the parties' email exchange, which speaks for itself.

**20.    On March 26, 2021, Ms. Light was scheduled for a 15-minute TEVAL meeting. Ms. Gethings and Ms. Clarino reprimanded Ms. Light for over an hour for Ms. Light's public statements to the Board of Education on March 22, 2021 and having posted on Facebook regarding COVID (the March 9, 2021 post referenced supra). Ms. Gethings**

stated to Ms. Light that the Facebook post was "not your place" and referenced "other staff people who feel it's very hard to work with you because of your public comments." At this meeting Ms. Gethings and Ms. Clarino, without any basis, once again falsely accused Ms. Light of spreading rumors about Teacher X. Ms. Gethings and Ms. Clarino threatened Ms. Light that Teacher X would be filing an official complaint against Ms. Light related to the alleged public statements.

Answer: Defendants admit that Ms. Gethings and Ms. Clarino met with Plaintiff for her TEVAL meeting on or about March 26, 2021, and that at that meeting Ms. Gethings and Ms. Clarino raised the disclosure of Teacher X's COVID status and Plaintiff's comments at the Board meeting as part of the discussion of Plaintiff's professional conduct and areas for growth. In that meeting, which lasted over an hour, Plaintiff was informed that Teacher X might be filing a complaint, but deny that Plaintiff was threatened with a complaint. Defendants admit that Ms. Gethings made comment similar to the ones selectively quoted in Paragraph 20, but that Paragraph 20 accurately summarizes the meeting in its totality—which the investigation found was non-retaliatory and appropriate. Defendants deny any remaining allegations in Paragraph 20.

**21.    On March 26, 2021, at this same meeting, Ms. Gethings informed Ms. Light that she was being reassigned from her third-grade position to first grade for the 2021-2022 school year. At Worthington Hooker, Ms. Light had only taught the third grade and her teaching experience for 14 years in the New Haven Public Schools was in third, fourth, fifth, and sixth grades. Ms. Light made clear that teaching first grade was challenging for her because she suffered from severe dyslexia which makes it difficult to teach the phonics curriculum for first grade. Ms. Gethings explained that Ms. Light needed to be reassigned because her son was entering the third grade and there were concerns about having a parent teaching the same grade level. There is no districtwide policy or school policy that would prevent a parent teaching the same grade as their child. When asked during the investigation the rationale for moving Ms. Light to the first grade, the investigation revealed that "Ms. Gethings and Ms. Clarino offered different explanations" and that there "were some aspects of the explanations provided by Ms. Gethings and Ms. Clarino that were not consistent." Of note, Ms. Gethings and Ms. Clarino said in the investigation that a reason Ms. Light was reassigned from third grade to first grade was that Paul Salem a grade level partner had requested not to have Ms. Light in his class. The investigation revealed that (1) Mr. Salem never requested any**

11170597

assignment changes, (2) that Mr. Salem's only question to Ms. Gethings was how best to navigate the relationship if he had Ms. Light's son in his class, and (3) Mr. Salem's comments came only after a decision had been made to reassign Ms. Light, so it couldn't have had any bearing on the decision.

Answer: Defendants admit that Ms. Gethings informed Ms. Light on March 26, 2021, that

she was being reassigned from her third-grade position for the 2021-2022 school year due to

the fact that her son would be in the third grade that year. Defendants admit that Plaintiff had

not taught first grade before in New Haven, but that is within her certification and is an

appropriate assignment for Plaintiff. Defendants deny that Plaintiff had previously informed

them of a dyslexia diagnosis, and further deny that Plaintiff had ever requested an

accommodations for such a diagnosis or that such a diagnosis prevented her from teaching

first grade. The investigation referenced in Paragraph 21 speaks for itself, and Defendants

deny that it was accurate in regard to the findings listed in Paragraph 21 concerning Mr.

Salem. Defendants admit, however, that the investigation found that the grade transfer was

non-retaliatory and was "a reasonable measure" under the circumstances. Defendants deny

any remaining allegations in Paragraph 21.

**22.    On March 31, 2021, Ms. Light was asked to attend a meeting with Ms. Gethings, Ms. Clarino, the school Union representative (Ms. Morrison) and Teacher X who had contracted COVID-19. Without any proof or even a claim by anyone with knowledge that Ms. Light had been the source of the leak regarding Teacher X, Ms. Light was one again falsely accused of violating Teacher X's privacy. At this meeting, among other things it became clear to Ms. Light that Teacher X believed that Ms. Light had violated her privacy because Ms. Gethings and Ms. Clarino had told Teacher X that Ms. Light had told parents and posted online about Teacher X having COVID-19. Ms. Gethings and Ms. Clarino continued to perpetuate this lie about Ms. Light even though Ms. Light had denied ever telling anybody about Teacher X's medical condition and they had no evidence to support this accusation.**

Answer: Defendants admit that on March 31, 2021, Plaintiff and her union representative, Ms.

Morrison, met with Ms. Gethings and Ms. Clarino, in order to discuss Teacher X's belief that

Plaintiff had disclosed her COVID diagnosis to members of the school community.

Defendants deny that the remaining allegations in Paragraph 22 accurately summarize the

discussion in that meeting. Defendants therefore deny any remaining allegations in Paragraph

22.

**23.    At this meeting on March 31, 2021, Teacher X disputed Ms. Light's claims that she had emailed Ms. Light letting her know that she had COVID-19. When Ms. Light showed Teacher X a screen shot of an email Teacher X had sent informing her that she had COVID-19, Teacher X tried to apologize to Ms. Light. Rather than allow Teacher X to apologize, Ms. Gethings interrupted Teacher X's apology and continued to suggest that Ms. Light had been the source of the leak. Ms. Gethings' animus toward Ms. Light was so strong that she was unwilling to allow for a simple apology to Ms. Light for what was shown to be an inaccurate statement by Teacher X. In front of Teacher X, Ms. Gethings stated to Ms. Light, "We hear that you are saying it wasn't you but I need you to know that every person said you were the source." When Ms. Light asked who these people were, Ms. Gethings continued berating Ms. Light stating, "I am not giving you a name I am giving you my truth that there is not another person in our community whether it is a parent or a teacher that has not said that you were how they found out." Ms. Gethings said she wouldn't tell Ms. Light who the people were out of fear that Ms. Light would go to these sources and drag them in. The investigation found that there were no such individuals and that Ms. Light had never done any negative actions toward any of her colleagues.**

Answer: Defendants admit that there was a discussion at the March 31, 2021 meeting, and

that Teacher X apologized to Plaintiff after Plaintiff produced the email, which Teacher X

had forgotten she had sent. Defendants admit that Ms. Gethings made comments similar to

those quoted in Paragraph 23, and that she would not tell Plaintiff who the people were who

said Plaintiff was the source of the leak based on a fear that Plaintiff would retaliate against

them or drag them into the situation. Defendants deny that the remaining portion of

Paragraph 23 accurately summarizes the statements made in that meeting, and Ms.

Gething's conduct toward Plaintiff during the meeting, and deny any allegation of

wrongdoing.

**24.    Without any basis, Ms. Gethings and Ms. Clarino had reached out to teachers and parents asking if Ms. Light had in fact stated anything about Teacher X's medical condition impugning Ms. Light's integrity and creating false rumors about Ms. Light.**

<u>Answer</u>: Defendants deny the allegations in Paragraph 24.

**25.    On or about April 20, 2021, Ms. Light was asked to attend a meeting with Ms. Gethings and Ms. Clarino. Ms. Light asked her union representative to be present. Ms. Gethings continued to express her concern over Ms. Light's public speaking and the Facebook post.**

<u>Answer</u>: Defendants admit that Ms. Gethings met with Plaintiff and her union representative

in April 2021, and that Plaintiff's public comments were discussed at that meeting.

Defendants deny any remaining allegations in Paragraph 25.

**26.    On or about April 30, 2021, Ms. Light filed a complaint alleging retaliation by Ms. Gethings  and Ms. Clarino.**

<u>Answer</u>: Defendants admit the allegations in Paragraph 26.  That complaint speaks for itself.

**27.   On or about May 26, 2021, Ms. Light needed to use the bathroom around dismissal time and asked a paraprofessional Ms. Maffuid, who regularly watched classes as part of her job responsibilities, to watch her class.  Although it is extremely common to watch a teacher's class for a short period, the following day, Ms. Gethings called Ms. Maffuid into her office and shut her door asking Ms. Maffuid why she had covered for Ms. Light and stating that teachers cannot leave their class. Ms. Gethings admonished Ms. Maffuid in a reprimanding tone for assisting Ms. Light. Ms. Maffuid was confused because she did not believe she had done anything wrong in helping Ms. Light for a few minutes. Immediately after Ms. Maffuid told Ms. Light about Ms. Gethings' reprimand for helping Ms. Light.**

<u>Answer</u>: Defendants admit that at the end of the day on May 26, 2021, Plaintiff asked a

paraprofessional who was unfamiliar with dismissal routines to watch her class so she could

go to the bathroom and change for an after-school running club, and that Ms. Gethings spoke

with the paraprofessional about why she was covering Plaintiff's classroom.  Defendants have

insufficient knowledge or information upon which to admit or deny the allegations in

Paragraph 27 concerning the paraprofessional's thoughts. Defendants deny the

characterizations of Ms. Gething's conduct in Paragraph 27, and deny any remaining

allegations in Paragraph 27.

28.    On or about June 7, 2021, Ms. Gethings and Ms. Clarino filed a cross- complaint against Ms. Light (hereinafter the "cross-complaint"). Upon information and belief, Ms. Gethings and Ms.Clarino claim that Ms. Light engaged in the following conduct:

      a.  Submitted and fabricated false statements to Human Resources in retaliation for their decision to change Ms. Light from the Third Grade to the First Grade for the2021-2022 school year.
      b.  Intentionally created a hostile work environment for Administration and Staff,
      c.  Undermined administration, breached confidentiality and created intentional andunnecessary anxiety for school families.

Answer: Defendants admit that on June 7, 2021, Ms. Gethings and Ms. Clarino submitted

a document that was a rebuttal to Plaintiff's allegations against them and also raised four

complaints about Plaintiff, including the three alleged in Paragraph 28.  That document

speaks for itself.

29.    The filing of the cross-complaint was a retaliatory action by Ms. Gethings and Ms. Clarino.

Answer: Defendants deny the allegations in Paragraph 29.

30.    An independent investigation was done by Berchem & Moses into this cross complaint, and none of Ms. Gethings or Ms. Clarino's allegations against Ms. Light were substantiated. Theinvestigation fully exonerated Ms. Light of any wrongdoing. To summarize some of the findings, "there was no evidence that Light ever intentionally sought to create hostility for anyone"; "no evidence that [Ms. Light's public statements] actually caused any meaningful disruption in the school environment", "any implication that Light falsified the complaint as retaliation for it was not borne out", "Light's public speech, while at times controversial, doesnot create a hostile work environment".

Answer: Defendants admit that Bercham & Moses conducted an investigation into Plaintiff's

complaint against Ms. Gethings and Ms. Clarino, the complaint Ms. Gethings and Ms.

Clarino filed against Plaintiff, and the complaint another teacher filed against Plaintif.

Defendants further admits that the investigation did not substantiate the claims raised by Ms.

Gethings and Ms. Clarino against Plaintiff, and that the language selectively quoted in

Paragraph 30 is contained in the report.  Defendants deny the remaining allegations in

Paragraph 30.

**31.     On or about August 24, 2021, during the pendency of the investigation into allegations of retaliation brought by Ms. Light, Mr. Salem, a third-grade teacher with whom Ms. Light had a positive working relationship, contacted Ms. Light. He shared with Ms. Light that he had found documents printed on his school printer that included emails from Ms. Light's husband, David Bianchine, to Ms. Gethings and Ms. Clarino about Mr. Bianchine and Ms. Light's child, who was a student at Worthington Hooker Elementary in Ms. Alden's class. Mr. Salem was contacting Ms. Light because he believed Ms. Light had printed these sensitive documents. Ms. Light had not printed these documents. Rather as the investigation by Berchem & Moses revealed, the documents had been printed by Ms. Gethings. Ms. Gethings could not explain why these sensitive documents pertaining to Ms. Light's son, a student at Worthington Hooker, would have been printed or placed on Mr. Salem's printer. The investigation concluded that Ms. Gethings' actions suggested retaliation against Ms. Light.**

Answer: Defendants admit that Mr. Salem is a third-grade teacher, and that on or about

August 24, 2021, Mr. Salem reported to Plaintiff that he found documents on his printer that

included emails from Plaintiff's husband to Ms. Gethings and Ms. Clarino about Mr.

Bianchine and Ms. Light's child, who was a student at Worthington Hooker Elementary in

Ms. Alden's class.  Defendants deny that Ms. Gethings printed those documents to that

printer, and denies that the Berchem & Moses report found that she had in fact printed them.

That report speaks for itself.  Defendants deny any remaining allegations in Paragraph 31,

including any allegations of retaliation.

**32.     Having been subjected to a constant barrage of hostile acts, as further detailed in the investigative report by Berchem & Moses, Ms. Light filed a complaint of retaliation with the NHBE.**

Answer: Defendants admit that Plaintiff filed a retaliation complaint.  Defendants deny the

remaining allegations in Paragraph 32, including any allegations of retaliation.

**33.     On or about April 30, 2021, Ms. Light filed a formal complaint of retaliation based on her constitutionally protected speech with Human Resources.**

Answer: Defendants admit that Plaintiff filed a retaliation complaint, which speaks for

itself. Defendants deny the remaining allegations in Paragraph 32, including any allegations

of retaliation.

**34.     For months, Ms. Light was strung along by Human Resources with no indication of concrete steps to address her serious complaint of retaliation.**

Answer: Defendants deny the allegations in Paragraph 34 as written.

**35.     In mid-summer of 2021, Taryn Bonner of Human Resources told Ms. Light that the investigation had been tainted by the administration (the very people that were being accused of retaliation) and therefore needed to be outsourced.**

Answer: Defendants admit that Ms. Bonner informed Plaintiff in the summer of 2021 that the

investigation would be conducted by Berchem & Moses.  Defendants deny the remaining

allegations in Paragraph 35.

**36.     In August of 2021, only after Ms. Light hired an attorney to represent her interests in this matter, the NHBE hired Berchem & Moses to conduct an internal investigation into the issues of retaliation brought forth by Ms. Light.**

Answer: Defendants admit that the Board hired Berchem & Moses to conduct an

investigation into three complaints, including the one made by Plaintiff and two that were

made against Plaintiff.  Defendants deny this decision was made because Plaintiff had

hired an attorney. Defendants deny any remaining allegations in Paragraph 36.

**37.     In August of 2021, the 2021-2022 school year began at Worthington Hooker. Ms. Light began her year as a first-grade teacher, following Ms. Gethings' decision to transfer Ms. Light from third grade to first grade, in retaliation for Ms. Light's public speech.**

Answer: Defendants admit that in August of 2021, the 2021-2022 school year began at

Worthington Hooker, and Plaintiff began that year in her first-grade teaching assignment,

which was changed from third grade by Ms. Gethings.  Defendants deny any remaining

allegations in Paragraph 37.

**38.    Ms. Light began the school year feeling isolated from her peers and administration. She waseating lunch alone and observing other teachers keep their distance from her**.

Answer: Defendants have insufficient knowledge or information upon which to admit or deny

the allegations in Paragraph 38, which are based on Plaintiff's own thoughts and beliefs.

**39.    At the beginning of the school year, Ms. Clarino would come into Ms. Light's classroomand watch Ms. Light teach without giving Ms. Light any feedback**.

Answer: Defendants admit that Ms. Clarino would observe Plaintiff and other teachers

during the 2021-2022 school year.  Defendants deny that those observations were

inappropriate, and deny the remaining allegations in Paragraph 39.

**40.    At the beginning of the school year, none of the supplies Ms. Light has ordered had arrived. Ms. Gethings falsely accused Ms. Light of not filling out the form**.

Answer: Defendants admit that Plaintiff's supplies did not arrive by the start of the school
year, because Plaintiff did not follow the proper process.  Defendants deny the remaining
allegations in Paragraph 40.

**41.    On September 15, 2021, the school celebrated National Dot Day. Most of the teachers weretold to wear polka dots to celebrate the day. Ms. Light was not approached by the administration with this information. A parent asked Ms. Light why she was the only teacher without polka dots.**

Answer: Defendants admit that the school celebrated National Dot Day on or about

September 15, 2021, and that many staff members wore polka dots that day.  Defendants

have insufficient knowledge or information upon which to admit or deny the allegations in

Paragraph 41 about what a parent may have said to Plaintiff.  Defendants deny the remaining

allegations in Paragraph 41.

**42.    On October 7, 2021, Ms. Light learned from a teacher at Worthington Hooker, Tim Shortt, who had recently been elected as the school's union steward that at a meeting he had with Ms. Gethings and Ms. Clarino as union steward, Ms. Gethings and Ms. Clarino stated that a few teachers thought that Mr. Shortt might be in "cahoots with Ms. Light."**

Answer: Defendants have insufficient knowledge or information upon which to admit or deny

the allegations in Paragraph 42, as they were not parties to that conversation.

**43.    During the investigation Ms. Gethings and Ms. Clarino denied discussing Ms. Light with Mr. Shortt, and the investigation concluded that Ms. Gethings and Ms. Clarino lacked credibility on the issue. In short, the investigation concluded that the preponderance of the evidence "supports that Ms. Clarino and Ms. Gethings made negative commentary regarding Ms. Light in the meeting with Mr. Shortt, suggesting they were working together to undermine building administration." Most disturbingly, this instance of retaliation occurred while the investigation into prior instances of retaliation was taking place.**

Answer: Defendants admit that the investigation report contains the quoted language,

and denies that the investigation's findings were credible or accurate.  Defendants

deny that Ms. Gethings engaged in any retaliatory acts toward Plaintiff, and state that

any findings to the contrary in the investigation report are erroneous.

**44.    The comments made by Ms. Gethings and Ms. Clarino were intended to undermine Ms. Light's union representation at the school.**

Answer: Defendants deny the allegations in Paragraph 44.

**45.    In October 2021, Ms. Light began to suffer severe emotional distress from the months of retaliation and isolation in the workplace and lack of finality or response to her complaint.**

Answer: Defendants have insufficient knowledge or information upon which to admit or

deny the allegations in Paragraph 45.

11170597                                    15

46.    **Ms. Light's treating physician diagnosed Ms. Light with "PTSD triggered by a hostile workenvironment".**

Answer: Defendants admit that they received an FMLA form stating that Plaintiff had "PTSD

triggered by a hostile work environment," along with "an increase in anxiety, intrusive

thoughts, lack of sleep, and difficulty concentrating."

47.    **Ms. Light, under medical advice went out on approved family medical leave due to herdiagnosis. Concurrently with her FMLA, Ms. Light took sick days in order to receive payment for her time off. The administration never offered to place her on paid leave pending the outcome of the investigation.**

Answer: Defendants admit the allegations in Paragraph 47, but deny the implication that

Plaintiff should have been placed on paid leave and deny any implication that Plaintiff

was treated inappropriately.

48.    **The investigation was concluded in December 2021 and a report summarizing the investigation and its findings was issued on or about December 3, 2021 (a copy of the report is attached hereto as Exhibit A to this Complaint).**

Answer: Defendants admit the allegations in Paragraph 48.

49.    **Among other things, the investigation concluded that Ms. Light had engaged in protected speech and that she had been retaliated against in at least four instances by Ms. Gethings.**

Answer: Defendants admit the allegations in Paragraph 49, but deny that the findings in

the report in regard to protected speech and whether Plaintiff was subjected to instances

of retaliation were credible or accurate. Defendants further deny that any of the four

alleged acts cited as incidents of "retaliation" constitute adverse employment actions.

50.    **The investigation also concluded, contrary to Ms. Gethings assertion, that there was noevidence that Ms. Light's comments actually caused any meaningful disruption in the school environment.**

11170597

16

Answer: Defendants admit the allegations in Paragraph 48, but deny that those findings

were credible or accurate.

**51.    The investigation concluded that the accusations regarding Ms. Light and the spread of information regarding Teacher X was unfair to Ms. Light in several respects. The investigation recognized that Ms. Light was brought into a meeting by Ms. Gethings to make peace with Teacher X for conduct that Ms. Light had denied engaging in and for which there was no evidence. The investigation concluded that Ms. Gethings gave no serious consideration to Ms. Light's statements denying wrongdoing and that Ms. Gethings shamed Ms. Light for denying the conduct. The investigation concluded that Ms. Gethings lied about the fact that "every person" said that Ms. Light was the source of misinformation.  The investigation concluded that the acts of Ms. Gethings toward Ms. Light regarding Teacher X were in retaliation for her unrelated Facebook posts**.

Answer: Defendants admit the allegations in Paragraph 51, but deny that those findings

were credible or accurate.

**52.    The investigation noted that Ms. Light continues to suffer harm from this incident in that the false light in which Ms. Light was placed by Ms. Gethings strained the relationship between Teacher X and Ms. Light.**

Answer: Defendants admit the allegations in Paragraph 52, but deny that those findings

were credible or accurate.

**53.    The investigation concluded that Ms. Gethings retaliated against Ms. Light on May 26, 2021, several days after Ms. Gethings had learned that Ms. Light had filed a retaliation complaint with Human Resources.**

Answer: Defendants admit the allegations in Paragraph 53, but deny that those findings

were credible or accurate.

**54.    The investigation concluded that the "preponderance of the evidence indicates that Ms. Gethings placed the documents there or printed them directly to Mr. Salem's printer, whether from his classroom or elsewhere. Given that there is no legitimate reason for Mr. Sale to have been given these documents, this suggests retaliation against Ms. Light."**

Answer: Defendants admit the allegations in Paragraph 48, but deny that those findings

were credible or accurate.

**55.    The investigation also concluded that there was a continued pattern by Ms. Gethings to separate Ms. Light from the support of her colleagues as evidenced by the admonishment of Ms. Maffuid, the papers placed on Mr. Salem's printer which could present Ms. Light and her husband as difficult parents and the comment to Mr. Shortt suggesting that any alliance with Ms. Light is indicative of an effort to take down the administration.**

Answer: Defendants admit the allegations in Paragraph 55, but deny that those findings

were credible or accurate.

**56.    The investigation determined that Ms. Clarino spoke to a potential witness during the pendency of the investigation after being instructed not discuss the investigation while it was pending.**

Answer: Defendants admit the allegations in Paragraph 56, but deny that those findings

were credible or accurate.

**57.    At the conclusion of the investigation, Ms. Light reached out to Human Resources to see what would be done to successfully reintegrate her into the classroom and protect her from further retaliation by Ms. Gethings.**

Answer: Defendants admit the allegations in Paragraph 57, but deny any claim that

Plaintiff was subject to retaliation.

**58.    Ms. Light requested that in light of the outcome of the investigation substantiating her claims of retaliation, that the District retroactively reinstate the PTO days that she used during her FMLA leave due to the severe emotional distress suffered because of the retaliation.**

Answer: Defendants admit the allegations in Paragraph 58, but deny any claim that

Plaintiff was subject to retaliation.

**59.    Based on the serious findings of retaliation in the Investigative Report, many which occurred after Ms. Light came forward with the complaint of retaliation, Ms. Light expected that Ms. Gethings would be removed from any supervisory role vis-à-vis Ms. Light.**

<u>Answer</u>: Defendants have insufficient knowledge or information upon which to admit or

deny the allegations in Paragraph 59 that are based on Plaintiff's expectations.

Defendants deny any remaining allegations.

**60.    Ms. Light first contacted Human Resources on December 9, 2021 to discuss her return to work. In an email from December 9, 2021, Ms. Light wrote to the school administration stating how she wanted to discuss a timeline, process and assurances for a safe return to school. Among other things, she asked the district to consider certain restorative actions including:**

> a. **Retroactively converting her FMLA leave to paid leave, as the investigation proved her workplace was unduly hostile.**
> b. **Assurances that her position as a third-grade teacher would be restored next school year, as the investigation showed the decision to move her grade was based on "conflicting" reasons and false fabricated statements and her son would not be in the third-grade next year.**
> c. **A restorative justice process with her colleagues, as the investigation revealed negativity and hostility toward Ms. Light.**

<u>Answer</u>: Defendants admit that the allegations in Paragraph 60 accurately summarize

Plaintiff's email.

**61.    Human Resources delayed any type of meeting with Ms. Light, regarding**

**Ms. Light's return to work.**

<u>Answer</u>: Defendants deny the allegations in Paragraph 61.

**62.    Ms. Light's treating doctor submitted a note in January 2022 stating:**

> **On 5/12/21, she began reporting increased anxiety and decreased mood as she began feeling she was being pushed out of the school for being outspoken about what COVID protocols should be in place. She reported being taken off committees, having her regular 3rd grade teaching assignment taken from her and given 1st grade for which she felt ill prepared, tensions increased as she was accused of things she did not do. Etc. These events triggered her anxiety, depression, and PTSD. She has been out on medical leave for this reason. However, since the investigation into this supported the patient's claims, she has improved significantly and is ready and able to return to work. However since the principal, who was the subject of the investigation, still remains in the**

**same position, I feel this would again trigger her symptoms. My recommendation is that Ms. Light be allowed to work where she would not have contact with the principal, Ms. Gethings. If that is not possible, safeguards must be put in place to prevent any retaliation which might cause a recurrence or exacerbation of symptoms.**

<u>Answer</u>: Defendants have insufficient knowledge or information upon which to admit or deny the allegations in Paragraph 62.

**63.    All the while, Ms. Light was using her sick time to remain out of work waiting for a substantive plan to return to work with safeguards in place.**

<u>Answer</u>: Defendants admit that, while Plaintiff remained out of work, she used his

sick time. Defendants deny that there was any reason for Plaintiff to remain out of

out. Defendants deny any remaining allegations in Paragraph 63.

**64.    On Friday January 14, 2022, after weeks requesting a meeting and with no concrete response to her December 9th email, a virtual meeting was held. Present at the meeting were Taryn Bonner, Labor Relations Manager, Lisa Mack, Human Resources Director, Pat Delucia and Leslie Blatteau, Executive Leaders for Local 933 and Ms. Light.**

<u>Answer</u>: Defendants admit that, on Friday January 14, 2022, a virtual meeting was held

between Taryn Bonner, Labor Relations Manager, Lisa Mack, Human Resources Director,

Pat Delucia and Leslie Blatteau, Executive Leaders for Local 933 and Plaintiff.  Defendants

deny any remaining allegations in Paragraph 64.

**65.    At the outset of the meeting, the administration informed Ms. Light that the school would not be converting her FMLA leave to paid leave and/or restoring the sick days she used to cover her FMLA due to PTSD suffered because of retaliation from her supervisors.**

<u>Answer</u>: Defendants admit that Plaintiff was informed that the Board would not be

converting her FMLA leave to paid leave or restoring the sick days she used to cover her

FMLA.  Defendants deny any remaining allegations in Paragraph 65.

**66.    At the meeting, among other things, Ms. Light inquired of Ms. Bonner and Ms. Mack, whatsteps would be taken to protect her and her children from retaliation by Ms. Gethings in light of the conclusive findings in the investigation. The Union President, fully supported Ms. Light's request for safeguards to ensure Ms. Light could return to work safely. Severalsafeguards were proposed by the union including:**

> a.  **Ensuring that Ms. Light has union representation at all meetings with her administrators, not just disciplinary**
> b.  **Appointing a different instructional manager (rather than Ms. Gethings or Ms. Clarino) to oversee Ms. Light's performance and that Ms. Light not be given arating for the 2021-2022 school year.**
> c.  **Scheduling a mediation with Ms. Gethings and a separate one with Ms. Clarino before Ms. Light returns to work to begin a constructive dialogue prior to Ms. Lightreentering the school building.**
> d.  **Allowing Ms. Light to do some grade level observation prior to reintegrating intoher first-grade class.**

Answer: Defendants admit the allegations in Paragraph 66 accurately summarize Plaintiff's

request, except deny that Ms. Gethings retaliated against Plaintiff in any manner.

**67.    At this meeting, Ms. Bonner stated that the requests seemed realistic but that she wouldhave to do some work and circle back with Ms. Light and the Union.**

Answer: Defendants admit Ms. Bonner indicated that mediation would be appropriate,

and that she would attempt to arrange that, but that it would take some time. Ms. Bonner

then did schedule that mediation.  Defendants deny any remaining allegations in

Paragraph 67.

**68.    Ms. Light made clear, as did the union Vice President Mr. Delucia, that if there was a delay from the NHBE in continuing the discussion regarding safeguards, that Ms. Light would continue to be out on sick leave given her doctor's notes. Ms. Bonner stated that the call would be concluded and that she would work like "an energizer bunny" to get a response toMs. Light and the union.**

Answer: Defendants admit that Ms. Bonner indicated that she would attempt to schedule the

mediation as soon as possible, which she did, and that Plaintiff and her union indicated a

desire for Plaintiff to continue to utilize her sick leave instead of returning to work.

Defendants deny any remaining allegations in Paragraph 68.

**69.    Ignoring the agreements of January 14, 2022, and without providing any response to the discussion points raised in that meeting relative to safeguards, on January 18, 2022, Ms. Mack sent Ms. Light a letter stating that Ms. Light was expected to return to work on Tuesday January 18, 2022.**

<u>Answer</u>: Defendants admit that, on January 18, 2022, Ms. Mack sent Plaintiff a letter

stating that Plaintiff was expected to return to work on Tuesday January 18, 2022.

Defendants deny the remaining allegations in Paragraph 69.

**70.    On January 18, 2022, Ms. Light responded to Ms. Bonner, letting her know that the letter was inconsistent with what was discussed at the January 14, 2022 meeting where safeguards for her safe return to school were discussed. Ms. Light noted that "I have not received any substantive response from you or the District to any of the points I raised or that the union raised on my behalf. Nor has there been any interactive process to address my doctor's notes and the implementation of safeguards to ensure my physical and mental health considering the retaliation which I suffered and may still be subjected to. As I said at the meeting, if appropriate safeguards are not put in place, I cannot return to work, nor should I be expected to, and I will be taking another sick day on January 18, 2022. I am ready and willing to return to work when it is safe to do so, and nothing has been done to address my legitimate concerns. Our last communication was that you were arranging mediation and were going to get back to me by the end of the day Friday, because my doctor has authorized me to return once the environmental health risks have been addressed. Please call if you would like to discuss next steps. I truly want to return as soon as possible."**

<u>Answer</u>: Defendants admit the allegations in Paragraph 70 accurately quote from the email.

**71.    On January 19, 2022, the union wrote to Human Resources in support of Ms. Light, "as we continue to wait for updates regarding the schedule for the agreed upon return-to-work mediation for Ms. Light at Worthington Hooker, the union would like to ask for Ms. Light to be put on paid administrative leave from Tuesday, January 18, 2022 until the date of the mediation/her return to work. The mediation is a necessary component for Ms. Light's safe return and she is ready to participate. We are waiting on HR to schedule the mediation so Ms. Light can get back to work."**

<u>Answer</u>: Defendants admit the allegations in Paragraph 71 accurately quotes from the email.

11170597                                     22

**72.    On January 24, 2022, Ms. Light reiterated to Human Resources that she is simply requesting a non-hostile workplace free of retaliation, which she would expect would be provided to all employees.**

Answer: Defendants admit the allegations in Paragraph 72, but denies any implication that the

Board was not providing an appropriate workplace for Plaintiff.

**73.    On January 26, 2022, Ms. Bonner, without any substantive response to the safeguards proposed on January 14th stating that it was the District's expectation that Ms. Light returnto work as directed, threatening that "failure to do so may be considered insubordination".**

Answer: Defendants admit the allegations in Paragraph 73, but deny any implication that Ms.

Bonner's response was inappropriate or unwarranted.

**V.    CAUSES OF ACTION:**

**A.    COUNT ONE: VIOLATION OF CONN. GEN. STAT. § 31-51q (as to DefendantNHBE)**

**1-73.  The allegations above are incorporated by reference into this Count as**

**if fully setforth herein.**

1-73 Answer: Defendants incorporate their responses to Paragraphs 1-73 as if

fully set forth herein.

**74.    Ms. Light exercised her rights to free speech and assembly protected**

**by the first amendment to the United States Constitution and/or §§ 4 and**

**14 of article first of theConnecticut Constitution.**

Answer: Defendants deny the allegations in Paragraph 74.

**75.    Plaintiff's speech was protected under § 31-51q of the Connecticut General Statutes.**

Answer: Defendants deny the allegations in Paragraph 75.

76.    Plaintiff's exercise of her constitutional rights did not substantially or materially interfere with her bona fide job performance or with her working relationship with her employer.

Answer: Defendants deny the allegations in Paragraph 76.

77.    Defendant had knowledge of Plaintiff's protected speech and retaliated repeatedly against Plaintiff by engaging in the conduct described above.

Answer: Defendants deny the allegations in Paragraph 77.

78.    As a result of Defendant's conduct, Plaintiff has suffered damages, including but not limited to, lost compensation, wages, and benefits, emotional distress, and loss of enjoyment.

Answer: Defendants deny the allegations in Paragraph 78.

79.    Defendant acted with reckless disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

Answer: Defendants deny the allegations in Paragraph 79.

80.    Plaintiff has also incurred and continues to incur attorney's fees and costs.

Answer: Defendants deny the allegations in Paragraph 80.

B.    COUNT TWO: RETALIATION BASED ON THE EXERCISE OF
FREE SPEECH IN VIOLATION OF 42 U.S.C. § 1983 (as to
Defendant Gethings)

1-    73. The allegations above are incorporated by reference into this Count as if fully set forth herein.

1-73 Answer: Defendants incorporate their responses to Paragraphs 1-73 as if fully set forth herein.

11170597                                    24

**74.    Based on the foregoing, Defendant Gethings retaliated against Plaintiff in violation of 42. U.S.C. § 1983 and the First Amendment.**

Answer: Defendants deny the allegations in Paragraph 74

**75.    Plaintiff spoke as a citizen on matters of public concerns and Defendant Gethings had knowledge of Plaintiff's constitutionally protected speech.**

Answer: Defendants deny the allegations in Paragraph 75.

**76.    Defendant Gethings' conduct violated Plaintiff's civil rights guaranteed by the First Amendment to the United States Constitution as enforced through 42 U.S.C. §1983.**

Answer: Defendants deny the allegations in Paragraph 76.

**77.    Because of Defendant Gethings' intentional retaliation against Plaintiff, Plaintiff has sustained damages, including but not limited to, lost compensation, wages and benefits, emotional and physical distress, damage to reputation, and loss of enjoyment of life.**

Answer: Defendants deny the allegations in Paragraph 77.

**78.    Plaintiff has also incurred and will continue to incur attorney's fees and costs.**

Answer: Defendants deny the allegations in Paragraph 78.

**79.    Defendant Gethings' reckless indifference to Plaintiff's federally protected rights entitles Plaintiff to an award of punitive damages.**

Answer: Defendants deny the allegations in Paragraph 79.

**C.    COUNT THREE: FALSE LIGHT (as to Defendant Gethings)**

**1-73.    The allegations above are incorporated by reference into this Count as if fully setforth herein.**

Answer: Defendants incorporate their responses to Paragraphs 1-73 as if fully set forth herein

**74.    The aforementioned conduct by Defendant Gethings placed Plaintiff in a false light which would be highly offensive to a reasonable person.**

Answer: Defendants deny the allegations in Paragraph 74.

**75.    Defendant Gethings had knowledge of or acted and continues to act in recklessdisregard as to the false light in which Plaintiff would be placed.**

Answer: Defendants deny the allegations in Paragraph 75.

**76.    The aforementioned actions of Defendant Gethings placed Plaintiff in a false light forwhich the Plaintiff has suffered injuries and damages.**

Answer: Defendants deny the allegations in Paragraph 75.

**77.    As a consequence of Defendant Gethings' actions against Plaintiff, Plaintiff has sustained damages, including but not limited to, lost compensation, wages and benefits, emotional and physical distress, damage to reputation and loss of enjoyment   of life.**

Answer: Defendants deny the allegations in Paragraph 78.

**D.    COUNT FOUR: DEFAMATION (as to Defendant Gethings)**

**1-73. The allegations above are incorporated by reference into this Count as if fully setforth herein.**

1-73 Answer: Defendants incorporate their responses to Paragraphs 1-73 as if fully set forth herein.

**74. Defendant Gethings published defamatory statements.**

Answer: Defendants deny the allegations in Paragraph 74.

**75. The defamatory statements identified the Plaintiff to a third person or third persons.**

Answer: Defendants deny the allegations in Paragraph 75.

**76. The defamatory statements were published to a third person or third persons.**

Answer: Defendants deny the allegations in Paragraph 76.

**77. Plaintiff's reputation suffered injury because of the statement(s).**

Answer: Defendants deny the allegations in Paragraph 77.

**78. Defendant Gethings made the statement with actual knowledge that it was false or with reckless disregard of whether it was false.**

Answer: Defendants deny the allegations in Paragraph 78.

**79. Because of Defendant Gethings' actions against Plaintiff, Plaintiff has sustained damages, including but not limited to, lost compensation, wages and benefits, emotional and physical distress, damage to reputation and loss of enjoyment of life.**

Answer: Defendants deny the allegations in Paragraph 79.

**80. Plaintiff is entitled to punitive damage where Defendant Gethings acted with actualmalice when publishing the defamatory statements.**

Answer: Defendants deny the allegations in Paragraph 80.

**PRAYER FOR RELIEF**

Defendants deny that Plaintiff is entitled to the damages requested in the Prayer for Relief, or any damages whatsoever.

**Affirmative Defense Number1 – as to Count One**

Plaintiff's claim is barred in whole or in part because Plaintiff's conduct substantially or materially interfered with her bona fide job performance or the working relationship between her and the Board of Education.

**Affirmative Defense Number 2 – as to Count Two.**

1.      At all times referenced in the Complaint, Principal Gethings was an employee of the Board and was acting the course and scope of her official capacity as a Board employee and under color of law.

2.      The acts and conduct complained of by the Plaintiff occurred within the scope of Principal Gehtings' official duties as a Board employee and (1) the conduct attributed to Principal Gethings was not prohibited by federal law, constitutional or otherwise; (2) Plaintiff's right not to be subjected to such conduct by Principal Gethings was not clearly established at the time of the conduct; or (3) Principal Gethings actions were objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken.

3.      As a result, Principal Gethigns is entitled to qualified immunity.

**Affirmative Defense Number 3 – as to Counts Three and Four**

Plaintiff's claims are barred in whole or in part by the intracorporate communications privilege.

**Affirmative Defense Number 4 – as to Counts Three and Four**

Plaintiff's claims are barred in whole or in part because the alleged defamatory statements are truthful.

**Affirmative Defense Number 5 – as to Counts Three and Four**

Plaintiff's claims are barred in whole or in part because the alleged defamatory statements were statements of opinion.

**Affirmative Defense Number 6 – as to Counts Three and Four**

Plaintiff's claims are barred in whole or in part because Plaintiff sustained no damatges as a result of the alleged statements and consequently she has failed to state a claim upon which relief can be granted.

**Affirmative Defense Number 5 – as to all Counts**

Plaintiff has failed to state a claim upon which relief may be granted.

DEFENDANTS,
NEW HAVEN BOARD OF EDUCATION
and MARGARET-MARY GETHINGS in her
individual capacity


By____/s/ *Peter J. Murphy*_____
    Peter J. Murphy (ct26825)
    Sarah A. Westby (ct29548)
    For Shipman & Goodwin LLP
    One Constitution Plaza
    Hartford, CT  06103-1919
    Telephone: (860) 25l-5950
    Facsimile:  (860) 251-5316
    pjmurphy@goodwin.com
    swestby@goodwin.com
    Their Attorneys

11170597