UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JESSICA LIGHT, | : | CIVIL ACTION NO. |
|    Plaintiff, | : | 3:22-cv-00425 (JAM) |
| | : | |
| v. | : | |
| | : | |
| NEW HAVEN BOARD OF EDUCATION, | : | |
| MARGARET-MARY GETHINGS in her | : | |
| individual capacity | : | |
|    Defendants. | : | JULY 17, 2023 |

### DEFENDANTS' LOCAL RULE 56(a)(1) STATEMENT OF UNDISPUTED FACTS

Pursuant to D. Conn. L. Civ. P 56(a)(1), defendants the New Haven Board of Education ("the Board") and Margaret-Mary Gethings, Principal of Worthington Hooker Elementary School, submit this statement of material facts for which no genuine issue exits:

1. Plaintiff Jessica Light began working as a teacher for the New Haven Board of Education in 2010. See Deposition of Jessica Light ("Light Dep.") p. 23 (attached as Exhibit A).

2. Plaintiff first worked at Davis Street Interdistrict Magnet School, where she taught 4th through 6th over a period of five years. (Light Dep. p. 42-43).

3. Margaret-Mary Gethings has been the Principal of Worthington Hooker since 2018. (Answer ¶5); see also Deposition of Margaret-Mary Gethings on 12/19/22 ("Gethings Dep.") p. 13 (Attached as Exhibit B).

4. Jenny Clarino has been the Assistant Principal at Worthington Hooker since 2020. See Deposition of J. Clarino ("Clarino Dep.") p. 13, attached as Exhibit C.

5. In March 2020, the COVID-19 pandemic started, and Governor Lamont ordered all schools closed to in-person instruction effective March 17, 2020. *See* https://www.ctpost.com/connecticut/article/More-transmissible-COVID-variant-spreading-fast-17687726.php.

6. In July 2020, Plaintiff attended a car caravan in New Haven with the New Haven Teachers' Union and was interviewed on television. (Complaint ¶ 10).

7. On November 2, 2022, Ms. Clarino and Ms. Gethings met with Plaintiff to discuss her recent comments at a parents' meeting, and to share their perspective with Plaintiff and make her aware of the impact of her statements. (Answer ¶ 14).

8. On that same date, all teachers were given a form printed by her union, which explained that not all statements by teachers constitute protected speech. (Answer ¶ 14) (Gethings Dep. p. 43)(Declaration from M. Gethings ("Gethings Dec") ¶ 12, attached as Exhibit D. A copy of that document is attached as Exhibit 4 to the Gethings Dec.

9. Later that month, Ms. Gethings spoke to Plaintiff and said she should not be giving her cell phone number to parents after she noticed Plaintiff listed her cell phone number on a slide in a parent open house. (Gethings Dep. p. 51-52). The school's handbook provides the same guidance, which is meant to protect teachers. (Gethings Dep. p. 47-48).

10. Plaintiff submitted written comments to the January 2021 Board meeting. (Light Dep. 56). The minutes from that meeting reflect Ms. Light's written submission, which started out: "I'm Jessica Light, I'm a teacher and I do not want to die." The submission later stated: "The vaccine is weeks away, the end is near, please do not risk my life and additional

community spread for this charade." *See* https://www.nhps.net/site/Default.aspx?PageID=982 (last visited July 10, 2023).

11. On January 19, 2021, a Worthington Hooker parent and PTA member, Vickie Grudbaugh, brought bagels to the school for the teachers' return, and at that time she expressed to Ms. Gethings that she was concerned for the third graders in Ms. Light's classroom given her comments to the Board, and she would not want her child in that class. *See* 30(b)(6) Deposition of M. Gethings, dated 2/27/23 ("Gethings 2/27/23 Dep."), p. 22-23 (attached as Exhibit E).

12. In May 2021, after Ms. Grudbaugh raised another concern about Plaintiff's negative reaction to the gift cards the PTA gave to the teachers, Ms. Clarino asked Ms. Grudbaugh to put it in writing in accordance with the school's standard practice for parents raising concerns verbally at school. (Clarino Dep. p. 96). Ms. Grudbaugh then sent an email addressing that subject, as well as her prior concerns about Plaintiff's statements to the Board. A true and accurate copy of that email is attached as Exhibit 10 to the Gethings Declaration.

13. In the 2020-2021 school year, another parent Dominique O'Connell, also reported concerns about Plaintiff's statements. Timothy Shortt also indicated that he avoids Plaintiff because he disagreed with her on COVID issues and she always asked him to speak against reopening to the Board. (Gethings 2/27/23 p. 23)(Clarino Dep. p. 95)(Ecf. 1-1 p. 18 of 26).

14. Plaintiff spoke at the February 22, 2023 Board meeting. *See* https://www.nhps.net/site/Default.aspx?PageID=982 (last visited July 10, 2023). As noted in

3

the Complaint, Plaintiff "urged the Board of Education to adopt a unified district wide policy regarding COVID-19." (Complaint ¶ 10).

15. During the pandemic, Plaintiff's family created a learning pod with two other families. In this setup, the Parents would take turns providing academic instruction and oversight to all three families' children, and the parents all vowed to stay hypervigilant about COVID precautions and to limit social conduct. (Light Dep. p. 25-29, 31-32). Plaintiff said she would move into a hotel if she had exposure at work. (Light Dep. p. 158).

16. Plaintiff's children remained in that learning pod and receiving remote instruction even after students were allowed to return to the school for in-person instruction. (Id.)

17. In February and March 2021, Plaintiff texted her friend, Sarah Miller, who does not work at or have children at Worthington Hooker. In those texts, Plaintiff stated: "There are two teachers positive at Hooker I heard through the grapevine only but then confirmed with actual teachers." (Light Dep. p. 19, 150, 156-159).

18. After hearing about those two cases through the grapevine, Plaintiff saw one teacher confirmed her status on Facebook, and then Plaintiff emailed the other teacher to confirm as she had not received any notice through the school. (Light Dep. p. 157-58).

19. In Spring 2021, another parent in the self-contained learning pod, Claire Rowe, raised questions about a teacher having COVID, but no notice being sent out, to a teacher, which indicated that she had information from inside the school. (Gethings 2/27/23 p. 21-23). Wolfgang Fink, another member of the pod, asked to walk through the school to see if proper distancing was in place and seemed knowledgeable of school-based decisions. (Id.)

20. On March 2, 2022, a parent Matt Rodeheffer, whose ex-wife is a good friend of Plaintiff, emailed his daughter's teacher asking if there have been any teachers/staff out with COVID, as his ex-wife "is being told now that there are many cases currently . . . ." (Gethings Dec. ¶ 13) (Gethings Dep. p. 39).

21. On March 9, 2021, Melody Gallagher, a representative of the Executive Board of the New Haven Teachers Union, posted a chart on the New Haven Public School Advocates Facebook group, which showed the schools that had positive COVID-19 cases since January 19, 2021. *See* DEF000165, which is the last page of Exhibit 2 to the Gethings Declaration. This chart showed Worthington Hooker having at least 1 case, and Plaintiff then commented on the post "I don't think letters were sent." In response to someone asking "For your school?", Plaintiff then commented "Hooker never sent a letter."

22. Ms. Gethings believed Plaintiff made that post in her capacity as a teacher as she was talking about Hooker. (Gethings Dep. p. 30-31).

23. Plaintiff's post gave the impression that the school had a COVID case that required a notification letter, and that no letter was sent, but that was false. There was no situation that required sending a letter. (Gethings Dep. p. 67).

24. On March 12, 2021, Ms. Gethings sent a schoolwide email stating: "It has been brought to our attention from several community members including staff and parents that WHS is being mentioned with inaccurate information which also includes social media. We ask that if you are aware of any negative talk or postings, to please help protect and preserve our school. We hope that people will refrain from making their own inferences and/or misrepresenting our school. We must always keep in mind that we are working together and

5

not against each other." (Gethings Dec. ¶ 14). A true and accurate copy of that email is attached as Exhibit 6 to the Gethings Declaration.

25. Following that Facebook post, teachers Kathleen Morrison, Megan Rose, Hilarie Alden, and Teacher X all reported to Ms. Gethings and Ms. Clarino that they were concerned about Plaintiff's posts, which were misrepresenting the school. (Gethings 2/27/23 p. 25-26).

26. On March 22, 2021, at 5:30 a.m., Plaintiff emailed Ms. Gethings asking for clarification about the distance students should maintain between themselves while eating. Ms. Gethings replied less than 10 minutes later, stating: "We are awaiting full details from the district. I will share as soon as I know them. I have heard of other districts yeah 2 to 3 feet everywhere so I am not sure. We will only make changes once we have the directions & approval." (Gethings Dec. ¶ 16). A true and accurate copy of that email chain is attached as Exhibit 8 to the Gethings Dec.

27. At that time, Ms. Gethings was meeting every Wednesday with the Assistant Superintendent and 13 other principals to discuss COVID-19 and the changing protocols, as this was a very fluid time. (Gethings Dep. p. 57-58).

28. That night, Plaintiff spoke at the Board meeting. *See* https://www.nhps.net/site/Default.aspx?PageID=982 (last visited July 10, 2023). As alleged in the Complaint, Plaintiff "raised questions about the lack of consistency in COVID-19 safety rules across the district and the challenges of enforcing safety protocols." (Complaint ¶10).

29. That same night, Ms. Gethings emailed Plaintiff to say:

> I am sorry if you didn't get my prompt reply to your morning email, I responded very quickly. I assured you that I would seek an answer regarding

6

snacks and lunch distancing which I have done. I said we need to remain patient for a response and that in the meantime we would be following the existing guidelines, I am sorry that you felt you needed to bring the same question to the board. We all must be patient as changes are being considered in response to CDC new guidelines, then reviewed by Dr. Tracey [Superintendent of Schools] and our health department will advise. All of this information will be forthcoming. I feel like we can offer you a response to some of your questions, please do not hesitate to come to us as we have encouraged you to do."

(Gethings Dec. ¶ 8).

30. On March 26, 2021, Plaintiff met with Ms. Gethings and Ms. Clarino to receive her mid-year TEVAL. Within that document, Ms. Gethings stated: "As we discussed in your mid year, please consider asking any time you have a concern, if we do not have the answer we will do our best to attain the answer." (Complaint and Answer ¶ 20-21)(Gethings Dec. ¶ 15). A true and accurate copy of the TEVAL is attached as Exhibit 7 to the Gethings Declaration.

31. In that meeting, the parties discussed Ms. Gethings' decision to move Plaintiff from third grade to first grade for the 2021-2022 school year due to the fact that her son would be in third grade that year. (Complaint and Answer ¶ 21).

32. In that meeting, the parties also discussed how confidential information about Teacher X's COVID-positive status had been disclosed, and how Teacher X was thinking about filing a complaint against Plaintiff. Ms. Gethings did not accuse Plaintiff of leaking information about Teacher X. (Gethings Dep. p. 32)(Complaint and Answer ¶ 20).

33. On March 31, 2021, Ms. Gethings and Ms. Clarino met with Teacher X, Plaintiff, and their union representative (Ms. Morrison) to bring the two teachers together, get clarity, and to get to the bottom of what may or may not have been said. (Gethings Dep. p. 32)(Complaint and Answer ¶ 22).

34. In April 2021, Plaintiff submitted a complaint about Ms. Gethings and Ms. Clarino, which listed all of the areas where she believed she was being retaliated against as of that date. Plaintiff attempted to be as thorough as possible when drafting her complaint. (Light p. 93-94)(Complaint and Answer ¶ 26)(Gethings Dec. ¶ 8) A true and accurate copy of that complaint is attached as Exhibit 2 to the Gethings Dec.

35. On June 7, 2021, Ms. Gethings and Ms. Clarino submitted a document that responded to Plaintiff's complaint and constituted a cross-complaint against Plaintiff. (Gethings Dec. ¶ 9)(Complaint and Answer ¶ 28). A true and accurate copy of that complaint is attached as Exhibit 3 to the Gethings Dec.[1]

36. In May 2021, Worthington Hooker second grade teacher Hilary Alden filed a complaint regarding Plaintiff. (Gethings Dec. ¶ 7). A true and accurate copy of that complaint is attached as Exhibit 1 to the Gethings Declaration.

37. At the time, one of Plaintiff's children attended Worthington Hooker and was in Ms. Alden's second grade class. (Complaint and Answer ¶ 31).

38. Ms. Alden stated that she had a difficult relationship with and conflict with Plaintiff in her capacity of a parent of a student in Ms. Alden's class. (Gethings Dep. p. 78-79, 96-97).

39. Ms. Tortora had Plaintiff's son in class the prior school year, when he was in first grade, and she had difficulties with Plaintiff at that time, too. (Gethings Dep. p. 79).

---

[1] Bates number DEF000131-137 were contained within the Gethings and Clarino document. Those documents were the emails concerning Plaintiff's son that allegedly were found on Mr. Salem's computer. Because they relate to a minor, who is not a party to this case, at this time they have been removed from the Gethings and Clarino document.

40. In a prior school year, Ms. Morrison had Plaintiff's older son in class, and she had problems with Plaintiff, too. (Gethings Dep. p. 79).

41. In the 2021-2022 school year, Plaintiff's son would be in third grade, the same grade Plaintiff taught. (Complaint and Answer ¶ 21).

42. Paul Salem was a third-grade teacher for the 2020-2021 school year, and he told Ms. Gethings that he did not want to have Plaintiff's son in class and did not want to teach the same grade as her. (Gethings Dep. p. 85, 87, 155).

43. For the 2021-2022 school year, Ms. Gethings made the following personnel changes:

   a. Ms. Villanueva was moved from second grade to third grade.

   b. Ms. Tortora was moved from first grade to kindergarten.

   c. Ms. Light was moved from third grade to first grade.

   d. Ms. Paine was moved from first grade to second grade.

(Gethings 2/27/23 Dep. p. 91, 96)(Gethings Dec. ¶6).

44. None of those individuals requested that change. (Gethings 2/27/23 p. 96).

45. Ms. Gethings consulted with Ms. Clarino and Keisha Redd-Hannans, Assistant Superintendent, before making those changes. (Gethings Dep. p. 83). She also consulted with Lisa Mack, the Board's head of human resources. (Gethings Dep. p. 87-88). She decided to make those changes in January or February of 2021 and consulted with Ms. Redd-Hannans in February about them. (Gethings Dep. p. 80)(Gethings 2/27/23 p.94).

46. On May 25, 2021, Ms. Gethings discovered that Phyllis Maffuid, a paraprofessional, was covering Ms. Light's classroom at dismissal time. At that time, the

9

school was engaged in a very specific dismissal process, where parents would pull up to the building, show a sign with their child's name, and student would then be sent out from the classroom to the car. (Gethings Dec. ¶ 17-18).

47. Ms. Gethings saw Ms. Maffuid with her back to the cars and she was not familiar with the students in that class because she was a special education paraprofessional and worked with a different cohort. Ms. Maffuid was covering for Ms. Light, who was in the bathroom getting changed for running club. (Gethings Dec. ¶ 18).

48. It was inappropriate for Ms. Maffuid to be covering Ms. Light's classroom at that time, which Ms. Gethings explained to Ms. Light in an email on May 25, 2021. (Gethings Dec. ¶ 19).

49. In October 2021, Ms. Gethings and Ms. Clarino spoke with teacher Timothy Shortt, and they told him that some teachers had reported to them (Ms. Gethings and Ms. Clarino) that they were concerned that Mr. Shortt was aligning himself with Plaintiff to take down the administration (Ms. Gethings and Ms. Clarino). (Gethings Dep. p. 143-144).

50. Human resources initially started an investigation of Plaintiff's complaint, but then hired the law firm of Bercham & Moses to conduct the investigation of Plaintiff's complaint against Ms. Gethings and Ms. Clarino, their reply and counter-complaint against Plaintiff, and Mrs. Alden's complaint against Plaintiff. *See* Deposition of T. Bonner ("Bonner Dep.") pg. 49-52, attached as Exhibit F.

51. Bercham & Moses then issued reports on the three complaints, including a report on the investigation into Plaintiff's complaint. (Ecf. 1-1)

52. Bercham & Moses found that one of the issues raised in Plaintiff's complaint to human resources was unfair to Plaintiff and retaliation for Plaintiff's Facebook post. (Light Dep. p. 102-103)(Ecf. 1-1, pg. 10 of 26).

53. Bercham & Moses found that the remaining items, were not retaliatory, including the grade change and the language in the TEVAL. (Light Dep. p. 98, 102-106, 109, 110)(Ecf. 1-1, pg. 10-11 and 18-20 of 26).

54. In addition, Bercham & Moses found that Ms. Gethings and Ms. Clarino retaliated against Plaintiff based on their comments to Ms. Maffuid about assisting Plaintiff and to Mr. Shortt about his reasons for seeking the union steward position, as well as by Ms. Gethings allegedly causing documents to appear on Mr. Salem's printer. (Light Dep. 111)(Ecf. 1-1, p. 25 of 26).

55. Plaintiff has "never been formally disciplined." (Light Dep.112).

56. Plaintiff remains employed as a teacher, and receives the same salary level or higher than she had in the 2020-2021 school year. (Light Dep. p. 113).

57. In August 2022, Plaintiff agreed to a voluntary transfer from a first grade classroom at Worthington Hooker to a second grade classroom at Ross Woodward elementary school. (Light Dep. p. 116). Therefore, Plaintiff is no longer working at Worthington Hooker.

58. Plaintiff finds the work at Ross Woodward to be "rewarding." (Light Dep. p. 137).

59. Plaintiff has at all times been a member of the teacher's union, and therefore is subject to the collective bargaining agreement ("CBA") between the union and the Board.

(100) Among other things, the CBA addresses pay and disciplinary issues. (Light Dep. p. 114).

60. As a tenured teacher, Plaintiff is subject to the protections set forth in Conn. Gen. Stat. § 10-151, which governs teacher terminations.

DEFENDANTS,

NEW HAVEN BOARD OF EDUCATION
and MARGARET-MARY GETHINGS

By  /s/ *Peter J. Murphy*
 Peter J. Murphy (ct26825)
 Shipman & Goodwin LLP
 One Constitution Plaza
 Hartford, CT  06103-1919
 Telephone: (860) 251-5950
 Facsimile: (860) 251-5316

 Their Attorney