**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JESSICA LIGHT | CIVIL ACTION NO: |
| Plaintiff, | 3:22-CV-00425 (JAM) |
| v. | |
| NEW HAVEN BOARD OF EDUCATION & MARGARET-MARY GETHINGS in her individual capacity | |
| Defendants. | AUGUST 31, 2023 |

**LOCAL RULE 56(a)(2) STATEMENT OF FACTS IN
OPPOSITION TO SUMMARY JUDGMENT**

**A.  Response to Defendants' Local Rule 56(a)1 Statement**

1.  Plaintiff Jessica Light began working as a teacher for the New Haven Board of Education in 2010. See Deposition of Jessica Light ("Light Dep.") p. 23 (attached as Exhibit A).

**RESPONSE: Admitted.**

2.  Plaintiff first worked at Davis Street Interdistrict Magnet School, where she taught 4th through 6th over a period of five years. (Light Dep. p. 42-43).

**RESPONSE: Admitted.**

3.  Margaret-Mary Gethings has been the Principal of Worthington Hooker since 2018. (Answer ¶ 5); see also Deposition of Margaret-Mary Gethings on 12/19/22 ("Gethings Dep.") p. 13 (Attached as Exhibit B).

**RESPONSE: Admitted.**

MONARCH LAW LLC
363 NEW BRITAIN ROAD, FIRST FLOOR, BERLIN, CONNECTICUT 06037
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

4. Jenny Clarino has been the Assistant Principal at Worthington Hooker since 2020. See Deposition of J. Clarino ("Clarino Dep.") p. 13, attached as Exhibit C.

**RESPONSE: Admitted.**

5. In March 2020, the COVID-19 pandemic started, and Governor Lamont ordered all schools closed to in-person instruction effective March 17, 2020. *See* https://www.ctpost.com/connecticut/article/More-transmissible-COVID-variant-spreading-fast-17687726.php.

**RESPONSE: Admit the COVID-19 pandemic generally started in or around March 2020 and that Governor Lamont ordered all schools closed to in-person instruction effective March 17, 2020. Deny that the website link supports the stated fact.**

6. In July 2020, Plaintiff attended a car caravan in New Haven with the New Haven Teachers' Union and was interviewed on television. (Complaint ¶ 10).

**RESPONSE: Admitted. *See also* Exhibit A, Affidavit of Jessica Light ¶ 9 ("Light Aff.").**

7. On November 2, 2022, Ms. Clarino and Ms. Gethings met with Plaintiff to discuss her recent comments at a parents' meeting, and to share their perspective with Plaintiff and make her aware of the impact of her statements. (Answer ¶ 14).

**RESPONSE: Admit that Misses Clarino and Gethings met with Plaintiff in a remote/virtual environment. Deny the date of the meeting and that Misses Clarino and Gethings' motive and purpose for the meeting was to "share their perspective with Plaintiff and make her aware of the impact of her statements." *See* Light Aff. ¶ 16.**

MONARCH LAW LLC
363 NEW BRITAIN ROAD, FIRST FLOOR, BERLIN, CONNECTICUT 06037
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

8.  On that same date, all teachers were given a form printed by her [sic] union, which explained that not all statements by teachers constitute protected speech. (Answer ¶ 14) (Gethings Dep. p. 43) (Declaration from M. Gethings ("Gethings Dec") ¶ 12, attached as Exhibit D. A copy of that document is attached as Exhibit 4 to the Gethings Dec.

**RESPONSE: Denied. Ms. Gethings erroneously testified that the letter was given to Ms. Light at a "staff meeting" allegedly held on November 2, 2020; however, there was no in-person staff meeting on this date per the Superintendent's direction for virtual meetings. On this date, the Plaintiff attended a virtual meeting with Misses Gethings and Clarino. The document attached as "Exhibit 4" to the Gethings Dec is a letter on the AFT Connecticut letterhead and dated July 21, 2020. Moreover, the letter is addressed to "PreK-12 & PSRP Union Presidents." While the contents of this letter speak for themselves, in response to this alleged undisputed fact,[1] it is important to highlight that AFT clarified to union members that: "The COVID-19 pandemic is clearly a matter of public concern. The safe reopening of our public schools is also a matter of public concern. Any <u>citizen</u> speaking about these matters would correctly assert their speech is protected by the 1st Amendment."**

9.  Later that month, Ms. Gethings spoke to Plaintiff and said she should not be giving her cell phone number to parents after she noticed Plaintiff listed her cell phone number on a slide in a parent open house. (Gethings Dep. p. 51-52). The school's handbook provides the same guidance, which is meant to protect teachers. (Gethings Dep. p. 47-48).

**RESPONSE: Admit that Ms. Gethings "spoke to" Plaintiff about and that Ms. Gethings' testimony supports this allegedly undisputed fact; however, the veracity of her testimony is denied. Deny that the school's handbook provided the same guidance. For example, the**

---

[1] As well as defendants' Motion for Summary Judgment as a whole.

**MONARCH LAW LLC**
363 NEW BRITAIN ROAD, FIRST FLOOR, BERLIN, CONNECTICUT 06037
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

**handbook produced in this matter is for the 2021-2022 school year, which was produced and/or created after November 2020.** *See* **Exhibit 3 to the Gethings Declaration (DEF000110);** *see also* **Exhibit E, Deposition of Defendant, Margaret-Mary Gethings, dated December 19, 2022 ("Gethings Dep.") 48-49.**

10.  Plaintiff submitted written comments to the January 2021 Board meeting. (Light Dep. 56). The minutes from that meeting reflect Ms. Light's written submission, which started out: "I'm Jessica Light, I'm a teacher and I do not want to die." The submission later stated: "The vaccine is weeks away, the end is near, please do not risk my life and additional community spread for this charade." See https://www.nhps.net/site/Default.aspx?PageID=982 (last visited July 10, 2023).

**RESPONSE: Admitted; however, the correct website/link for the January 11, 2021 meeting minutes is:**

**https://www.nhps.net/cms/lib/CT50000447/Centricity/Domain/29/1.11.2021BOE%20Minutes.pdf.**

11.  On January 19, 2021, a Worthington Hooker parent and PTA member, Vickie Grudbaugh, brought bagels to the school for the teachers' return, and at that time she expressed to Ms. Gethings that she was concerned for the third graders in Ms. Light's classroom given her comments to the Board, and she would not want her child in that class. See 30(b)(6) Deposition of M. Gethings, dated 2/27/23 ("Gethings 2/27/23 Dep."), p. 22-23 (attached as Exhibit E).

**RESPONSE: The correct spelling of the woman's last name is Grubaugh. Admit that the citation to Ms. Gethings's deposition testimony supports this allegedly undisputed fact. Ms. Gethings also testified at her individual deposition two months earlier:**

> **She said that she would never want to have a child in Ms. Light's classroom and was fearful for the children that would have to have a teacher that spoke so strongly about not going back to school. She was delighted that school was**

**MONARCH LAW LLC**
**363 NEW BRITAIN ROAD, FIRST FLOOR, BERLIN, CONNECTICUT 06037**
**TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039**

**opening and that her four then five-year old daughter would not be learning on a Chromebook and appreciated our efforts of reopening the schools.**

**Gethings Dep. 180.  Deny that Ms. Grubaugh made these alleged statements to Ms. Gethings on January 19, 2021. Berchem Moses attorney, Paul Testa, investigated the "retaliatory complaint" filed by Misses Gethings and Clarino against Plaintiff. The "Investigation Summary Report" that Attorney Testa prepared fails to identify Ms. Grubaugh by name or specifically address her alleged statements. See Exhibit 13 (LIGHT002873-2285) to the Light Affidavit. Similarly, the report prepared by Attorney Goldberg fails to mention Ms. Grubaugh's alleged statements to Ms. Gethings on January 19, 2021. *See* Doc. No. 1-1, p. 6 of 26.**

12.  In May 2021, after Ms. Grudbaugh raised another concern about Plaintiff's negative reaction to the gift cards the PTA gave to the teachers, Ms. Clarino asked Ms. Grudbaugh to put it in writing in accordance with the school's standard practice for parents raising concerns verbally at school. (Clarino Dep. p. 96). Ms. Grudbaugh then sent an email addressing that subject, as well as her prior concerns about Plaintiff's statements to the Board. A true and accurate copy of that email is attached as Exhibit 10 to the Gethings Declaration.

**RESPONSE: The correct spelling of the woman's last name is Grubaugh. Admit that the citation to Ms. Clarino's deposition testimony supports, in part, this allegedly undisputed fact. Admit that Ms. Grubaugh sent the email, the contents of which speak for themselves. Deny that Worthington Hooker School has a "standard practice for parents raising concerns verbally at school." Because if it did, then Ms. Gethings would have asked Ms. Grubaugh to put the statements she allegedly made during her bagel delivery in writing. Yet, Ms. Gethings testified that she did not: (a) solicit an email from Ms. Grubaugh, and (b) know why Ms. Grubaugh put her concerns in a writing. *See* Gethings Dep. 181 (Ex. E).**

13.  In the 2020-2021 school year, another parent Dominique O'Connell, also reported concerns about Plaintiff's statements. Timothy Shortt also indicated that he avoids Plaintiff because he disagreed with her on COVID issues and she always asked him to speak against reopening to the Board. (Gethings 2/27/23 p. 23)(Clarino Dep. p. 95)(Ecf. 1-1 p. 18 of 26).

**RESPONSE: Admit that the citation to Ms. Gethings' deposition testimony supports, in part, this allegedly undisputed fact. To the extent it can be implied from this alleged undisputed fact, deny that Ms. O'Connell had a child in Ms. Light's class. Furthermore, Attorney Goldberg's report shows that Misses Gethings and Clarino attributed other concerns and parents' comments to Plaintiff when her name was never mentioned. See Doc. No. 1-1 at p. 5 of 26. Deny the remainder. Mr. Shortt simply stated to Attorney Goldberg that he was not "particularly close" with Plaintiff. During her interview with Attorney Goldberg, Ms. Gethings denied that Plaintiff's name was mentioned in her conversation with Mr. Shortt but stated the opposite at her deposition. Compare *id*. at p. 5, 17-18 of 26 with Gethings Dep. 144.**

14.  Plaintiff spoke at the February 22, 2023 Board meeting. See https://www.nhps.net/site/Default.aspx?PageID=982 (last visited July 10, 2023). As noted in the Complaint, Plaintiff "urged the Board of Education to adopt a unified district wide policy regarding COVID-19." (Complaint ¶ 10).

**RESPONSE: Admit Plaintiff spoke at the February Board meeting and the quoted text is from Plaintiff's Amended Complaint at ¶ 10(b). Deny that the website/link directly relates to Plaintiff's comments at the meeting.**

15.  During the pandemic, Plaintiff's family created a learning pod with two other families. In this setup, the Parents would take turns providing academic instruction and oversight to all three families' children, and the parents all vowed to stay hypervigilant about COVID precautions and to

MONARCH LAW LLC
363 NEW BRITAIN ROAD, FIRST FLOOR, BERLIN, CONNECTICUT 06037
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

limit social conduct. (Light Dep. p. 25-29, 31-32). Plaintiff said she would move into a hotel if she had exposure at work. (Light Dep. p. 158).

**RESPONSE: Deny that Plaintiff's family "created" the learning pod; Claire Rowe asked Plaintiff if she "would be willing to be in [it]." Exhibit D, Deposition of Jessica Light, dated December 14, 2022 ("Light Dep.") 26; Light Aff. ¶ 12; and Exhibit B, Affidavit of Claire of Rowe ("Rowe Aff.")  ¶¶ 4-6. Deny that the parents took turns providing academic instruction. Light Aff. ¶ 12; Rowe Aff. ¶ 8. Students received instruction remotely from teachers, not from parents. *Ibid.* Also, while "vigilant" at the beginning of the pandemic, Plaintiff states in her deposition that the "scale changed over time." Light Dep. 32.**

16.  Plaintiff's children remained in that learning pod and receiving remote instruction even after students were allowed to return to the school for in-person instruction. (Id.)

**RESPONSE: Admitted.**

17.  In February and March 2021, Plaintiff texted her friend, Sarah Miller, who does not work at or have children at Worthington Hooker. In those texts, Plaintiff stated: "There are two teachers positive at Hooker I heard through the grapevine only but then confirmed with actual teachers." (Light Dep. p. 19, 150, 156-159).

**RESPONSE: Admitted. *See also* Light Aff. ¶ 21.**

18.  After hearing about those two cases through the grapevine, Plaintiff saw one teacher confirmed her status on Facebook, and then Plaintiff emailed the other teacher to confirm as she had not received any notice through the school. (Light Dep. p. 157-58).

**RESPONSE: Admit that Plaintiff saw one teacher confirm her status on Facebook and she emailed "the other teacher." Deny the remainder. *See* Light Aff. ¶¶ 23. Plaintiff replied to an**

email sent by "the other teacher" and asked, "Are you ok? Can I help you in anyway?" The teacher replied: "Thanks for the offer. I am recovering from Covid. Hope to be back next week?" This teacher had been absent from in-person learning for at least 2 weeks. *Ibid*; Rowe Aff. ¶¶ 8-10.

19. In Spring 2021, another parent in the self-contained learning pod, Claire Rowe, raised questions about a teacher having COVID, but no notice being sent out, to a teacher, which indicated that she had information from inside the school. (Gethings 2/27/23 p. 21-23). Wolfgang Fink, another member of the pod, asked to walk through the school to see if proper distancing was in place and seemed knowledgeable of school-based decisions. (Id.)

RESPONSE: Admit that Claire Rowe "called or spoke with a teacher regarding Teacher X" and Wolfgang Fink was a member of the learning pod and that he asked to walk through the school. See Exhibit F, Deposition of Defendant, New Haven Board of Education / Margaret-Mary Gethings as corporate representative, dated February 27, 2023 ("NHBOE-Gethings Dep.") 21-22; *see also* Rowe Aff. ¶¶ 7-12 and Exhibit C, Affidavit of Wolfgang Fink ("Fink Aff.") ¶¶ 9-12. Deny the remainder, including the suggestion that Claire Rowe had "inside information." Rowe Aff. ¶¶ 9-13.

20. On March 2, 2022, a parent Matt Rodeheffer, whose ex-wife is a good friend of Plaintiff, emailed his daughter's teacher asking if there have been any teachers/staff out with COVID, as his ex-wife "is being told now that there are many cases currently . . . ." (Gethings Dec. ¶ 13) (Gethings Dep. p. 39).

RESPONSE: Deny that Mr. Rodeheffer's ex-wife is a good friend of Plaintiff. Light Aff. ¶ 24. Admit that Mr. Rodeheffer sent an email to a teacher named Erin Bullen on March 2, 2021 at 7:45 am, which Ms. Bullen later forwarded to Ms. Gethings at 4:48 pm. At 7:40 pm, Ms.

**Gethings replied to Ms. Bullen and asked if she had responded to Mr. Rodeheffer. Ms. Gethings even suggested the following response: "Thank you for informing me and please continue to keep me updated with your decision. So far, we have not had any positive cases reported that have taken place at school." *See* DEF000120-121 (Pl.'s Exhibit I).**

21.  On March 9, 2021, Melody Gallagher, a representative of the Executive Board of the New Haven Teachers Union, posted a chart on the New Haven Public School Advocates Facebook group, which showed the schools that had positive COVID-19 cases since January 19, 2021. See DEF000165, which is the last page of Exhibit 2 to the Gethings Declaration. This chart showed Worthington Hooker having at least 1 case, and Plaintiff then commented on the post "I don't think letters were sent." In response to someone asking "For your school?", Plaintiff then commented "Hooker never sent a letter."

**RESPONSE: Deny that Melody Gallagher posted the chart on the New Haven Public School Advocates ("NHPSA") Facebook page. Light Aff. ¶ 26. On March 9, 2021, Ms. Gallagher shared a post that originally appeared on the NHPSA Facebook page on March 6, 2021 ("NHPS Covid reports to the State since Jan 19 reopening."). *Ibid.* (including Ex. 7); *see also* DEF000165 (Ex. 2 to Gethings Dec.). Ms. Gallagher's post states, in relevant part, "apparently these are schools that have had positive student covid cases in NHPS since 1/19, as reported to the state and on the state website." Light Aff. ¶ 26. Admit Plaintiff commented on the original post, which included a chart titled "COVID-19_Cases_in_CT_Schools_By-School_-3." *Ibid*.**

22.  Ms. Gethings believed Plaintiff made that post in her capacity as a teacher as she was talking about Hooker. (Gethings Dep. p. 30-31).

**RESPONSE: Admit that Ms. Gethings' testimony supports this allegedly undisputed fact; however, the veracity of her legal conclusion is denied. *See* Light Aff. ¶¶ 26-29.**

MONARCH LAW LLC
363 NEW BRITAIN ROAD, FIRST FLOOR, BERLIN, CONNECTICUT 06037
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

23. Plaintiff's post gave the impression that the school had a COVID case that required a notification letter, and that no letter was sent, but that was false. There was no situation that required sending a letter. (Gethings Dep. p. 67).

**RESPONSE: Denied. The chart imbedded in the NHPSA Facebook post clearly indicated that Worthington Hooker School had at least 1 reported student COVID case – but not more than 5 – for the week of February 11, 2021. *See* Light Aff. ¶ 26.**

24. On March 12, 2021, Ms. Gethings sent a schoolwide email stating: "It has been brought to our attention from several community members including staff and parents that WHS is being mentioned with inaccurate information which also includes social media. We ask that if you are aware of any negative talk or postings, to please help protect and preserve our school. We hope that people will refrain from making their own inferences and/or misrepresenting our school. We must always keep in mind that we are working together and not against each other." (Gethings Dec. ¶ 14). A true and accurate copy of that email is attached as Exhibit 6 to the Gethings Declaration.

**RESPONSE: Admit Ms. Gethings sent this email, the content of which speaks for itself. Deny the veracity of Ms. Gething's statements in said email. Light Aff. ¶ 28.**

25. Following that Facebook post, teachers Kathleen Morrison, Megan Rose, Hilarie Alden, and Teacher X all reported to Ms. Gethings and Ms. Clarino that they were concerned about Plaintiff's posts, which were misrepresenting the school. (Gethings 2/27/23 p. 25-26).

**RESPONSE: Deny that Plaintiff's posts misrepresented the school. Light Aff. ¶¶ 26-29. Admit that Ms. Gethings' testimony supports the remainder of this allegedly undisputed fact; however, the veracity of her testimony is denied. *Ibid.***

MONARCH LAW LLC
363 NEW BRITAIN ROAD, FIRST FLOOR, BERLIN, CONNECTICUT 06037
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

26.  On March 22, 2021, at 5:30 a.m., Plaintiff emailed Ms. Gethings asking for clarification about the distance students should maintain between themselves while eating. Ms. Gethings replied less than 10 minutes later, stating: "We are awaiting full details from the district. I will share as soon as I know them. I have heard of other districts yeah 2 to 3 feet everywhere so I am not sure. We will only make changes once we have the directions & approval." (Gethings Dec. ¶ 16). A true and accurate copy of that email chain is attached as Exhibit 8 to the Gethings Dec.

**RESPONSE: Admit Plaintiff emailed Ms. Gethings on that day/time and Ms. Gethings replied. The contents of the email string speak for themselves. Plaintiff initially inquired: "Hope you had a good weekend, my understanding is in areas where students are eating is to remain 6 feet apart. Since students eat breakfast and snack in our rooms does six feet still able [sic] to all classroom [sic] and the cafeteria."** *See* **Exhibit 8 to the Gethings Declaration.**

27.  At that time, Ms. Gethings was meeting every Wednesday with the Assistant Superintendent and 13 other principals to discuss COVID-19 and the changing protocols, as this was a very fluid time. (Gethings Dep. p. 57-58).

**RESPONSE: Admit that in March of 2021, Ms. Gethings met every Wednesday with the Assistant Superintendent and 13 other principals to "share the wealth" and bounce questions off each other. Gethings Dep. 57-58**. **Deny the remainder.**

28.  That night, Plaintiff spoke at the Board meeting. See https://www.nhps.net/site/Default.aspx?PageID=982 (last visited July 10, 2023). As alleged in the Complaint, Plaintiff "raised questions about the lack of consistency in COVID-19 safety rules across the district and the challenges of enforcing safety protocols." (Complaint ¶10).

**MONARCH LAW LLC**
**363 NEW BRITAIN ROAD, FIRST FLOOR, BERLIN, CONNECTICUT 06037**
**TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039**

**RESPONSE: Admit that Plaintiff spoke at the March 22nd Board meeting and the quoted text is from Plaintiff's Amended Complaint at ¶ 10(b). Deny that the website/link directly relates to Plaintiff's comments at the meeting.**

29. That same night, Ms. Gethings emailed Plaintiff to say:

> I am sorry if you didn't get my prompt reply to your morning email, I responded very quickly. I assured you that I would seek an answer regarding snacks and lunch distancing which I have done. I said we need to remain patient for a response and that in the meantime we would be following the existing guidelines, I am sorry that you felt you needed to bring the same question to the board. We all must be patient as changes are being considered in response to CDC new guidelines, then reviewed by Dr. Tracey [Superintendent of Schools] and our health department will advise. All of this information will be forthcoming. I feel like we can offer you a response to some of your questions, please do not hesitate to come to us as we have encouraged you to do.

(Gethings Dec. ¶ 8).

**RESPONSE: Admit that Ms. Gethings sent the email attached in Exhibit 8 to the Gethings Declaration, the full contents of which speak for themselves.**

30. On March 26, 2021, Plaintiff met with Ms. Gethings and Ms. Clarino to receive her mid-year TEVAL. Within that document, Ms. Gethings stated: "As we discussed in your mid year, please consider asking any time you have a concern, if we do not have the answer we will do our best to attain the answer." (Complaint and Answer ¶ 20-21)(Gethings Dec. ¶ 15). A true and accurate copy of the TEVAL is attached as Exhibit 7 to the Gethings Declaration.

**RESPONSE: Admit the meeting with Misses Gethings and Clarino took place on March 26, 2021 and that Plaintiff received a copy of her mid-year TEVAL. The copy attached as Exhibit 7 to the Gethings Declaration speaks for itself. *See also* Light Aff. ¶¶ 31, 33.**

31.  In that meeting, the parties discussed Ms. Gethings' decision to move Plaintiff from third grade to first grade for the 2021-2022 school year due to the fact that her son would be in third grade that year. (Complaint and Answer ¶ 21).

**RESPONSE: Admit the parties had a meeting and discussed Ms. Gethings decision to reassign Plaintiff to another grade for the 2021-2022 school year. Deny the parties specifically discussed a reassignment to the first-grade. Light Aff. ¶ 31. Admit that Ms. Gethings' stated the reason for the reassignment was due to Plaintiff's son entering the third grade and concerns about having a parent teaching the same grade as her child. *Compare* Am. Compl. ¶ 21 with Answer thereto.**

32.  In that meeting, the parties also discussed how confidential information about Teacher X's COVID-positive status had been disclosed, and how Teacher X was thinking about filing a complaint against Plaintiff. Ms. Gethings did not accuse Plaintiff of leaking information about Teacher X. (Gethings Dep. p. 32)(Complaint and Answer ¶ 20).

**RESPONSE: Deny that the parties discussed how confidential information about Teacher X's COVID-positive status had been disclosed. Further deny that Ms. Gethings did not accuse Plaintiff of leaking information about Teacher X. *See* Light Aff. ¶¶ 31-33. Ms. Gethings wrongfully equated Plaintiff's 2 Facebook comments as the purported leak or sharing of the teacher's COVID status. *Ibid.* The citation to "Gethings Dep. p. 32" refers to a March 31, 2021 meeting with Teacher X, not the March 26th TEVAL meeting. Admit that Misses Gethings and Clarino warned Plaintiff that Teacher X would be filing an official complaint against her. *Compare* Am. Compl. ¶ 20 with Answer thereto.**

33.  On March 31, 2021, Ms. Gethings and Ms. Clarino met with Teacher X, Plaintiff, and their union representative (Ms. Morrison) to bring the two teachers together, get clarity, and to get to the

MONARCH LAW LLC
363 NEW BRITAIN ROAD, FIRST FLOOR, BERLIN, CONNECTICUT 06037
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

bottom of what may or may not have been said. (Gethings Dep. p. 32)(Complaint and Answer ¶ 22).

**RESPONSE: Admit the meeting and its participants; deny the remainder. *Compare* Am. Compl. ¶ 22 with Answer thereto; *see also* Light Aff. ¶ 32 and Light Dep. 71.**

34.  In April 2021, Plaintiff submitted a complaint about Ms. Gethings and Ms. Clarino, which listed all of the areas where she believed she was being retaliated against as of that date. Plaintiff attempted to be as thorough as possible when drafting her complaint. (Light p. 93-94)(Complaint and Answer ¶ 26)(Gethings Dec. ¶ 8) A true and accurate copy of that complaint is attached as Exhibit 2 to the Gethings Dec.

**RESPONSE: Admit that Plaintiff filed a complaint about Misses Gethings and Clarino, which listed areas where she believed she was being retaliated against as of that date. Further admit that Plaintiff attempted to be as thorough as possible when she drafted her complaint at that time. Deny that a true and accurate copy of Plaintiff's initial complaint is attached to the Gethings Dec. *See* Light Aff. ¶ 39.**

35.  On June 7, 2021, Ms. Gethings and Ms. Clarino submitted a document that responded to Plaintiff's complaint and constituted a cross-complaint against Plaintiff. (Gethings Dec. ¶ 9)(Complaint and Answer ¶ 28). A true and accurate copy of that complaint is attached as Exhibit 3 to the Gethings Dec.

**RESPONSE: Admitted.**

36.  In May 2021, Worthington Hooker second grade teacher Hilary Alden filed a complaint regarding Plaintiff. (Gethings Dec. ¶ 7). A true and accurate copy of that complaint is attached as Exhibit 1 to the Gethings Declaration.

MONARCH LAW LLC
363 NEW BRITAIN ROAD, FIRST FLOOR, BERLIN, CONNECTICUT 06037
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

**RESPONSE: Admitted.**

37.  At the time, one of Plaintiff's children attended Worthington Hooker and was in Ms. Alden's second grade class. (Complaint and Answer ¶ 31).

**RESPONSE: Admitted.**

38.  Ms. Alden stated that she had a difficult relationship with and conflict with Plaintiff in her capacity of a parent of a student in Ms. Alden's class. (Gethings Dep. p. 78-79, 96-97).

**RESPONSE: Admit that Ms. Gethings' hearsay testimony supports this allegedly undisputed fact; however, the veracity of her testimony is denied.** ***See Spiegel v. Schulman*, 604 F.3d 72, 81 (2d Cir. 2010 (district court may not rely at summary judgment on evidence that would be inadmissible hearsay at trial).**

39.  Ms. Tortora had Plaintiff's son in class the prior school year, when he was in first grade, and she had difficulties with Plaintiff at that time, too. (Gethings Dep. p. 79).

**RESPONSE: Admitted.**

40.  In a prior school year, Ms. Morrison had Plaintiff's older son in class, and she had problems with Plaintiff, too. (Gethings Dep. p. 79).

**RESPONSE: Deny that Ms. Morrison had Plaintiff's older son in her class "[i]n a prior school year." Light Aff. ¶ 17. Admit that the "problems" Ms. Morrison had with Plaintiff arose from Ms. Morrison's refusal to adhere to Plaintiff's child's state mandated 504 Educational Plan. *Ibid.***

41.  In the 2021-2022 school year, Plaintiff's son would be in third grade, the same grade Plaintiff taught. (Complaint and Answer ¶ 21).

**RESPONSE: Admitted.**

42.  Paul Salem was a third-grade teacher for the 2020-2021 school year, and he told Ms. Gethings that he did not want to have Plaintiff's son in class and did not want to teach the same grade as her. (Gethings Dep. p. 85, 87, 155).

**RESPONSE: Admit Mr. Salem was a third-grade teacher for the 2020-2021 school year and that Ms. Gethings' hearsay testimony supports this allegedly undisputed fact; however, the veracity of her testimony is denied.** *See Spiegel v. Schulman*, **604 F.3d 72, 81 (2d Cir. 2010 (district court may not rely at summary judgment on evidence that would be inadmissible hearsay at trial).** *See also* **Doc. No. 1-1, p. 20 of 26 ("Given Ms. Gethings' timeline, however, <u>Mr. Salem's comment came only after a decision had already been made</u>.") (emphasis added).**

43.  For the 2021-2022 school year, Ms. Gethings made the following personnel changes:

   a. Ms. Villanueva was moved from second grade to third grade.

   b. Ms. Tortora was moved from first grade to kindergarten.

   c. Ms. Light was moved from third grade to first grade.

   d. Ms. Paine was moved from first grade to second grade.

(Gethings 2/27/23 Dep. p. 91, 96)(Gethings Dec. ¶6).

**RESPONSE: Admitted.**

44.  None of those individuals requested that change. (Gethings 2/27/23 p. 96).

**RESPONSE: Admit that Plaintiff and Misses Tortora and Villanueva did not request a grade/assignment change. Deny the remainder. Light Aff. ¶ 38. Furthermore, the citation to**

MONARCH LAW LLC
363 NEW BRITAIN ROAD, FIRST FLOOR, BERLIN, CONNECTICUT 06037
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

**Ms. Gethings' testimony does not support the allegedly undisputed fact as it relates to Ms. Paine.**

45.  Ms. Gethings consulted with Ms. Clarino and Keisha Redd-Hannans, Assistant Superintendent, before making those changes. (Gethings Dep. p. 83). She also consulted with Lisa Mack, the Board's head of human resources. (Gethings Dep. p. 87-88). She decided to make those changes in January or February of 2021 and consulted with Ms. Redd-Hannans in February about them. (Gethings Dep. p. 80)(Gethings 2/27/23 p.94).

**RESPONSE: Admit that Ms. Gethings testified she consulted with Misses Clarino and Redd-Hannans. The correct citation is Gethings Dep. 82-83. Deny that Ms. Gethings "consulted" with Ms. Mack; she testified that she simply mentioned it to her. Gethings Dep.  83. Later in her deposition, Ms. Gethings testified that she called Ms. Mack to confirm that she had "discretion and autonomy." Gethings Dep. 87.**

46.  On May 25, 2021, Ms. Gethings discovered that Phyllis Maffuid, a paraprofessional, was covering Ms. Light's classroom at dismissal time. At that time, the school was engaged in a very specific dismissal process, where parents would pull up to the building, show a sign with their child's name, and student would then be sent out from the classroom to the car. (Gethings Dec. ¶ 17-18).

**RESPONSE: Admit that Ms. Maffuid was a special education paraprofessional and the school was engaged in a specific dismissal process on May 25, 2021. Further admit that Ms. Maffuid watched Plaintiff's classroom for a short period of time to allow Plaintiff to use the bathroom. Deny the remainder. *See* Light Aff. ¶ 42.**

47.  Ms. Gethings saw Ms. Maffuid with her back to the cars and she was not familiar with the students in that class because she was a special education paraprofessional and worked with a

different cohort. Ms. Maffuid was covering for Ms. Light, who was in the bathroom getting changed for running club. (Gethings Dec. ¶ 18).

**RESPONSE: Admit that Ms. Maffuid was a special education paraprofessional and worked with a different cohort. Further admit that Plaintiff was in the bathroom. Deny the remainder.** *See* **Light Aff. ¶ 42; Doc. No. 1-1, p. 13-14 of 26.**

48.  It was inappropriate for Ms. Maffuid to be covering Ms. Light's classroom at that time, which Ms. Gethings explained to Ms. Light in an email on May 25, 2021. (Gethings Dec. ¶ 19).

**RESPONSE: Admit that Ms. Gethings sent an email to Plaintiff on May 25, 2021. The email speaks for itself. Deny the remainder.** *See* **Light Aff. ¶ 42; Doc. No. 1-1, p. 13-14 of 26.**

49.  In October 2021, Ms. Gethings and Ms. Clarino spoke with teacher Timothy Shortt, and they told him that some teachers had reported to them (Ms. Gethings and Ms. Clarino) that they were concerned that Mr. Shortt was aligning himself with Plaintiff to take down the administration (Ms. Gethings and Ms. Clarino). (Gethings Dep. p. 143-144).

**RESPONSE: Admitted.**

50.  Human resources initially started an investigation of Plaintiff's complaint, but then hired the law firm of Bercham & Moses to conduct the investigation of Plaintiff's complaint against Ms. Gethings and Ms. Clarino, their reply and counter-complaint against Plaintiff, and Mrs. Alden's complaint against Plaintiff. See Deposition of T. Bonner ("Bonner Dep.") pg. 49-52, attached as Exhibit F.

**RESPONSE: Admitted.**

MONARCH LAW LLC
363 NEW BRITAIN ROAD, FIRST FLOOR, BERLIN, CONNECTICUT 06037
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

51.  Bercham & Moses then issued reports on the three complaints, including a report on the investigation into Plaintiff's complaint. (Ecf. 1-1)

**RESPONSE: Admitted.**

52.  Bercham & Moses found that one of the issues raised in Plaintiff's complaint to human resources was unfair to Plaintiff and retaliation for Plaintiff's Facebook post. (Light Dep. p. 102-103)(Ecf. 1-1, pg. 10 of 26).

**RESPONSE: Admitted as it relates to Plaintiff's original complaint dated April 30, 2021. Light Aff. ¶ 49. Attorney Goldberg's report speaks for itself. *See* Doc. No. 1-1.**

53.  Bercham & Moses found that the remaining items, were not retaliatory, including the grade change and the language in the TEVAL. (Light Dep. p. 98, 102-106, 109, 110)(Ecf. 1-1, pg. 10-11 and 18-20 of 26).

**RESPONSE: Admit that Attorney Goldberg issued a report, which includes a section titled, "Findings of Retaliatory Conduct." *See* Doc. No. 1-1 at p. 24-25 of 26. The report speaks for itself.**

54.  In addition, Bercham & Moses found that Ms. Gethings and Ms. Clarino retaliated against Plaintiff based on their comments to Ms. Maffuid about assisting Plaintiff and to Mr. Shortt about his reasons for seeking the union steward position, as well as by Ms. Gethings allegedly causing documents to appear on Mr. Salem's printer. (Light Dep. 111)(Ecf. 1-1, p. 25 of 26).

**RESPONSE: Admit that Attorney Goldberg issued a report, which includes a section titled, "Findings of Retaliatory Conduct." *See* Doc. No. 1-1 at p. 24-25 of 26. The report speaks for itself.**

MONARCH LAW LLC
363 NEW BRITAIN ROAD, FIRST FLOOR, BERLIN, CONNECTICUT 06037
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

55.  Plaintiff has "never been formally disciplined." (Light Dep.112).

**RESPONSE: Admit that Plaintiff did not receive a formal disciplinary action for using the bathroom and allowing Ms. Maffuid to watch her class. Deny the remainder.** *See* **Light Dep. 112-113.**

56.  Plaintiff remains employed as a teacher, and receives the same salary level or higher than she had in the 2020-2021 school year. (Light Dep. p. 113).

**RESPONSE: Admitted.**

57.  In August 2022, Plaintiff agreed to a voluntary transfer from a first grade classroom at Worthington Hooker to a second grade classroom at Ross Woodward elementary school. (Light Dep. p. 116). Therefore, Plaintiff is no longer working at Worthington Hooker.

**RESPONSE: Admitted.**[2]

58.  Plaintiff finds the work at Ross Woodward to be "rewarding." (Light Dep. p. 137).

**RESPONSE: Admitted.**

59.  Plaintiff has at all times been a member of the teacher's union, and therefore is subject to the collective bargaining agreement ("CBA") between the union and the Board.

**RESPONSE: Admitted.**

60.  As a tenured teacher, Plaintiff is subject to the protections set forth in Conn.Gen. Stat. § 10-151, which governs teacher terminations.

---

[2] Page 116 of Plaintiff's deposition is not included within defendants' Exhibit A. It is included in Plaintiff's Exhibit D.

**MONARCH LAW LLC**
363 NEW BRITAIN ROAD, FIRST FLOOR, BERLIN, CONNECTICUT 06037
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

**RESPONSE: Admit that Plaintiff is a tenured teacher and she has certain protections pursuant to the CBA and state law. Section 10-151 is titled, "Employment of teachers. Definitions. Tenure. Notice and hearing on failure to renew or termination of contract. Appeal." Subsection (7)(d) provides, "[t]he contract of employment of a teacher who has attainted tenure shall be continued from school year to school year, except that it may be terminated at any time for one or more of the following reasons . . . ." The remainder of this allegedly undisputed fact requires a legal conclusion for which a response is unnecessary.**

B.  **Additional Material Facts**

1.  Although Plaintiff's child did not return immediately on January 19, 2021, Plaintiff inquired on April 5, 2021, to see if there was space for her child to return to in-person learning. Plaintiff's child returned to in-person learning on April 19, 2021. Light Aff. ¶ 34.

2. Claire Rowe served as an Officer of the Parent Teacher Association for WHS. Mrs. Rowe is married to Lin; their child's name is Eileen. Mrs. Rowe and her family had serious concerns about COVID-19 and the risk of exposure. Her daughter was entering second grade at WHS for the 2020-2021 school year. Mrs. Rowe invited Mr. Fink and his family and Plaintiff and her family to be part of a learning pod. Finks and Plaintiff's family. Rowe Aff. ¶¶ 3-6.

3. In or around May 2021, Mrs. Rowe spoke to Plaintiff about a proposed $5 gift card for the teachers on Teacher Appreciation Day. Plaintiff told Mrs. Rowe that the card would not go very far at Atticus Bookstore. Mrs. Rowe did not tell anyone that Plaintiff was upset about the monetary amount of the card. Rowe Aff. ¶ 14.

4.  Wolfgang Fink served as Co-President of the Parent Teacher Association for WHS. Mr. Fink is married to Julia von Blume; their child's name is Paulina. Mr. Fink and his family had serious concerns about COVID-19 and the risk of exposure. His daughter was entering second grade at

WHS for the 2020-2021 school year. Claire Row invited Mr. Fink's family to be part of a learning pod. Fink Aff. ¶¶ 3-6; *see also* Doc. No. 1-1, p. 5-6 of 26.

5. Plaintiff never shared school-based decisions about COVID-19 with anyone in her learning pod nor requested others in her learning pod to question the administration at WHS about safety measures taken at the school. Rowe Aff. ¶¶ 12-13; Fink Aff. ¶¶ 10-13.

6. Many parents of children attending schools in the New Haven Public School system were concerned about COVID. See Light Aff. ¶¶ 12, 21; Fink Aff. ¶¶ 4-8; Rowe Aff. ¶¶ 4-6; Exhibit H, Deposition of Jenny Clarino, dated May 18, 2023 ("Clarino Dep.") 104. Mr. Rodeheffer's statements should not be attributed to Plaintiff. In Attorney Goldberg's report, she noted that Ms. Gethings attributes Mr. Rodeheffer's concerns to Plaintiff's Facebook comments; however, Mr. Rodeheffer sent his email to Ms. Gethings before Plaintiff's comments. *See* Doc. No. 1-1, p. 5-6 of 26.

7.  Plaintiff's Facebook comments were accurate and truthful. No other WHS teachers, WHS administrators or parents commented to oppose or dispute what she said. Later in the Facebook post, the Plaintiff commented: "We are listed at week of 2/11, I don't know the other answers for sure." Light Aff. ¶ 26.

8. Plaintiff did not receive a parent letter for any positive student cases reported for the week of February 11, 2021. Light Aff. ¶ 26.

9. Ms. Gethings shared Plaintiff's Facebook comments with two teachers: Ms. Morison and Teacher X. Light Aff. ¶ 29. Ms. Morrison, who was the school union steward at the time, was accused by Tim Shortt as becoming "very close" with Gethings. Doc. No. 1-1, p. 17 of 26. Ms.

MONARCH LAW LLC
363 NEW BRITAIN ROAD, FIRST FLOOR, BERLIN, CONNECTICUT 06037
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

Gethings stated in Teacher X's presence that everyone was telling her that Plaintiff was the source of the leak concerning Teacher X's COVID-19 diagnosis. *Id*. at p. 8-9 of 26.

10. Ms. Alden filed a complaint against Plaintiff where no wrongdoing was ultimately found. Light Aff. ¶¶ 36, 40 and 49.

11. Defendant NHBOE has no written policy at Worthington Hooker School that requires a teacher to teach a different grade than his or her child who is a student at the school. *See* Gethings Dep. 228. The principal has the autonomy to make the decision and then "notifies the HR office" so it can update the records. Exhibit G, Deposition of Defendant NHBOE / Taryn Bonner as corporate representative, dated February 17, 2023 ("NHBOE-Bonner Dep.") 30-31.

12. By March 2021, Ms. Gethings had served as the WHS Principal for approximately 3 years. Gethings Dec. ¶ 3. Yes, this was the first time she reassigned a teacher for having a child in the same grade. Gethings Dep. 228.

13. Ms. Gethings had multiple meetings with Plaintiff and the Union President, Dave Cicarella, about potential grade assignments. Gethings Dep. 229.

14. Teacher X did not name Plaintiff as the source of the leak to Ms. Gethings. *See* Gethings Dep. 36; Doc. No. 1-1, p. 10 of 26 ("When called upon to identify who 'every person' was, Ms. Gethings refused to do so claiming that Ms. Light would drag them into the matter, when it appears more likely that it is because there were no actual sources claiming to have any knowledge that Ms. Light has shared the information."). Teacher X's status was widely known. Gethings Dep. at 33-36; Light Aff. ¶ 23; Rowe Aff. ¶¶ 10-11.

15. With regard to Ms. Tortora – Attorney Goldberg reported, "[She] also had prior difficulties with Ms. Light, when Ms. Tortora was Ms. Light's son's teacher for first grade. However, they

MONARCH LAW LLC
363 NEW BRITAIN ROAD, FIRST FLOOR, BERLIN, CONNECTICUT 06037
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

have gotten to know each other better recently and Ms. Tortora states that they now have a friendship." Doc. No. 1-1 at p. 13 of 26.

16. One reason for Defendant NHBOE hiring Berchem Moses to conduct/overtake the investigations was that Ms. Bonner discovered information in Misses Gethings and Clarino's retaliatory complaint that she found professionally concerning. As a result, she brought it to the attention of her supervisor and they "brainstormed" the best way to move forward in light of the concerns she had. *See* NHBOE-Bonner Dep. 45-46; Gethings Dep. 212; and DEF001781 (Ex. I).

17. Plaintiff began a period of approved medical leave in November 2021. After the Berchem Moses attorneys completed their investigations, Plaintiff – and her union – requested clarification for a safe return to the workplace. On January 18, 2022, Defendant NHBOE demanded that Plaintiff return to work or be subject to disciplinary action. *See* Light Aff. ¶¶ 50-57.

18. Plaintiff wanted to stay at Worthington Hooker School for the 2022-2023 school year. Light Aff. ¶¶ 62-63. She applied for the open third-grade position, but Ms. Gethings did not give it to her because she missed too much time teaching the first grade due to her medical leave. *Id*. at ¶ 62; Gethings Dep. 241-242.

19. After not getting the third-grade position and finding two disturbing notes in her classroom, Plaintiff decided to leave the school and accept a position at Ross Woodward. At Ross Woodward, Plaintiff has less time with her children and spends her own money to set up her classroom. Light Aff. ¶ 63.

20. Plaintiff is dealing with the stress of losing her community and trying to rebuild it. She has invested "a significant amount of her mental, emotional, and actual time in the process of getting used to a new job, which has affected them greatly." Light Dep. 137; Light Aff. ¶ 64.

MONARCH LAW LLC
363 NEW BRITAIN ROAD, FIRST FLOOR, BERLIN, CONNECTICUT 06037
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

THE PLAINTIFF,
JESSICA LIGHT


By: */s/ Anthony J. Interlandi*
  Anthony J. Interlandi (ct27512)
  tony@monarchlaw.com


## CERTIFICATION OF SERVICE

   I hereby certify that on August 31, 2023, a copy of the foregoing was filed electronically and served by mail to anyone unable to accept electronic filing as indicated below. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filings as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


        */s/ Anthony J. Interlandi*
        Anthony J. Interlandi

**MONARCH LAW LLC**
**363 NEW BRITAIN ROAD, FIRST FLOOR, BERLIN, CONNECTICUT 06037**
**TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039**