**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JESSICA LIGHT, | : | CIVIL ACTION NO. |
|     Plaintiff, | : | 3:22-cv-00425 (JAM) |
| v. | : | |
| NEW HAVEN BOARD OF EDUCATION, | : | |
| MARGARET-MARY GETHINGS | : | |
|     Defendants. | : | September 14, 2023 |

**DEFENDANT'S REPLY MEMORANDUM**

The New Haven Board of Education (the "Board") and Margaret-Mary Gethings

(collectively, "Defendants") submit this reply to plaintiff Jessica Light's August 31, 2023

opposition ("Opp.") to Defendants' motion for summary judgment ("Mem.").[1]

I.      **PLAINTIFFF'S RETALIATION CLAIM FAILS AS A MATTER OF LAW**

    A. **Plaintiff engaged in a limited set of protected activity.**

On page 13 of the Opposition, Plaintiff identifies three instances of protected speech

she alleged in the Complaint: (1) a car caravan in 2020; (2) Board meetings in January,

February, and March 2021, and (3) a March 2021 Facebook post.  Later in the Opposition,

however, Plaintiff appears to state that there were other instances of protected speech. *See,*

*e.g.*, Opp. p17 (discussing comments at a November 2020 city-wide parent meeting).

Plaintiff only alleged (1) – (3) in the Complaint, though, and the Court should reject

Plaintiff's attempt to expand her alleged protected activity beyond those actions.

---

[1] Plaintiff initially suggests that summary judgment is inappropriate in this type of case. Opp. p10-11. That is incorrect. *See, e.g.*, *Gordon v. Marquis*, 2007 WL 987553, at *6 (D. Conn. Mar. 31, 2007)(Thompson, J.); *Kasprzycki v. DiCarlo*, 584 F. Supp. 2d 470, 477 (D. Conn. 2008)(Bryant, J.); *Martin v. Bailey*, 2015 WL 927716, at *3 (D. Conn. Mar. 4, 2015)(Meyer, J.); *Morales v. City of New York*, 2022 WL 2840035, at *1 (2d Cir. July 21, 2022).

Plaintiff next states that Defendants argued that she was speaking as employee at both the car parade and in her Facebook posts, but not the Board meetings. Opp. p.14. That is incorrect, as that argument is limited to the Facebook post. Mem. p.11. In regard to the Facebook post, Plaintiff argues that she was speaking as a citizen because it was on social media. Opp. p.14. Again, this is incorrect. The *Packingham* case addresses an individual's access to social media, not discipline for speaking as an employee. Here, it is undisputed that Plaintiff was a teacher, she was responding to a Union leader's post, and she was speaking her school's about notification letters.[2] Ms. Gethings thought Plaintiff was speaking in her capacity as a teacher, and other teachers also thought Plaintiff's posts were misrepresenting the school. (SOF ¶ 25).[3] The Facebook post was not protected activity.

**B. Plaintiff did not suffer an adverse employment action.**

Defendants argued that Plaintiff failed to specify whether she was basing her retaliation claim: (1) on all 7 of the issues she raised in her human resources complaint; (2) just the 1 instance from her initial complaint involving Teacher X that Bercham & Moses found to be retaliatory; or (3) that 1 instance plus the other three subsequent instances found by Becham & Moses to be retaliatory. Mem. p.15-16. Defendants believe the only way to read the Complaint is option (3), even if none of them meet the retaliation standard. The Opposition does not respond to that argument or conclusively state what incidents she believes were retaliatory.

---

[2] This is different from the Board meetings or the car caravan, where Plaintiff was making comments about issues facing the District as a whole.

[3] Plaintiff claims that such evidence is inadmissible, but Plaintiff is incorrect. Those teachers can testify about the concerns they reported to Ms. Gethings, or Ms. Gethings case testify about statements as non-hearsay or pursuant to a hearsay exception. *See, e.g.* Fed. R. Evid. 801(c)(2) and 803(1).

Plaintiff also does not respond to Defendants' argument that none of those four incidents in (3) were adverse employment actions standing alone.  Plaintiff, however, implicitly demonstrates she agrees with Defendants' argument by arguing that the seven incidents listed on page 17 of the Opposition collectively show a "constellation of circumstances" that constitute an adverse employment action. Opp. p17. This theory, which was not alleged in the Complaint, is wrong. First, Plaintiff again demonstrates that she is unable or unwilling to identify a specific set of incidents that she believes are retaliatory; stating instead, that the "constellation of circumstances" in this case "includes, but is not limited to," the seven incidents listed on Page 17. Litigation is not a guessing game, however, and the Court should limit Plaintiff's argument to the seven incidents identified on page 17. [4]

Plaintiff relies on language from *Wrobel* stating that a "critical mass of minor incidents" could support a retaliation claim, but Plaintiff fails to explain that, under the "critical mass" analysis, she must show "(1) using an objective standard; (2) the total circumstances of her working environment changed to become unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace." *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002); *accord Tolbert v. Rochester City Sch. Dist.*, 2020 WL 1467280, at *9 (W.D.N.Y. Mar. 26, 2020). "Incidents that are relatively minor and infrequent will not meet the standard, but otherwise minor incidents that occur often and over a

---

[4] On page 17, Plaintiff lists 7 incidents that she believes were retaliatory.  On page 20, Plaintiff reverts back to relying only on the four incidents from the Bercham & Moses report. Then, on page 28, in the § 31-51q argument, Plaintiff attempts to add more actions to her list of allegedly retaliatory actions.  It is unclear why Plaintiff is unwilling or unable to specifically state which incidents she believes forms the basis of her retaliation claim.  As set forth in the text above, Defendants contend that Plaintiff should be limited to the four incidents alleged in the Complaint as the basis for her retaliation claim.

longer period of time may be actionable if they attain the critical mass of unreasonable inferiority." *Id*.  Courts routinely find that minor incidents do not constitute the critical mass needed for an adverse employment action. *See Gordon v. Marquis*, 2007 WL 987553, at *6 (D. Conn. Mar. 31, 2007) (finding no adverse employment action related to transfer out of Auto Theft Task Force, denial of training opportunities, or disproportionately applied dress code rules); *Amato v. Hartnett*, 936 F. Supp. 2d 416, 434 (S.D.N.Y. 2013) ("Plaintiff has failed to produce any evidence 'aside from his own personal opinion' that his being assigned to work at the jail was a "less desirable' assignment than transferring prisoners from the jail to the courthouse, so it was not an adverse employment action); *O'Connor v. Huntington U.F.S.D.*, 2014 WL 1233038, at *10 (E.D.N.Y. Mar. 25, 2014) (finding no adverse action after analyzing "whether the[] working conditions—the increased classroom observations and performance scrutiny—collectively were so 'objectively intolerable' that a reasonable person in plaintiff's shoes would have felt compelled to resign."); *Konspore v. Friends of Animals, Inc.*, 2012 WL 965527, at *19 (D. Conn. Mar. 20, 2012) (strong reaction to Plaintiff's e-mail, order not to disseminate memos without supervisory review, and forbidding others from speaking with Plaintiff not adverse actions).

Plaintiff never explains why the remaining seven incidents she cites on page 17 are the types of minor incidents that can support a retaliation claim under the critical mass theory. This is not surprising, because they are the exact type of "relatively minor and infrequent" incidents that courts have held cannot constitute an adverse employment action. Incident 1 is Plaintiff allegedly being reprimanded by Ms. Gethings in November 2020 for asking a question

at a city-wide parents' meeting, which is not alleged as an instance of protected activity.[5]

Incident 7 involves conduct by Ms. Bonner, so it cannot be retaliation by Ms. Gethings.

Neither incident can form the basis of a critical mass.

Two other incidents involved conversations with other employees (Mr. Shortt and Mr. Maffuid) not Plaintiff, one involves something with no proof that Ms. Gethings was involved with (the printer), and one involves Ms. Gethings speaking with Plaintiff and her union rep about concerns raised by Teacher X. As Judge Kravitz said in *Konsporis*, "in this context a reasonable juror could not find that any of them would prevent an individual of ordinary firmness from exercising his or her constitutional rights." *Konspore*, 2012 WL 965527, at *19.

Although Plaintiff did not focus on the grade change in her Complaint, and although Bercham & Moses found that the grade change was non-retaliatory, Plaintiff nevertheless lists it on Page 17 as another item of alleged retaliation. This is absurd.  It is undisputed that Plaintiff had issues with her son's teachers in prior years, that her son would be in the same grade she taught the next school year, and that Ms. Gethings had concerns about that situation. Therefore, Plaintiff and three other teachers then had their grades changed for the 2021-2022 school year. Plaintiff did not lose any benefits or pay with this routine transfer, and first grade is not less desirable than third grade. *See, e.g.*, *Amato*, supra, 936 F. Supp. 2d at 433 (noting that Second Circuit has concluded that "*inferior or less desirable* assignments can constitute adverse employment actions where they impact a plaintiff's opportunity for professional growth and career advancement")(emphasis added); *Gordon*, supra, 2007 WL 987553, at *6 (finding no adverse employment action related to transfer out of Auto Theft Task Force);

---

[5] The only protected activity that is alleged to have occurred before November 2020 is the car caravan from Summer of 2020.  No allegations connect the car caravan to the November 2020 conversation.

*Mishk v. Destefano*, 5 F.Supp.2d 194, 202 (S.D.N.Y.1998) (no adverse action where plaintiff failed to produce evidence that the position to which he was transferred was "in any way less desirable, in terms of salary, work schedule, or responsibilities"). Plaintiff never grieved the transfer, and she fails to address it in the causation section of the Opposition, which demonstrates that even Plaintiff does not truly believe the transfer was retaliatory.

### C. Plaintiff cannot demonstrate causation.

Plaintiff characterizes Defendants' causation argument as being that there is no causal connection "because there purportedly is a gap of five months." Opp. p19. That argument was limited to the emails on Mr. Salem's printer and the conversation with Mr. Shortt—which occurred in August and October 2021 and are too far removed from the alleged protected activity, the last of which occurred in March 2021. *See Chamberlin v. Principi*, 247 F. App'x 251, 254 (2d Cir. 2007)(gap of five months too long to support inference of retaliation).

Defendants also, however, challenged Plaintiff's ability to identify any facts supporting a causal connection. Mem. p.21-22. For example, Defendants argued that the conversations about and with Teacher X, the conversation with Mr. Shortt, and the discussion of proper dismissal protocol with Ms. Maffuid all came about in the normal course of the school day and were issues that needed to be addressed by a Principal. Moreover, the transfer was based on concerns about Plaintiff's past issues with her son's teachers. There is no evidence linking these actions to her Facebook post or comments at Board meetings, which involved different topics. Moreover, Ms. Gethings was never disciplined for anything related to the Board comments or the Facebook post, so there was no reason for her to retaliate against Plaintiff. Plaintiff fails to respond to these arguments, and fails to provide the Court with any evidence of a causal connection.

## II.    THE BOARD IS ENTILTED TO JUDGMENT THE § 31-51q CLAIM.

### A.    Plaintiff has not suffered any adverse employment action.

Under § 31-51q, an employee must be subject to discipline in order to have a cause of action for retaliation.  In the Memorandum, Defendants asked the Court to follow the definition of discipline in *Bombalicki v. Pastore*, 2000 WL 726839, at *3–*5 (May 10, 2000)(Blue, J.), which is "an affirmative act of deprivation that diminishes the status or happiness of the recipient rather than a failure to enhance that status or happiness." In addition, Defendants cited a decision by Judge Susan Pack where she said, among other things, that "[i]ncidents that are relatively minor and infrequent such as a change of working conditions that is a mere inconvenience or simply alters an employee's job responsibilities, personality conflicts at work that generate antipathy and snubbing by supervisors and co-workers will not meet this standard" for discipline. *Sans-Syzmonik v. Hartford Pub. Sch.*, 2014 WL 7156776, at *5 (Conn. Super. Ct. Nov. 7, 2014)(Peck, J.). In response, Plaintiff includes a lengthy block quote a prior decision by Judge Peck, which Plaintiff incorrectly suggests supports her position. [6] Although Judge Peck did state that retaliation can occur through "multiple events," she also confirmed that the multiple events must also be "affirmative acts of deprivation that diminish the status or happiness of the recipient." Under the facts of that case, certain actions taken together met that standard.  In this case, actions such as speaking with a paraprofessional about following dismissal standards, asking about another teacher's concerns about leaked

---

[6] Defendants further note that, once again, Plaintiff is attempting to confuse the Court and Defendants about the basis of her retaliation claim. On page 17, Plaintiff listed seven issues of alleged retaliation. On page 20, she listed only four instances of alleged retaliatory conduct.  When discussing her § 31-51q claim, Plaintiff now mentions for the first time several *de minimis* issues that Bercham & Moses found were non-retaliatory and that regardless fall well short of the standard for "discipline" under § 31-51q—removal from or failure to consider for some volunteer positions on school committees.

health information, and allegedly printing documents to a printer fall well short of the types of conduct that could constitute discipline under § 31-51q.

### B. Plaintiff cannot demonstrate a lack of substantial interference with her job.

In her Complaint, Plaintiff pleaded that her alleged protected speech did not substantially interfere with her job performance. Despite pleading it in the Complaint, Plaintiff now argues that it should be Defendant's burden to show substantial interference. The Court should hold Plaintiff to the allegations in the Complaint, and appropriately place the burden on Plaintiff. Moreover, even if the burden is on Defendants to prove substantial interference, they have met that burden. As noted previously in the Memorandum, Defendants have demonstrated that Ms. Light's conduct was interfering with her relationship with Ms. Gethings, with Ms. Alden, with other teachers who reported Plaintiff's Facebook comments, with Mr. Shortt, and with Mr. Salem. During this period of time in the COVID pandemic, as students were returning to school, consistency of messaging was key, and Plaintiff was interfering with that consistency.  As such, Defendants have met their burden in this regard.

### III.    PLAINTIFF'S FALSE LIGHT CLAIMS MUST BE DISMISSED.

In its Memorandum, Defendants set out the law governing false light claims, which includes the requirement of (1) publication of the allegedly false matter to the public at large or to so many persons as to make it substantially certain that the matter will become public knowledge, and (2) specificity of the words that were publicized. Mem. p29-30. The Opposition does not address the publication element at all, despite it being a key, necessary element of a retaliation claim.  Of the alleged false light statements addressed on pages 33-35 of the Opposition, the only one that possibly could meet the publication standard is the March

8

12, 2021 school-wide email, which does not even mention Ms. Gethings.  Plaintiff also failed to respond to Defendants' argument that Count Three does not identify the precise words that Plaintiff believes cast her in a false light. *Weissman*, 2011 WL 590461, at *9 (dismissing utterly failed to allege any details concerning its alleged misrepresentations about her to others upon which those claims are based."). Defendants are entitled to judgment on both grounds.

Plaintiff's Interrogatory response listed 17 statements where she allegedly was placed in a false light, and Defendants addressed all 17 in their Memorandum. The Opposition addresses only 5 of those incidents, so the other 12 should be found to have been abandoned.  Of the remaining 5, none meet the standard for false light for numerous reasons. For example, as set forth previously in the Memorandum, the March school-wide email did not mention Plaintiff, the Teacher X statements and the TEVAL comment were not false and were not publicized, the items on the printer were not even statements by Ms. Gethings, and the statements in the response/countercomplaint were made by Ms. Clarino and Ms. Gethings, were not false, were not publicized, and were protected activity by Ms. Gethings and Ms. Clarino.

## IV.    MS. GETHINGS DID NOT DEFAME PLAINTIFF.

The Opposition also does not reply to Defendants' argument that a claim of defamation must be pleaded with specificity, and the complaint must specifically identify what allegedly defamatory statements were made, by whom, and to whom. Mem. p.36-37.  Rather than provide that level of specificity, Plaintiff vaguely referred to 15 allegedly defamatory acts in her interrogatory responses. Mem. p.38.  Despite listing 17 at that point, the Opposition only addresses 6 of those 15 alleged defamatory acts. Accordingly, the Court should find the other 9 allegedly defamatory acts have been abandoned by Plaintiff.

Of the remaining 6 statements, none are defamatory. The first two (documents on Mr. Salem's printer and Ms. Alden's list of concerns) are not statements by Ms. Gethings. The undisputed evidence demonstrates that the statements to Mr. Shortt and Ms. Maffuid were true and not really about Plaintiff. Similarly, the statements about Teacher X were either fully or substantially true (e.g. Teacher X said you disclosed her health information) or statements of opinion (we think you leaked Teacher X's information), and Plaintiff does not respond to those arguments. Plaintiff also offers no analysis as to why the TEVAL statement constitutes defamation, which it clearly does not. Indeed, Plaintiff even admits it would be innocuous to an objective lay person. *See* Ecf.29-1, p.11, ¶ 33.[7]

Finally, Plaintiff argues that Defendants are not entitled to protection by the intracorporate communications privilege because the six allegedly defamatory statements were not related to Plaintiff's job performance. This argument is baseless. The statements that were made by Ms. Gethings (statements 3-6) were made in a meeting with the union representative (Mr. Shortt), a meeting with a paraprofessional (Ms. Maffuid), or with Plaintiff and her union representative (Teacher X and the TEVAL). All of these statements were therefore made squarely in regard to Plaintiff's job performance and the normal operations of the school, and Plaintiff has not identified any authority suggesting they are not privileged.

## V.    Conclusion

For these reasons, and those set forth previously in the Memorandum, Defendants'

---

[7] Plaintiff's response to the 56(a)(1) statement contains a host of inappropriate responses. For example, Plaintiff admits a witness testified as quoted, but then denies the veracity of that testimony without citing any evidence to support that extra denial. *See, e.g.*, ¶9, 22, 25. Other times Plaintiff admits the stated, then attempts to add additional, unnecessary information. *See, e.g.*, ¶ 8, 11-13, 26. Plaintiff then offers other denials without any support. *Id*. ¶ 18, 27, 28, 45. Those unsupported denials and extra facts should be disregarded by the Court.

motion for summary judgment should be granted in its entirety.

DEFENDANTS,

NEW HAVEN BOARD OF EDUCATION
and MARGARET-MARY GETHINGS

By    /s/ *Peter J. Murphy*
    Peter J. Murphy (ct26825)
    Shipman & Goodwin LLP
    One Constitution Plaza
    Hartford, CT  06103-1919
    Telephone: (860) 251-5950
    Facsimile: (860) 251-5316
    pjmurphy@goodwin.com
    Their Attorney