**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JESSICA LIGHT,
     *Plaintiff,*

    v.

CITY OF NEW HAVEN BOARD OF
EDUCATION and MARGARET-MARY
GETHINGS,
     *Defendants.*

No. 3:22-cv-425 (JAM)

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This case is one of many federal court cases stemming from disputes between

schoolteachers and school administrations relating to the COVID-19 pandemic. The plaintiff

here taught third grade at a school in New Haven, Connecticut and she was also a parent of two

children at the same school. She was publicly outspoken in 2020 and 2021 about safety concerns

during the pandemic. She claims that her school principal and the board of education retaliated

against her because of various public statements she made. She also claims that the school

principal defamed her and invaded her privacy by placing her in a false light.

The defendants have now moved for summary judgment. For the reasons set forth below,

I conclude that there are genuine fact issues that warrant a trial of the retaliation claims. On the

other hand, there are no genuine fact issues as to the defamation and false light claims, except for

the defamation claim that the plaintiff was falsely accused of exposing the identity of another

teacher as having contracted COVID-19. Accordingly, I will grant in part and deny in part the

defendants' motion for summary judgment.

BACKGROUND

The following facts are drawn primarily from the parties' statements of material facts and the documents they reference. Not all of the facts proffered in the extensive record are relevant to Light's claims, and many others are hotly contested. I provide a summary below, indicating in my discussion where the parties disagree.

At the time of the events giving rise to this case, the plaintiff Jessica Light was a third-grade teacher at Worthington Hooker School ("WHS") in New Haven, and she was also a parent of two students enrolled there.[1] The defendant New Haven Board of Education ("NHBE") was her employer, and the co-defendant Margaret-Mary Gethings was the WHS principal.[2]

Light alleges that she engaged in speech at various times in 2020 and 2021 that related to issues concerning school policies during the COVID-19 pandemic. She identifies four incidents or series of incidents that she claims prompted the defendants to retaliate against her.

The first incident was when she participated in July 2020 in a car caravan organized by the New Haven Teacher's Union.[3] There, she gave televised comments in which she "spoke openly about the need for a unified district-wide plan to reopen schools safely."[4]

The second incident was when she made comments at a city-wide parent information meeting in October 2020. Light alleges that she "asked a question about reopening schools for in-person learning because [she and her husband] were attempting to decide whether to return [their] children to school or remain remote."[5]

---

[1] Doc. #29 at 13 (¶ 31); Doc. #28 at 20; Doc. #21-1 at 3.
[2] Doc. #29 at 1 (¶¶ 1, 3).
[3] *Id.* at 2 (¶ 6).
[4] Doc. #21-1 at 10.
[5] Doc. #29-1 at 7 (¶ 13). Although the defendants object to Light's reliance on her comments at the citywide parent information meeting because this meeting was not specifically described in the complaint, the complaint states that "[b]eginning in the summer of 2020, Ms. Light made several public statements and inquiries regarding the school district's response to the COVID-19 pandemic" and that "[t]hese statements or activity included, but were not limited to" the specific examples detailed in the complaint. Doc. #6 at 3 (¶¶ 9-10). Because the defendants

2

The third series of incidents were when Light made comments at three NHBE meetings in January, February, and March of 2021.[6] Light claims that at these meetings she advocated for a unified reopening plan, opposed a return to in-person instruction absent a vaccine, and raised questions about inconsistency in safety protocols across the district.[7]

The fourth incident was in early March 2021 when Light commented on a chart posted on Facebook indicating that WHS had at least one COVID case.[8] Specifically, Light said: "I don't think letters were sent."[9] When someone asked, "For your school?," Light responded, "Hooker never sent a letter."[10]

The alleged retaliatory conduct began after Light's comments at the city-wide parent meeting in October 2020. On November 2, she attended a virtual meeting with Gethings and Assistant Principal Jenny Clarino.[11] Light claims that during this meeting Gethings informed her that NHBE leadership had "reprimanded [Gethings] for the question [Light] asked at the city-wide parent meeting," and that in turn "Gethings and Clarino reprimanded [Light] for [her] comments."[12] Gethings disputes this characterization and alleges that she and Clarino "met with [Light] to discuss her recent comments at a parents' meeting, and to share their perspective with [Light] and make her aware of the impact of her statements."[13]

Light also claims retaliation following her Facebook comments. On March 9, a few days after the posts, Light was allegedly pulled out of her classroom for an unscheduled 90-minute

---

themselves reference Light's comments at this meeting in their own statement of material facts, *see* Doc. #21-2 at 2 (¶ 7), the defendants cannot show prejudice or unfair surprise due to Light's reliance on these comments as a basis for her claim.

[6] Doc. #29 at 4 (¶ 10), 6 (¶ 14), 11-12 (¶ 28).

[7] Doc. #28 at 13.

[8] Doc. #29 at 9 (¶ 21).

[9] *Ibid.*

[10] *Ibid.*

[11] *Id.* at 2 (¶ 7).

[12] Doc. #29-1 at 7 (¶ 16).

[13] Doc. #29 at 2 (¶ 7).

meeting with Gethings and Clarino during which they accused her of "leaking" that another teacher—referred to by the parties as "Teacher X"—had COVID.[14] On March 12, Gethings sent a schoolwide email stating, in relevant part: "It has been brought to our attention from several community members including staff and parents that WHS is being mentioned with inaccurate information which also includes social media. We ask that if you are aware of any negative talk or postings, to please help protect and preserve our school."[15]

On March 22, hours after Light had spoken at the third NHBE meeting about the school's response to COVID, Gethings sent her an email stating, in relevant part:

> I am sorry if you didn't get my prompt reply to your morning email . . . I assured you that I would seek an answer regarding snacks and lunch distancing which I have done . . . I am sorry that you felt you needed to bring the same question to the board . . . I feel like we can offer you a response to some of your questions, please do not hesitate to come to us as we have encouraged you to do.[16]

Later that week, Light met with Gethings and Clarino on March 26 to receive her mid-year teacher's evaluation ("TEVAL").[17] Gethings included the following comment in the TEVAL: "As we discussed in your mid year, please consider asking any time you have a concern, if we do not have the answer we will do our best to attain the answer."[18]

In that same meeting, the parties discussed Gethings' decision to change Light's grade assignment.[19] Although Light now purports to dispute that Gethings suggested a reassignment to teach the first grade, her complaint alleges that Gethings told her that she would teach the first

---

[14] Doc. #28 at 4; *see also* Doc. #6 at 4 (¶ 16). Gethings' statement of facts does not indicate that they discussed the leak any time before their later meeting of March 26. Doc. #29 at 12-13 (¶¶ 30-32).
[15] Doc. #29 at 10 (¶ 24).
[16] *Id.* at 12 (¶ 29).
[17] *Id.* at 12 (¶ 30).
[18] *Ibid.*
[19] *Id.* at 13 (¶ 31).

grade the following school year.[20] According to Light, the reassignment was unwelcome because she has severe dyslexia that makes it difficult to teach phonics and reading curricula.[21]

They also discussed Teacher X.[22] Gethings characterizes the conversation as one focused on "how confidential information about Teacher X's COVID-positive status had been disclosed, and how Teacher X was thinking about filing a complaint against [Light]."[23]

Gethings denies that she accused Light at this meeting of leaking information about Teacher X.[24] Light admits that Gethings and Clarino warned Light that Teacher X would be filing an official complaint against her, but claims that Gethings accused her of leaking the information: "Ms. Gethings wrongfully equated [Light's] 2 Facebook comments as the purported leak."[25]

The following week, on March 31, Gethings and Clarino held another meeting with Light, as well as Teacher X and a union representative.[26] Light asserts that in this meeting Gethings again accused her, without evidence, of leaking Teacher X's COVID status.[27] She also allegedly admonished Light for denying that she had been the source of the leak. When Light stated that the accusation was "not truthful," Gethings allegedly responded, "I don't know who you're saying is not truthful but I encourage you to have a little sensitivity to the fact that anyone that said anything is a colleague of yours . . . [M]aybe it's not your truth, but you shouldn't say it's not truthful."[28] Light also states that, when Teacher X apologized to Light for incorrectly stating that she would never have disclosed her COVID-positive status to Light, Gethings

---

[20] *Ibid.*; Doc. #6 at 5-6 (¶ 21).
[21] *See* Doc. #6 at 5-6 (¶ 21); Doc. #21-7 at 22.
[22] Doc. #29 at 13 (¶ 32).
[23] *Ibid.*
[24] *Ibid.*
[25] *Ibid.*
[26] *Id.* at 13-14 (¶ 33).
[27] Doc. #28 at 17.
[28] Doc. #6-1 at 9.

"interrupted Teacher X's apology and continued to suggest that [Light] had been the source of the leak."[29]

In April, Light filed a complaint with Human Resources about Gethings and Clarino, alleging retaliation, and they filed a countercomplaint in June.[30] In turn, Human Resources hired the law firm of Berchem Moses PC to investigate both complaints.[31]

Gethings then formally reassigned Light from teaching third grade to teaching first grade for the following 2021-2022 school year.[32] The parties dispute the reason for this switch. Gethings claims that it was because Light's son would be a student in the third grade, and she also notes that Light was not singled out because several other teachers were also reassigned.[33] By contrast, Light believes that the move was retaliatory.[34] She claims that she asked for a higher grade level if reassignment was necessary, and she states that this was the first time Gethings had reassigned a teacher due to having a child in the same grade.[35]

About a month later, at the end of May, Light asked a special education paraprofessional named Phyllis Maffuid to watch over her class during dismissal at the end of the school day.[36] Light claims this was "for a short period of time to allow [Light] to use the bathroom."[37] Gethings then sent Light an email explaining that it was inappropriate for Maffuid to supervise the class during dismissal because this was Light's responsibility and because Maffuid was less familiar with students' parents and less able to comply with the COVID-specific dismissal

---

[29] Doc. #6 at 7 (¶ 23); *see* Doc. #6-1 at 9.
[30] Doc. #29 at 14 (¶¶ 34-35).
[31] *Id.* at 18 (¶ 50).
[32] *Id.* at 16 (¶ 43); *see* Doc. #29-1 at 11 (¶ 37).
[33] Doc. #21-1 at 2; Doc. #29 at 16 (¶ 43).
[34] Doc. #28 at 17.
[35] *Id.* at 6 & n.1.
[36] Doc. #29 at 17 (¶ 46).
[37] *Ibid.*

protocol in place at the time.[38] Light asserts that Gethings reprimanded Maffuid for assisting her and that this was part of a campaign to "damag[e] [Light's] relationships with co-workers."[39]

Light alleges more retaliation later that summer. In August 2021, another teacher named Paul Salem informed Light that he had found sensitive documents on the printer in his classroom: the documents were emails from Light's husband to Gethings and Clarino about Light's child, who was a WHS student in another teacher's class.[40] Light asserts that these emails "could portray [Light] and her husband in a negative light."[41] Gethings does not dispute the appearance of these emails on Salem's printer, but disputes that she was responsible for printing or placing them there, much less doing so in an attempt to damage Light's reputation.[42]

The next month, Gethings and Clarino spoke with another teacher, Timothy Shortt, who either was running for union steward or had recently been elected to the role.[43] "[T]hey told him that some teachers had reported to them (Ms. Gethings and Ms. Clarino) that they were concerned that Mr. Shortt was aligning himself with [Light] to take down the administration."[44]

In November, Light began a period of approved medical leave.[45] In the meantime, the law firm had completed its investigation. Light received copies of the investigation report, which included findings that Gethings had retaliated against Light by accusing her of disclosing Teacher X's COVID status, by reprimanding Maffuid, by causing documents to appear on

---

[38] *Id.* at 18 (¶ 48); Doc. #21-7 at 82.
[39] Doc. #28 at 25.
[40] Doc. #29-1 at 13 (¶ 46); Doc. #29 at 19 (¶ 54).
[41] Doc. #28 at 17.
[42] Doc. #21-1 at 17-18. *See also* Doc. #29 at 19 (¶ 54) (Gethings states that Berchem Moses "found that Ms. Gethings . . . retaliated against Plaintiff . . . [by] allegedly causing documents to appear on Mr. Salem's printer.").
[43] Compare Doc. #21-1 at 18-19 ("running for union steward" with Doc. #28 at 17 ("the new union steward") and Doc. #29-1 at 14 (¶ 49) ("Mr. Shortt, union steward").
[44] Doc. #29 at 18 (¶ 49).
[45] *Id.* at 24 (¶ 17); Doc. #21-1 at 35.

Salem's printer, and by making the comment to Shortt "about his reasons for seeking the union steward position."[46]

Light alleges that, on January 19, 2022, the NHBE denied her union's request to place her on administrative leave "until mediation occurred and safeguards [were] installed to prevent further retaliation or hostility."[47] On February 9, 2022, she returned to work "against the advice of [her] doctors and under the threat from the [NHBE] Human Resources department" to return or be subject to discipline.[48]

In July 2022, Light requested an open third-grade position at WHS, but it was given to someone else.[49] The next month, on separate occasions, she found two anonymous notes in her classroom. One read: "Just do it. Just leave our school. You are toxic."[50] The second read: "Mrs. Light's To Do List. Wash hair. Leave or Just Die."[51] Light also alleges that she learned in August 2022 that the paraprofessional assigned to her classroom had been reassigned elsewhere.[52]

That same August, Light agreed to a voluntary transfer from a first-grade classroom at WHS to a second-grade classroom at Ross Woodward elementary school.[53] At her new school, she receives the same salary or higher as she received in the 2020-2021 year.[54] But she also

---

[46] Doc. #29 at 19 (¶¶ 52, 54). Paragraph 54 specifically references Maffuid, Salem, and Shortt. Paragraph 52 states that "Berch[e]m & Moses found that one of the issues raised in [Light's] complaint to human resources was unfair to [Light] and retaliation." Defendants cite ECF 1-1 at 10, which is the page of the Berchem Moses report discussing the accusations related to Teacher X.
[47] Doc. #29-1 at 14 (¶ 55).
[48] *Id.* at 14-15 (¶¶ 54, 57).
[49] Doc. #29-1 at 16 (¶ 62); Doc. #29-2 at 51.
[50] Doc. #29-1 at 16 (¶63); Doc. #29-2 at 53.
[51] Doc. #29-1 at 16 (¶ 63); Doc. #29-2 at 54.
[52] Doc. #29-1 at 16 (¶ 63).
[53] Doc. #29 at 20 (¶ 57).
[54] *Id.* at 20 (¶ 56).

claims she has less time with her own children and spends her own money to set up her classroom.[55]

The amended complaint alleges four claims. Count One alleges that the NHBE disciplined Light in retaliation for Light's exercise of free speech and in violation of Conn. Gen. Stat. § 31-51q. Count Two alleges that Gethings retaliated against Light for Light's exercise of free speech and in violation of the First Amendment—a claim that is actionable against a state or local governmental actor under 42 U.S.C. § 1983. Counts Three and Four allege common law claims against Gethings for false light invasion of privacy and for defamation. The defendants have moved for summary judgment on all claims.

<h2 style="text-align:center">DISCUSSION</h2>

The principles governing review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close, contested issues of fact but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (*per curiam*); *Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 445 (2d Cir. 2023).[56]

### *First Amendment retaliation*

---

[55] *Id.* at 24 (¶ 19).
[56] Unless otherwise noted and for ease of reading, the citations and quotations from cases cited in this ruling omit all internal quotations, brackets, and derivative citations.

Gethings moves for summary judgment as to Light's claim against her for First Amendment retaliation. In order to prevail on a First Amendment retaliation claim, a plaintiff must prove the following three elements: "(1) his or her speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him or her; and (3) there was a causal connection between this adverse action and the protected speech." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 94 (2d Cir. 2020).[57] I will address each of the three elements in turn.

The first element for a First Amendment retaliation claim is whether the plaintiff engaged in protected speech. A public employee's speech is protected by the First Amendment only (1) if she spoke as a citizen rather than an employee and (2) if she spoke on a matter of public concern. *See Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 82-83 (2d Cir. 2022). As to the first requirement, a court's primary focus is whether the speech at issue is within the ordinary scope of the employee's duties, and secondarily whether there is a civilian analogue for the speech. *Id.* at 83. As to the second requirement, an employee's expression is about a matter of public concern if it fairly relates to any matter of political, social, or other concern to the community. *Id.* at 84. This is ordinarily a pure issue of law for a court to decide, but the issue may be one of mixed law and fact to the extent that there are unsettled questions about what was said and in what context. *Id.* at 84.

---

[57] Even if a plaintiff proves all three elements, a defendant may still defeat a plaintiff's First Amendment retaliation claim by showing that it had an adequate justification for treating the employee differently from any other member of the general public based on the government's needs as an employer. *See Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015). Because Gethings does not raise this issue for summary judgment purposes with respect to the § 1983 claim, I need not address it in this ruling.

As noted above, Light has alleged multiple incidents in which she engaged in speech concerning the school's COVID policies and practices. For purposes of summary judgment, however, Gethings disputes only whether Light's Facebook postings were protected speech.[58]

I have little difficulty concluding that there is at least a genuine fact issue to show that Light's Facebook postings were protected speech. The record does not show beyond dispute that it was part of Light's ordinary job responsibilities as a teacher to engage in Facebook postings. Light was the parent of school students, and it appears by civilian analogue that she could just as well have made the Facebook postings as a concerned parent if she had not been employed by the school.

"The COVID-19 pandemic is unquestionably a matter of public concern." *Balchan v. City Sch. Dist. of New Rochelle*, 2023 WL 4684653, at *6 (S.D.N.Y. 2023). And because the Facebook postings were about whether the school had sent out an advisory letter to disclose that there had been a COVID case at the school, there is at least a genuine fact issue that the Facebook postings were of public concern relating to a paramount community safety issue in the midst of the pandemic. Accordingly, I conclude there is a genuine fact issue to support the protected speech element of Light's First Amendment retaliation claim.

The second element of a First Amendment retaliation claim is whether the defendant subjected the plaintiff to an adverse action, meaning any action that would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Connelly v. Cnty. Rockland*, 61 F.4th 322, 325 (2d Cir. 2023). Typical adverse employment

---

[58] Doc. #21-1 at 11. Because the defendants' summary judgment motion is ambiguous about whether they challenge the protected speech status of Light's statements during the car caravan, I conclude they have not adequately preserved an argument at this time that plaintiff's expressions during the car caravan were not protected speech. In any event, they may be hard pressed to show that there is no genuine fact issue about whether the car caravan statements were protected speech in view that the statements had nothing to do with plaintiff's teaching duties and that they occurred off school property and as part of an interview by a television station.

actions include "discharging, refusing to hire, refusing to promote, demoting, reducing the pay, or reprimanding an employee." *Montero v. City of Yonkers*, 890 F.3d 386, 401 (2d Cir. 2018). But "[t]his list of retaliatory conduct is certainly not exhaustive," and "lesser actions may also be considered adverse employment actions." *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 226 (2d Cir. 2006).

The Second Circuit "has never held," for instance, "that a public employee plaintiff alleging retaliation in violation of the First Amendment must demonstrate a material change in employment terms or conditions." *Id.* at 227. Instead, its precedent "allows a combination of seemingly minor incidents to form the basis of a constitutional retaliation claim once they reach a critical mass." *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002). Importantly, "alleged acts of retaliation must be evaluated both separately and in the aggregate, as even trivial acts may take on greater significance when they are viewed as part of a larger course of conduct." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 25 (2d Cir. 2014).

Light points to multiple acts of alleged retaliation. First, she was required to attend meetings where she was reprimanded for her questions and comments, accused of disclosing a colleague's confidential health information, and admonished for denying that she had been the source of any such leak.[59] Second, Gethings made statements to faculty and staff that may have alienated them from Light. These included reprimanding Maffuid for assisting Light;[60] commenting to Shortt that other teachers thought he was aligning himself with Light to take down the administration;[61] and holding a meeting with Light and Teacher X about the leak.[62] Light asserts that Gethings accused her of disclosing the information in Teacher X's presence

---

[59] Doc. #28 at 17; Doc. #6-1 at 9.
[60] Doc. #28 at 17; Doc. #21-1 at 21; *see also* Doc. #29 at 19 (¶ 54).
[61] Doc. #29 at 18 (¶ 49).
[62] *Id.* at 13-14 (¶ 33).

and interrupted Teacher X's apology to Light.[63] Similarly, Light alleges that Gethings placed the emails about her son in Salem's printer and that these emails "could portray [Light] and her husband in a negative light."[64]

In addition to the incidents that may have harmed her relationships with colleagues, Light points to actions that jeopardized her own professional life and prospects. She alleges that the comment on her TEVAL was harmful because "[w]hile [it] may appear innocuous to the layperson, sophisticated managers will see it as a warning flag that I am a 'trouble-maker.'"[65] Light also claims that her reassignment to teach a first-grade class was retaliatory.[66]

It seems to me that some of the actions that Light complains about border on the trivial and bear a tenuous connection to Gethings. Nevertheless, when I view all the actions in their totality and in the light most favorable to Light as the non-moving party, I conclude that there is a genuine fact issue to suggest that Gethings engaged in adverse action against Light. *See Wrobel v. Cnty. Of Erie*, 692 F.3d 22, 31 (2d Cir. 2012) ("The list of adverse actions has included harsh measures, such as . . . reprimand . . . as well as some lesser sanctions, such as . . . reassignment to a place that aggravated physical disabilities."); *Phillips*, 278 F.3d at 107, 110 (finding adverse action where plaintiff alleged that she had been "shunned" by co-workers and that her supervisor had humiliated her in front of them); *Valenti v. Torrington Bd. of Educ.*, 601 F. Supp. 2d 427, 437 (D. Conn. 2009) ("In the teaching context, adverse employment actions can include negative evaluation letters [and] express accusations of lying."). Accordingly, I conclude there is a genuine fact issue to support the adverse action element of Light's First Amendment retaliation claim.

---

[63] Doc. #28 at 34; Doc. #6 at 7 (¶ 23); Doc. #6-1 at 9.
[64] Doc. #28 at 17.
[65] Doc. #29-1 at 10-11 (¶ 33).
[66] Doc. #28 at 17.

The third element of a First Amendment retaliation claim is a causal connection between the protected speech and the adverse action. A plaintiff must show that the protected speech was a substantial motivating factor for the adverse employment action. *See Heim v. Daniel*, 81 F.4th 212, 222 (2d Cir. 2023).[67]  A plaintiff may establish causation either "directly by evidence of retaliatory animus" or "indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment." *Morales v. City of New York*, 2022 WL 2840035, at *2 (2d Cir. 2022).

Viewed in the light most favorable to Light, the evidence suggests that Gethings was rankled by Light's speaking out about her COVID-related concerns. For example, Light claims that the NHBE reprimanded Gethings for concerns expressed by Light at the city-wide parent meeting and that Gethings in turn reprimanded Light for her comments in November 2020.[68] Similarly, following one of the NHBE meetings where Light spoke about her COVID concerns, Gethings sent an email on March 22, 2021 stating that "I am sorry that you felt you needed to bring the same question to the board . . . . I feel like we can offer you a response to some of your questions, please do not hesitate to come to us as we have encouraged you to do."[69] These two examples by themselves are enough to create a genuine fact issue to suggest that a substantial motivating factor for the subsequent adverse actions taken by Gethings was Light's protected speech activity. Accordingly, I conclude there is a genuine fact issue to support the causation element of Light's First Amendment retaliation claim.

---

[67] A defendant may rebut a plaintiff's causal showing by proving that the same action would have been taken even if the plaintiff had not engaged in the protected speech. *See Heim*, 81 F.4th at 222 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-86 (1977)). But because Gethings does not seek summary judgment on this defense, there is no need for me to address it at this time.
[68] Doc. #29-1 at 7 (¶ 16).
[69] Doc. #29 at 12 (¶ 29).

In short, there are genuine fact issues for trial as to all three *prima facie* elements of a First Amendment retaliation claim. Therefore, I will deny Gethings' motion for summary judgment as to the First Amendment retaliation claim.

### *Conn. Gen. Stat. § 31-51q*

NHBE moves for summary judgment as to Light's state law retaliation claim. A Connecticut law—Conn. Gen. Stat. § 31-51q(b)—makes it unlawful for an employer to discharge or discipline an employee because of the employee's exercise of free-speech rights that are subject to protection under the federal or state constitutions.

As an initial matter, I conclude for the same reasons as discussed above with respect to Light's retaliation claim against Gethings that there is at least a genuine fact issue about whether Light engaged in protected speech. Likewise, the same evidence convinces me that there is a genuine issue of fact as to causation. *See Pucillo v. Town of Madison*, 2022 WL 6392904, at *4 (Conn. Super. Ct. 2022) (applying the substantial or motivating factor standard of causation).

That leaves only the issue of whether the actions taken against Light amounted to "discipline." As the text of § 31-51q makes clear, it is "restricted to retaliation . . . in the form of 'discipline or discharge,' which may not extend to as broad a range of actions as the 'adverse action' requirement that applies for a claim of First Amendment retaliation . . . under 42 U.S.C. § 1983." *Nelson v. City of Hartford*, 2022 WL 168798, at *6 (D. Conn. 2022). Here, the parties dispute precisely what types of actions that are unfavorable to an employee qualify as "discipline" under § 31-51q. *Compare Bombalicki v. Pastore*, 2000 WL 726839, at *3 (Conn. Super. Ct. 2000) (Blue, J.) (defining "discipline" as "an affirmative act of deprivation that diminishes the status or happiness of the recipient rather than a failure to enhance [either]"), *with Browne v. State Dep't of Corr.*, 2017 WL 5243854, at *3 (Conn. Super. Ct. 2017) (Ecker, J.)

("Discipline is any adverse material consequence imposed . . . for the purpose of punishing or deterring behavior that the authority wishes to suppress.").

Under any of these potentially applicable standards, I think the evidence is enough (all as described in the prior section of this ruling) to create a genuine fact issue concerning whether the NHBE, through Gethings, imposed consequences on Light in order to penalize her for speaking out as a citizen on issues of public concern about the school's safety practices with respect to COVID-19. As Judge Underhill has observed, "lesser acts, which may not on their own be 'discipline' under section 31-51q, can amount, in the aggregate, to discipline." *Brown v. Office of State Comptroller*, 456 F. Supp. 3d 370, 413 (D. Conn. 2020). Because "discipline" may result from an aggregation of actions, I need not conduct an act-by-act review of each action taken that Light believes was adverse to her. At the very least, the change of teaching assignment is enough on its own to create a genuine fact issue about whether Light was disciplined within the meaning of § 31-51q.

Section 31-51q further requires that the employee's exercise of speech did not "substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer." Conn. Gen. Stat. § 31-51q(b). This is a highly fact-specific issue. Because the record does not conclusively show that Light's speaking out about her COVID-related concerns substantially interfered with her job performance as a teacher or the integrity of her working relationship with the NHBE (apart from any improper retaliatory motives), I conclude that a genuine factual dispute remains as to this issue as well.

In short, I conclude that there are genuine fact issues for trial as to Light's claim for free-speech retaliation in violation of § 31-51q. Accordingly, I will deny NHBE's motion for summary judgment as to this retaliation claim.

### *False light invasion of privacy*

Gethings moves for summary judgment on Light's claim that Gethings invaded her right to privacy by means of disclosing facts that placed her in a false light. "Connecticut has adopted the definition of false light invasion of privacy provided by the Restatement (Second) of Torts, recognizing that liability may be imposed where a defendant gives publicity to a matter concerning another that places the other before the public in a false light . . . if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Chiaravallo v. Middletown Transit Dist.*, 561 F. Supp. 3d 257, 291 (D. Conn. 2021). "The statements themselves must be false … [and] must be such a major misrepresentation of [a plaintiff's] character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable [person] in [their] position." *Ibid.*; *see also Borg v. Cloutier*, 200 Conn. App. 82, 109 (2020) (same).

A plaintiff bears the burden to prove the content of specific statements that form the basis for a false light claim. "[E]vidence of what was said or written about the plaintiff is essential . . . . because without knowledge of the words that were publicized, the trier of fact cannot evaluate an essential element of the cause of action, namely the falsity of the words." *Weissman v. Koskoff*, 2011 WL 590461, at *9 (Conn. Super. Ct. 2011) (Sheldon, J.). Put differently, it is not enough for a plaintiff merely to insinuate that a defendant may have said something that was false and placed the plaintiff in an unflattering light.

17

During the course of discovery, Light was queried concerning what disclosures were made by Gethings that placed Light in a false light. Light responded by listing in cursory fashion 17 examples or items which simply refer to conversations or events but without detailing the content of specific statements made by Gethings.[70]

Item #1 listed is "East Rock Park outing" on September 24, 2020.[71] There is one description of this event in the record, and it does not make clear what Gethings specifically said.[72] Item #2 refers to "PTA Executive Board" on March 28, 2021.[73] But the record does not usefully elaborate on this alleged incident. Item #3 states in vague terms that sometime in March of 2021, Gethings lied about Light to Teacher X.[74] All three of these items fail to reflect with sufficient specificity what Gethings said or did to place Light in a false light.

Similar problems afflict Items #5 to #17. They are insufficiently specific,[75] refer to instances in which Gethings was not even the speaker,[76] refer to instances in which Gethings made statements of opinion, requests, or comments unrelated to Light,[77] or refer to statements that neither party has claimed were false.[78] It is telling that Light does not even attempt to defend most of the listed items in her opposition to the defendants' summary judgment motion.[79]

---

[70] Doc. #28 at 33-35; Doc. #21-1 at 30-31.
[71] Doc. #21-1 at 30 (¶ 1).
[72] Doc. #29-1 at 123-24. At most, the description suggests that Gethings conveyed one of Ms. Light's statements about another teacher's event to that teacher and may have characterized it "as a complaint."
[73] Doc. #21-1 at 30 (¶ 2).
[74] *Id.* at 30 (¶ 3).
[75] *Id.* at 31 (¶¶ 9, 11, 12) (claiming that Gethings solicited an email complaint about Light from a parent, filed a retaliatory complaint, and tainted and delayed the investigation).
[76] *Id.* at 31 (¶¶ 6, 8, 13, 14, 17) (describing comments or requests made by Salem, Alden, NHBE HR, Clarino, and Light herself).
[77] *Id.* at 30 (¶ 5) (TEVAL request that Light approach Gethings with concerns rather than NHBE), 31 (¶ 16) ("Returning from FMLA without a classroom." This does not refer to a statement of any kind.).
[78] *Id.* at 31 (¶¶ 7, 10, 15); *see id.* at 33-34 (elaborating on the allegation in Item #7).
[79] Doc. #28 at 33-35 (discussing only six of the seventeen items: the schoolwide email, the meeting with Light and Teacher X, the TEVAL comment, Gethings' and Clarino's retaliatory complaint, the printer incident, and the East Rock Park outing).

Item #4 poses the closest question. It refers to the March 31 meeting with Gethings and Teacher X, where a union representative and Clarino were also present.[80] Its basis appears to be that Gethings told Teacher X that Light had leaked her COVID status. But this statement does not meet the further requirement for a false light claim "that the matter was made public, either to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Chiaravallo*, 561 F. Supp. 3d at 292. Indeed, "[i]n the employment context specifically, courts have determined that when information is conveyed only to employees with a duty, responsibility and a need for such information there is not sufficient publicity to support an action for invasion of privacy." *Ibid*.

In short, there is no genuine issue of fact to support Light's claim for a false light invasion of privacy. Accordingly, I will grant Gethings' motion for summary judgment on this claim.

### *Defamation*

Gethings moves for summary judgment on Light's claim for defamation. Connecticut law generally requires a party to prove the following elements to establish a *prima facie* case of defamation: "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the [party] to a third person; (3) the defamatory statement was published to a third person; and (4) the [party's] reputation suffered injury as a result of the statement." *Gleason v. Smolinski*, 319 Conn. 394, 430 (2015).

In addition, "the statement must be false . . . and under the common law, truth is an affirmative defense to defamation." *Id.* at 431. Moreover, the statement in question "must convey

---

[80] Doc. #21-1 at 30 (¶ 4).

an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion." *NetScout Sys., Inc. v. Gartner, Inc.*, 334 Conn. 396, 410 (2020).

As for false light claims, defamation claims must "be pleaded with specificity, as the precise meaning and choice of words employed is a crucial factor in any evaluation of falsity," *Fraser v. Franco*, 2022 WL 4367576, at *6 (D. Conn. 2022) (quoting *Stevens v. Helming*, 163 Conn. App. 241, 247 n.3 (2016)). And at the summary judgment stage of the proceedings, "a party's right to recover is limited to the allegations of its pleading," and "a genuine issue of material fact for purposes of summary judgment must be one that a party is entitled to litigate under its pleadings." *A Better Way Wholesale Autos, Inc. v. Better Bus. Bureau of Conn.*, 221 Conn. App. 1, 16 (2023), *cert. denied*, 348 Conn. 919 (2023).

Turning to a review of the items or incidents identified by Light as the basis for her defamation claim, I conclude for the same reasons as explained above that all of them fall short except Item #4.[81] Unlike a false light claim, the publication prong for defamation does not demand general public disclosure; it requires only that the statement be made to a third party. *See Springdale Donuts, Inc. v. Aetna Cas. and Sur. Co. of Ill.*, 247 Conn. 801, 810 (1999); *Chiaravallo*, 561 F. Supp. 3d at 292. Here, Light asserts that Gethings stated, in front of Teacher X, Clarino, and the union representative, "I need you to know that every person said you were the source."[82] There is a genuine fact issue whether this statement was made (and hence published), whether it was a false statement of objective fact, and whether it harmed Light's reputation as she claims.

---

[81] Doc. #21-1 at 30-31 (¶¶ 5-17) (Items 13 and 17 were the only ones not to appear in support of both claims; they were included only for false light).
[82] Doc. #28 at 5.

In short, I will grant in part and deny in part Gethings' motion for summary judgment as to Light's defamation claim. I will grant the motion as to all items except as to Gethings' allegedly false statement that Light disclosed Teacher X's COVID status.

CONCLUSION

For the reasons stated above, the Court DENIES defendants' motion for summary judgment as to Light's claims for free speech retaliation under Conn. Gen. Stat. § 31-51q (Count One) and for First Amendment retaliation (Count Two). The Court GRANTS the motion for summary judgment on Light's claim for invasion of privacy by means of placing Light in a false light (Count Three). The Court GRANTS in part and DENIES in part the motion for summary judgment on Light's claim for defamation (Count Four), granting it as to all items except Gethings' allegedly false statement that Light disclosed Teacher X's COVID status.

It is so ordered.

Dated at New Haven this 19th day of March 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge