UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JESSICA LIGHT,<br>  *Plaintiff*,<br><br>  v.<br><br>CITY OF NEW HAVEN BOARD OF<br>EDUCATION and MARGARET-MARY<br>GETHINGS,<br>  *Defendants*. | No. 3:22-cv-425 (JBA) |

**RULING ON CROSS MOTIONS *IN LIMINE***

  Plaintiff Jessica Light has sued defendants City of New Haven Board of Education ("the Board" or "Board") and Margaret-Mary Gethings for retaliating against her for her protected speech in violation of Conn. Gen. Stat. § 31-15q and 42 U.S.C. § 1983. Light has also sued Gethings for defamation. In advance of trial on these claims, Light has moved to admit investigation reports commissioned by the Board regarding her allegations and related events [Doc. #69]. The defendants have cross-moved to exclude these reports, any testimony or documents that reference these reports, and any testimony by the lawyers who authored these reports [Doc. #75]. For the following reasons, the defendants' motion is GRANTED IN PART AND DENIED IN PART and the plaintiff's motion is DENIED.

  **I.**  **Background**

  The facts of this case are set forth in detail in *Light v. City of New Haven Bd. of Educ.*, No. 3:22-CV-425 (JAM), 2024 WL 1199717 (D. Conn. Mar. 19, 2024), and will be repeated here only as necessary. To summarize, Jessica Light was a third-grade teacher and parent of two at Worthington Hooker School ("WHS") in New Haven at the time the COVID pandemic began. *Id.* at *1. Between July 2020 and March 2021, Light made several public comments relating to COVID policies at WHS and other New Haven schools. *Id.* at *1-2. According to Light, the

Board and Margaret-Mary Gethings—the principal of WHS—took retaliatory action in response to those comments, including reprimanding Light and reassigning her to teach first grade. *Id.* at *2-3.

Light subsequently filed a complaint against Gethings and Vice-Principal Jenny Clarino with the Board regarding those retaliatory actions. (Def.s' Mot. *in limine*, Exh. 1 ("Def.s' Mot. Exh. 1") at 3 [Doc. #75-2]). Gethings and Clarino then filed a cross-complaint. (Def.s' Mot. *in limine*, Exh. 2 ("Def.s' Mot. Exh. 2") at 3 [Doc. #75-3]). Another teacher, Hilarie Alden, also filed a complaint against Light. (Def.s' Mot. *in limine*, Exh. 3 ("Def.s' Mot. Exh. 3") at 3 [Doc. #75-4]). That complaint concerned interactions between Light and Alden, the latter of whom taught one of Light's sons in her second-grade class. (*Id.*)

The Board subsequently hired the law firm of Berchem Moses, PC to investigate these complaints. (Def.s' Mot. Exh. 1 at 3). Attorneys from the firm conducted interviews and reviewed relevant documents before issuing reports on each of the complaints. Those reports were favorable to Light. The first, written by attorney Rebecca Goldberg, concluded that Gethings and Clarino had retaliated against Light for her protected speech. (*Id.* at 24-25). The second, written by attorney Paul Testa, concluded in part that Light's comments and activities had not disrupted the school environment. (Def.s' Mot. Exh. 2 at 12-13). The third, written by attorney Christopher Henderson, determined that Light had not violated any Board policies on harassment when it came to her interactions with Alden. (Def.s' Mot. Exh. 3 at 26). It also specifically concluded that Light's comments on COVID protocols at Board meetings did not violate any Board policies vis-à-vis Alden. (*Id.* at 24).

In the parties' joint trial memorandum, Light notified the Court of her intention to introduce testimony from the attorneys who conducted the independent investigation. (J. Trial

Memo. at 4-5 [Doc. #68]). Subsequently, she has moved *in limine* to admit the attorneys' reports into evidence. (Plaint. Mot. at 1). Meanwhile, the defendants have moved *in limine* to exclude the reports, the attorney testimony, and any other testimony or documents related to the reports. (Def.s' Mot. at 1).

## II.     Discussion

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pursuant to this rule, courts commonly exclude opinion evidence that tells a jury what result to reach. *See Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005). Such testimony usurps the jury's duty to independently apply the law to the facts as it finds them. *Id.* While exclusion under Rule 403 often comes into play when experts are asked to testify, it can apply equally to attempts to introduce the findings of investigative reports. *See Thomas v. Metro. Dist.*, No. 3:12-CV-00221-WWE, 2016 WL 2888954, at *1-2 (D. Conn. May 17, 2016); *see also Hardy v. Adams*, 654 F. Supp. 3d 159, 173 (N.D.N.Y. 2023). Such reports have the ability to "confuse[] the jury into thinking that the issue [has] already [been] decided." *Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 442 (7th Cir. 2009).

Here, the first report (by Rebecca Goldberg) is plainly more prejudicial than probative. The Goldberg report addresses Light's complaint that "Ms. Gethings and Ms. Clarino took various retaliatory actions" against Light in response to her "various forms of protected speech related to COVID." (Def.s' Mot. Exh. 1 at 3). Much of the report summarizes the results of document review and witness interviews—evidence, in other words, that Light can independently offer at trial. The report has little additional probative value.

Rather, the most probative part of the report is the legal conclusions it draws. The Goldberg report discusses the actions Light took that qualified as "protected speech," and further concludes that Light suffered from retaliatory conduct. (*Id.* at 3-4, 24-25). Put otherwise, it largely determines that Light's claims have merit.

Such a conclusion—reached, no less, by an independent attorney—presents a stark danger of unfair prejudice. It is tantamount to telling the jury "'this [case] has already been decided and here is the decision.'" *Lewis*, 590 F.3d at 442 (quoting *Tulloss v. Near N. Montessori School, Inc.*, 776 F.2d 150, 153-54 (7th Cir. 1985)). It is difficult to think of evidence that more directly undermines the defendants' right to an independent jury determination. As a result, the Goldberg report must be excluded under Rule 403.

The other two reports are not quite as prejudicial, but still reach conclusions on ultimate issues for the jury. *See Bernard v. E. Stroudsburg Univ.*, No. 3:09-CV-00525, 2014 WL 12738932, at *6 (M.D. Pa. Oct. 16, 2014) (refusing to admit an outside counsel report that "usurp[ed] the province of the jury by offering opinions as to an ultimate issue"), *aff'd*, 700 F. App'x 159 (3d Cir. 2017). In particular, they conclude that Light's public comments on COVID protocols did not disrupt the school environment generally or constitute harassment of any specific teachers. (*See* Def.s' Mot. Exh. 2 at 12-13; Def.s' Mot. Exh. 3 at 24). These findings directly address an issue that the parties hotly dispute: whether Light's speech "substantially or materially interfere[ed] with [her] bona fide job performance or the working relationship between [her] and [her] employer." *See Light*, 2024 WL 1199717, at *8; Conn. Gen. Stat. § 31-51q(b).

Meanwhile, these two reports have little probative value. Their content is either irrelevant—*e.g.*, Light's conflicts with another teacher over the specifics of her son's

education—or can be better addressed through first-hand testimony or primary documents. In short, the reports have little probative value to counteract the substantial danger of unfair prejudice that they pose. Accordingly, the Court will exclude them as well.

The Court will also exclude references—testimonial or documentary—to the conclusions of the investigation reports. If the reports themselves would usurp the role of the jury, relaying the conclusions of those reports to the jury through other means would be no better. *See McClain v. Pfizer Inc.*, No. 3:06-CV-01795-VLB, 2010 WL 746777, at *2 (D. Conn. Mar. 1, 2010) ("evidence which invades the exclusive province of the jury should be excluded").

However, the Court will not exclude all references to the reports, as the defendants have requested. As Light has pointed out, the reports play an important role in motivating some of the events of the case. (Plaint. Mot. at 2-7). Specifically, the reports instigated discussions about Light's return to the classroom after her sick leave. (*Id.* at 3). It would be confusing to the jury to omit all mention of the investigation reports, and the Court is satisfied that the mere mention of the reports' existence will not unduly prejudice the defendants, particularly with an appropriate limiting instruction. Accordingly, the plaintiff may introduce testimony about the *existence* of the independent reports as necessary to complete the narrative of her case. *See Ayissi-Etoh v. Fannie Mae*, No. CV 10-1259 (JEB), 2014 WL 12768159, at *1 (D.D.C. Sept. 17, 2014) (barring admission of internal investigative report, but not all references to it).

Finally, the testimony of the attorneys who wrote these reports (Rebecca Goldberg, Paul Testa, and Christopher Henderson) will not be permitted. These individuals based their reports on interviews and pre-existing documents. They have no personal knowledge of the events in question and are thus not qualified to testify to those events as fact witnesses. *See* Fed. R. Evid. 602.

**III.     Conclusion**

For the reasons stated above, plaintiff's motion *in limine* [Doc. #69] is DENIED and the defendant's motion *in limine* [Doc. #75] is GRANTED IN PART AND DENIED IN PART. The parties shall propose an appropriate limiting instruction for the jury to accompany any reference to the existence of the investigation reports.

It is so ordered.

Dated at New Haven this 31st day of July 2024.

/s/ *Janet Bond Arterton*
Janet Bond Arterton
United States District Judge