# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x
                                 :
JESSICA LIGHT,                   :   No. 3:22CV425(JAM)
                                 :
            Plaintiff            :
                                 :
     v.                          :
                                 :
NEW HAVEN BOARD OF EDUCATION &   :
MARGARET-MARY GETHINGS, in her   :
individual capacity,             :
                                 :   New Haven, Connecticut
            Defendants           :   July 29, 2024
                                 :
- - - - - - - - - - - - - - - - x

PRETRIAL CONFERENCE

B E F O R E:

    THE HONORABLE JANET BOND ARTERTON, U.S.D.J.


A P P E A R A N C E S:

   FOR THE PLAINTIFF:

       MONARCH LAW
           363 New Britain Road, First Floor
           Berlin, Connecticut 06037
       BY: ANTHONY J. INTERLANDI, SR., ESQ.

   FOR THE DEFENDANTS:

       SHIPMAN & GOODWIN
           One Constitution Plaza
           Hartford, Connecticut 06103
       BY: PETER JOSEPH MURPHY, ESQ.
           CHELSEA McCALLUM, ESQ.




                              Diana Huntington, RDR, CRR
                              Official Court Reporter

```
 1              THE COURT:  Can you tell me what you're
 2   currently planning to prove as the retaliatory acts?
 3              MR. INTERLANDI:  We have the reassignment from
 4   third grade to first grade.  We have exclusion and/or
 5   being taken off of certain committees.  There's also the
 6   PTA teacher representative position, I believe, that was
 7   an issue.  We have part of it included the accusations or
 8   spreading of rumors that Ms. Light was the source of
 9   Teacher X's diagnosis.  There are additional issues that
10   followed or that came after the complaint which would be
11   talking to a witness during the investigation.
12              THE COURT:  Why is that a retaliatory act
13   against her?
14              MR. INTERLANDI:  Ms. Light filed a complaint --
15              THE COURT:  Right.
16              MR. INTERLANDI:  -- where she felt she was being
17   retaliated against due to her public speech in Facebook
18   and board of ed meetings.  And then along the way the
19   New Haven Board of Ed undertook the investigation and then
20   determined that either Ms. Gethings or Ms. Clarino
21   contacted a witness that was "professionally concerning" I
22   believe was the phrase used by Ms. Bonner to her.  And so
23   we feel that that was part and parcel of the pattern of
24   the retaliatory acts that started in and around February
25   to early March of 2021 and ran through to the summer of
```

```
 1   2021.
 2              THE COURT:  Anything else?
 3              MR. INTERLANDI:  They were -- these additional
 4   issues were raised to the Berchem Moses attorneys, the
 5   attorney who undertook Ms. Light's complaint, and that was
 6   where an email was found on another teacher's printer.  It
 7   was an email from Ms. Light's husband to Ms. Clarino.
 8   That was investigated by Attorney Goldberg.
 9              There was also Ms. Alden's list of concerns
10   which was the second in line of complaints that were
11   brought to HR's attention.  Ms. Alden's complaint was
12   found in a mailbox of another teacher's.
13              And again, it's the same argument where this
14   is -- we're talking about a five-month period, give or
15   take, of this conduct by the administrators but
16   specifically Ms. Gethings.
17              THE COURT:  Okay.  Does that complete your list?
18              MR. INTERLANDI:  Plus what I said earlier
19   concerning from the middle of December to the end of
20   January, which is Ms. Light felt a certain way after the
21   reports came out.
22              THE COURT:  But that is not a retaliatory act by
23   the defendants.  That is on her damages.  No?
24              MR. INTERLANDI:  I think it's both.  I think it
25   goes to damages.  It goes to damages because of the use of
```

19

1  her sick time.
2          THE COURT:  But what's the act of the defendants
3  in the December to January time period that you say
4  constitutes a retaliatory act?
5          MR. INTERLANDI:  There's the discussion of
6  returning Ms. Light in an environment where -- and it gets
7  a little muddy because of the Berchem Moses reports.  But
8  she's coming back.  She was out on FMLA for two months or
9  so, she's coming back or she's asked to come back to an
10 environment where now she feels that there are people who
11 have retaliated against her.
12         THE COURT:  You say that's a whole separate act
13 of retaliation, telling her to come back?
14         MR. INTERLANDI:  Yes.  There's a meeting.  There
15 are multiple emails that are exchanged from the middle of
16 December to the end of January of 2022.  There's a meeting
17 on January 14, as I said earlier.  And then Ms. Bonner had
18 made a promise that she would work like an Energizer Bunny
19 to look into these issues.  Within a week after that,
20 Ms. Light receives a letter saying you need to return and
21 if you don't essentially you're going to be insubordinate.
22         THE COURT:  So what you're saying is that a
23 retaliatory act that she is claiming is telling her to
24 return without the remedial measures.
25         MR. INTERLANDI:  Correct.

```
 1                THE COURT:  Anything else?
 2                MR. INTERLANDI:  I believe that covers it all.
 3                THE COURT:  Does that help you, Mr. Murphy, in
 4   focusing and narrowing?
 5                MR. MURPHY:  It certainly didn't narrow the list
 6   of issues, Your Honor.
 7                THE COURT:  Let's work on focus.
 8                MR. MURPHY:  It's slightly focused.
 9                I do have one question.  There were two things
10   that were not mentioned and I don't know if those are
11   dropped or not.  Oh, no, you did mention the emails on the
12   printer, the Paul Salem issue.  One thing you didn't
13   mention was Timothy Shortt, I'm just not sure --
14                MR. INTERLANDI:  Correct.  There's actually --
15   Your Honor, I apologize.
16                THE COURT:  Why are you making the list longer,
17   Mr. Murphy?
18                MR. MURPHY:  I don't want to be surprised next
19   week, Your Honor.
20                THE COURT:  You wouldn't be surprised because
21   this is the list.
22                Go ahead.
23                MR. INTERLANDI:  Counsel brought it up earlier
24   and I should have picked up on that with Phyllis Maffuid,
25   who is a teacher's assistant, concerning her being spoken
```

```
 1   to about the dismissal procedure where Ms. Light needed to
 2   use the restroom.  So there's that, which I believe was in
 3   that time -- definitely was in the time frame.
 4            THE COURT:  The reprimand of her for taking over
 5   for the plaintiff is a retaliatory act for her protected
 6   speech?
 7            MR. INTERLANDI:  That is the allegation.
 8            And the other act is the discussion with
 9   Mr. Shortt about, you know, teaming up or siding with
10   Jessica Light in terms of his union activities, I believe.
11   You know, they were worried that -- I believe the
12   allegation is that the administrators approached this
13   gentleman who is a teacher and questioned him about his
14   alignment with Ms. Light.
15            THE COURT:  So questioning Mr. Shortt with the
16   implication that he's organizing with Ms. Light is a
17   retaliatory act?
18            MR. INTERLANDI:  That is the allegation.
19            THE COURT:  Okay.
20            Let's turn to --
21            MR. MURPHY:  Your Honor, I'm not sure if you're
22   attempting to move on to another issue.
23            THE COURT:  I am.
24            MR. MURPHY:  Can I briefly be heard on that
25   issue?
```

```
 1              THE COURT:  Certainly.
 2              MR. MURPHY:  I want to make sure you understood
 3   it.  Right now we have a list -- I counted ten, I hope
 4   that matches up with what Your Honor has.  Ten things
 5   that -- yes, okay.  Ten different things that potentially
 6   may be retaliatory acts either by themselves or
 7   collectively.  But then I also heard that if the report's
 8   admitted it will be limited to four.  I want to make sure
 9   I understood that correctly.
10              MR. INTERLANDI:  Yes, Your Honor.  That's what I
11   said.
12              MR. MURPHY:  Okay.
13              THE COURT:  So what are you doing, withdrawing
14   your motion in limine?
15              MR. MURPHY:  No, not at all.
16              THE COURT:  We're going to get to that right
17   now.
18              MR. MURPHY:  Thank you, Your Honor.  I didn't
19   mean to interrupt.  I wanted to make sure we were on the
20   same page.
21              THE COURT:  There are ten -- I just wanted to
22   make sure we aren't going to have more.
23              MR. INTERLANDI:  Your Honor, I may have one
24   more, I apologize.  In thinking, looking back at the
25   initial complaint that Ms. Light submitted to Ms. Bonner,
```

1  I believe one of the acts was that she was subjected to
2  unusual, in terms of length, meeting with the
3  administrators. Like a 90-minute meeting to talk about
4  her public speech.
5           THE COURT: The length of the meeting is a
6  retaliatory act?
7           MR. INTERLANDI: And she did not have a union
8  representative present.
9           THE COURT: What's the date of that meeting?
10          MR. INTERLANDI: I believe the date of that
11 meeting is March 26, 2021. It may have been earlier,
12 however, Your Honor. I can look at the complaint.
13          THE COURT: Okay. Eleven.
14          Now, let's talk about 69 and 75, to admit or to
15 exclude the investigative reports and the testimony by the
16 attorneys preparing those reports. Let me hear you.
17 You've obviously briefed it. I am familiar with that
18 sometimes in preparation for oral argument people focus or
19 change their focus of their argument. What I am trying to
20 understand is does the defendants' motion relate -- I
21 think it does not -- just to the reports and testimony by
22 the authors of those reports? Or is it a much broader
23 motion in limine? Which I ask because you have so many
24 objections to plaintiff's evidence because it refers to
25 the report.

THE COURT: So that's Numbers 70 and 72.

And I would like to ask Mr. Murphy why the fact or date of the filing of the lawsuit should bring about such a distortion in the reality of what the meaning is of what happened.

MR. MURPHY: Your Honor, my concern with those notes and the related argument that those notes caused her to transfer out of the school and the application for the third grade position that Ms. Light wanted, those are couched as additional incidents of retaliation. My strong concern is that the jury is going to use those to find that they were -- to support a finding that there was retaliation against her.

THE COURT: But that's not in the list.

MR. MURPHY: It's not.

THE COURT: So you don't have to worry about that.

MR. MURPHY: Okay. Well, that's --

THE COURT: If the classroom notes are permitted as relevant to the scope of the plaintiff's damages, why shouldn't the jury be able to hear the evidence and the counterevidence that -- I guess the counterevidence is there's no connection. The substance of the note suggests that might not be a wholly winning argument, but it might be.

1        I take it you're not really disagreeing that
2   those notes found in her desk could cause emotional
3   distress.
4        MR. MURPHY:  Well, my argument really is a step
5   backwards, Your Honor.  Those notes, my understanding,
6   relate to the defamation claim.  I read in the motion that
7   these go to her reputation, right?  And the reputation is
8   the key injury for the defamation claim, right?  But that
9   defamation claim is hinged entirely on one discussion with
10  Teacher X, the union representative, Ms. Light, and
11  Principal Gethings.  And there's been no foundation at all
12  to suggest that whatever was discussed in that meeting was
13  disseminated outside of that meeting.  This is a note four
14  or five months later by Ms. Light purportedly in her
15  classroom.  There's been no evidence whatsoever that
16  Ms. Gethings put it there or anybody else put it there.
17  It's just as likely Ms. Light put it there.  So there's no
18  connection to the alleged defamatory statement.  It's just
19  not relevant to the alleged defamatory statement.
20       THE COURT:  So let me ask, Mr. Interlandi, I
21  hadn't quite understood that your offer of those notes was
22  to prove liability for the defamation claim as opposed to
23  prove evidence of damages for the environment claimed to
24  have been created by the defendants.
25       MR. INTERLANDI:  The notes relate to the

1  reputational injury and harm that Ms. Light suffered as a
2  result of the defamatory comment in the March 31, 2021,
3  meeting.  It did come out of that meeting by way of the
4  administrators, Ms. Gethings and Ms. Clarino's retaliatory
5  complaint where they put that in there, where they said
6  she's disclosing Teacher X's information.
7           THE COURT:  No, no, that doesn't have anything
8  to do with what we're talking about which is the classroom
9  notes about wash your hair and get out of here.
10          MR. INTERLANDI:  Defense counsel said that there
11 was no evidence that that statement made its way out of
12 that meeting.  But it did.  It did in May of 2021 when the
13 administrators finally decided to file their own
14 complaint.  So that lie, so to say, did make it out of
15 that meeting.  And then the injury, it's certainly up for
16 debate and the jury can decide, you know, did she offer
17 harm to her reputation.  She's alleged in her complaint,
18 paragraphs 77 and 79, that she suffered harm to her
19 reputation.  And also, let's see, I believe there was some
20 other information in the complaint.  But I would just
21 focus on 77 and 79, harm to her reputation.  She's finding
22 notes in her classroom in August of 2022.  That is very
23 concerning.  And so --
24          THE COURT:  The defamation claim is the
25 allegedly false accusation that she outed Teacher X.

```
 1              MR. INTERLANDI:  Yes.
 2              THE COURT:  These notes that you seek to
 3   introduce have what relationship with that defamatory
 4   material?
 5              MR. INTERLANDI:  They relate as to harm to her
 6   reputation.  We would offer them --
 7              THE COURT:  What's the causal relationship of
 8   harm to reputation between accusing her of disclosing
 9   Teacher X as a COVID victim and these notes?  Let's say
10   the notes show injury or cause injury to reputation.  But
11   what's the causal relationship?
12              MR. INTERLANDI:  That they're within the school.
13   They occurred during a time whereafter, right?  So they
14   were found after the statement was made within about 12 to
15   14 months or so.  And it's not -- it's a typed note.  So
16   it's not something that a first grader or a third grader
17   did on their own.  An adult -- I would dare to say an
18   adult did this.  And it is I believe circumstantial
19   evidence of harm to her reputation.  The causal connection
20   is that the notes were found in her classroom, most likely
21   prepared by an adult, someone within the school community
22   who didn't want her there for one reason or another.  Our
23   position is because she was put out there to the community
24   that she outed Teacher X as it relates to her COVID
25   diagnosis.
```

1             THE COURT:  Anything further, Mr. Murphy?
2             MR. MURPHY:  No.  I'm glad we clarified the
3    timeline there.  That 12 months I think really makes the
4    prejudice even higher.  It doesn't closely follow the
5    alleged retaliatory acts and the disclosure of -- or the
6    statement made in that meeting with Teacher X and the
7    union representative.
8             MR. INTERLANDI:  Your Honor, if I may, I would
9    just, again, direct the Court's attention to the *Tyson*
10   case at page 9.  Relevancy is not negated by the fact that
11   conduct occurred one year later after arising events is
12   discussed there.  In other words, as related to the
13   supervisor's termination.  And also in that case there was
14   a prank text message that was well after the complaint was
15   filed.  And Judge Meyer allowed that to come in because it
16   was relevant to damages.
17            MR. MURPHY:  That *Tyson* case, Your Honor, is a
18   hostile work environment case.  It's very different than
19   this case.
20            THE COURT:  Is it very different or is it
21   somewhat different?
22            MR. MURPHY:  I think it's very different because
23   she's not asserting a hostile work environment claim.
24   She's claiming certain acts were retaliation.  First
25   Amendment retaliation, 31-51q, adverse employment action,

```
 1
 2                        C E R T I F I C A T E
 3
 4    RE: JESSICA LIGHT v. NEW HAVEN BOARD OF EDUCATION, ET AL.
 5                          No. 3:22CV425(JBA)
 6
 7
 8            I, Diana Huntington, RDR, CRR, Official Court
 9    Reporter for the United States District Court for the
10    District of Connecticut, do hereby certify that the
11    foregoing pages 1 through 66 are a true and accurate
12    transcription of my shorthand notes taken in the
13    aforementioned matter to the best of my skill and ability.
14
15
16
17
18                              /s/
                        _____
19                      DIANA HUNTINGTON, RDR, CRR
                           Official Court Reporter
20                      United States District Court
                        141 Church Street, Room 147
21                      New Haven, Connecticut 06510
                              (860) 463-3180
22
23
24
25
```