**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JESSICA LIGHT, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:22-cv-00425 (JAM) |
| | : | |
| v. | : | |
| | : | |
| NEW HAVEN BOARD OF EDUCATION, | : | |
| MARGARET-MARY GETHINGS | : | |
| Defendants. | : | November 11, 2024 |

**DEFENDANTS' REPLY IN SUPPORT OF POST-TRIAL MOTION**

At trial, the jury based its verdict on something that plaintiff Jessica Light never argued

was an adverse employment action—not in her complaint, motion practice, before trial, or at

trial.  Plaintiff's objection ("Obj.") to Defendants' post-trial motion presents no ground on

which this Court can ignore that fundamental flaw or the ways it infected the verdict, and fails

to rebut Defendants' other arguments, either. As such, the Court must grant Defendants'

motion and vacate the jury's award, or alternatively, significantly reduce the award.

**I.       Defendants are entitled to relief from the faulty verdict.**

Defendants' motion cited transcript quotes clearly showing that Plaintiff specified 11

retaliatory acts that were at issue in this case, which the Court stated it would hold Plaintiff to

and Defendants did not have to worry about anything beyond those 11 acts. (Ecf. 121-1 p. 8-

10) Plaintiff claims that those 11 items were the ones that her attorney listed "off the top of his

head *at that time*." (Obj. p.3) This is disingenuous and contradicted by the transcript, which

demonstrated that this was "the list," Plaintiff would be held to that list, and Defendants did

not have to worry about anything beyond that list. (Ecf. 121-1 p. 3-5) Plaintiff never reserved

her right to seek relief based on additional acts, and the Court never allowed such reservation.

Plaintiff next attempts to avoid Defendants' right to relief by arguing that Ms. Clarino's acts are "directly attributable to Defendant Gethings," and that the two orchestrated a scheme against Plaintiff. (Obj. p.6) Again, however, this argument was never made to the Court or the jury. Indeed, Principal Gethings was named as a defendant and Ms. Clarino was not, and it was improper for the jury to use Ms. Clarino's acts to find liability against Ms. Gethings.[1]

Because Ms. Clarino was not a defendant and the observations were not on the list of 11 alleged retaliatory acts, Defendants did not call Ms. Clarino as a witness. The Objection criticizes that decision, nothing that Defendants "knew Ms. Clarino and her actions would come up during Plaintiff's case-in-chief." (Obj. 7)[2] Knowing her name and actions might "come up" during testimony is far removed from knowing that her actions could serve as a basis for liability, however, especially given the Court's explicit instructions.[3]

Finally, Plaintiff argues that the fact that the jury instructions had a May 2022 cutoff date for retaliatory acts demonstrates that it was permissible to find liability based on Ms. Clarino's Fall 2021 observations. This ignores the fact that May 2022 was chosen because that is when the Alden complaint was allegedly found in a mailbox—an act in the list of 11—and was picked so that additional acts outside of the 11 and actually raised by Plaintiff (e.g. the August 2022 notes) could not be a basis for liability. Plaintiff never argued that anything that

---

[1] Plaintiff provided no evidence that Principal Gethings played any role in the number or manner of Ms. Clarino's observations. This is not surprising, as the evidence demonstrated that Principal Gethings was in charge of one building, and Ms. Clarino was in charge of the other. *See* Ex. A (Tr. p. 650; 4-13)

[2] Later in the Objection, Plaintiff also criticizes defense counsel for not objecting to the few questions about Ms. Clarino's observations. (Obj. p.15 n.6) This criticism has no validity, nor does Plaintiff's inappropriate, gratuitous characterization of Ms. Clarino's conduct when attending the trial.

[3] Exhibit A to the Objection sets out all the times Ms. Clarino was mentioned at trial. If anything, that chart supports Defendants' position, as those mentions had nothing to do with Ms. Clarino's observations of Plaintiff.

happened before May 2022 could be found to be a retaliatory act, and nor could she as the Court was crystal clear that Plaintiff would be held to the 11 acts.

Because it was improper for the jury to base its verdict on conduct by Ms. Clarino, Defendants argued that it is impossible to allow the verdict to stand based just on the finding of the TEVAL meeting being retaliatory. (Ecf. 121-1 p.9). In response, Plaintiff argues that a reasonably jury could find that any one act, like the TEVAL, was sufficient to establish liability. (Obj. p. 8-9) The problem for Plaintiff, however, is that is not what her attorney argued to the jury, nor what he argued in response to the motion for directed verdict. Plaintiff proceeded under the "critical mass" theory, and it is too late for Plaintiff to attempt to base a verdict on a different legal theory.[4] Accordingly, the verdict must be vacated.

## II.    Defendants are entitled to a directed verdict on the retaliation claims.

Defendants moved for a directed verdict on the ground that none of the 11 acts were retaliatory individually or when taken together as a critical mass. At the time, Plaintiff argued that there was sufficient evidence for the jury to find that these "seemingly minor" events could add up to a "critical mass." (Ecf. 121-1 p. 11-12). In the Objection, Plaintiff attempts to wordsmith the term "seemingly minor," and fails to address Plaintiff's counsel's repeated coupling of that phrase with "critical mass." (Obj. p.10-11) Every quote in both post-trial briefs uses those phrases together, however, which demonstrates that *the only ground* on which Plaintiff attempted to avoid a directed verdict was the argument that some or all of the 11 acts could be a "critical mass." For example, Plaintiff quotes the following: "And what we are

---

[4] Moreover, as noted in Part II of this Reply, this argument also fails because the TEVAL, standing alone, is insufficient to constitute an adverse employment action.

able to do is connect these minor or lesser events to establish a critical mass, to establish an adverse employment action." (Obj. p.11)

The motion should be granted as to the "critical mass" argument because, as noted above, Ms. Clarino's observations were not on the list of 11 acts and cannot serve as a basis for a "critical mass." (Ecf. 121-1 p. 12-13) In response, Plaintiff argues that, even if the observations cannot be considered, the TEVAL meeting standing alone was sufficient for the jury's verdict. Again, however, this ignores that Plaintiff waived this argument by not making it earlier, and even so, it is not supported by the evidence presented at trial. This was a meeting between a Principal, Assistant Principal, and a teacher on a wide range of topics relevant to that school year. (Ecf. 121-1 p.16) If the underlying acts that were discussed were not retaliatory (e.g., Plaintiff's transfer to first grade), then discussing those events cannot \be retaliatory either. Moreover, in the *Conte* case cited in the Memorandum, the Second Circuit was concerned about the verdict being to the detriment of law enforcement. Here, the Court should be concerned that allowing this verdict based on a single meeting between would likewise be a significant detriment to Board of Education across this state.[5]

Even if the observations are considered, the Objection has failed to demonstrate that there was evidence connecting them to Plaintiffs prior speech, which was at least 7 months prior. Plaintiff asks the court not to count the summer break, but provides no authority for the Court to exclude that time. Moreover, observations are a part of the teacher evaluation

---

[5] Plaintiff also argues that the verdict form supports her claim that the jury found that the TEVAL was an adverse action standing alone, noting that the jury was asked to "list each act that [it] found to be an adverse action." (Obj. p.13). That misquotes the form, however, which asked the jury to list each "act or acts" that it found constituted an adverse employment action. Given that Plaintiff's argument to the jury was that there was a "critical mass" of incidents that collectively constituted an adverse employment action, the only way to read the jury's verdict form is that they found the two listed acts taken together constituted an adverse employment action.

process, and Plaintiff had been observed many times before. Thus, the motion should be granted because there was insufficient evidence to support the jury's verdict.

## III.    Principal Gethings is entitled to qualified immunity.

Plaintiff argues that Principal Gethings' conduct violated a clearly established right based only on the existence of a letter from the union setting out some general rules about protected speech and the union's position on speech related to the COVID-19 pandemic. (Obj. p.17-18). A union letter does not clearly establish a right. Instead, "[o]nly Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004). Moreover, the Supreme Court has cautioned against determining what constitutes "clearly established law" at "too high a level of generality." *Wagschal v. Skoufis*, 857 F. App'x 18, 21 (2d Cir. 2021). Instead, "the law must be clearly established with respect to the particular conduct and the specific context at issue." *Mara v. Rilling*, 921 F.3d 48, 68 (2d Cir. 2019)(cleaned up). Applying these two principles, the Second Circuit affirmed a grant of qualified immunity to a State Senator who blocked a citizen from commenting on his Facebook page, concluding that a Second Circuit opinion issued after the conduct in question was "the first time that either the Second Circuit or the Supreme Court addressed the First Amendment implications of a public official blocking one of their constituents on social media." *Id*. Therefore, the right was not clearly established.

Like in *Wagschal*, Plaintiff failed to demonstrate that it was clearly established that the extended TEVAL meeting (and, if allowed, excessive classroom shadowing of Plaintiff) violated Plaintiff's rights, arguing only that these things deviated from "past practice or standard procedures."[6] Again, however, Plaintiff must point to precedent that establishes that Principal

---

[6] Plaintiff testified that *her* experience had been different in the past. Plaintiff did not provide evidence of the actual policies regarding TEVAL meetings or classroom shadowing, much less violations of any such policies.

Gethings should have known those two acts violated Plaintiff's clearly established rights. She did not do that, and indeed failed to cite any cases to the Court on this point.

Plaintiff also argues that Defendant Gethings' conduct was not objectively reasonable for two reasons, that she: (1) expressed an intent to discuss "other issues" at the TEVAL meeting and (2) received a verbal warning dated February 25, 2022. (Obj. p. 20). Regarding the first argument, Principal Gethings testified: "[W]e wanted to discuss other issues and also see how we could support Ms. Light as well as discuss our plans to be proactive for next year of changing her class and getting her training and exposure to the grade that she would be teaching." *See* Ex. B (Tr 651:4-8). She also started the conversation about Plaintiff's COVID concerns by saying that what she was about to discuss fell "in the TEVAL piece of professionalism[.]" Pl. Exh. 24 at 18:11-12. This evidence demonstrates that Principal Gethings' conduct was objectively reasonable. *See Heller v. Bedford Cent. Sch. Dist.*, 144 F. Supp. 3d 596, 620–21 (S.D.N.Y. 2015), *aff'd,* 665 F. App'x 49 (2d Cir. 2016)(Police Chief's actions objectively reasonable when based on concerns raised by a third party). Second, the verbal warning states generally that Principal Gethings "exhibited poor professional judgment[;]" it does not connect the warning to the TEVAL meeting or to any additional observations, and "poor judgment" is hardly the same as an intentional violation of a clearly established right.

**IV.    Defendants are entitled to a new trial due to improperly admitted evidence.**

Defendants argued that it was improper and erroneous for the Court to admit the two notes into evidence, and that this had a detrimental impact on the verdict. The Opposition simply quotes the Court's prior ruling, and fails to address the substance of Defendants' argument.  For example, Plaintiff never responds to Defendants' argument that the Court itself suggested the ground for admissibility, or that the jury awarded over $1,000,000 based on just 1 of the 11

6

allegedly-retaliatory acts. The disconnect between the jury rejecting almost all grounds for

liability, yet awarding more than Plaintiff asked for in compensatory and emotional distress

damages and also awarding punitive damages, demonstrates that the impact of the notes was

significant and that it was an abuse of discretion for them to be admitted.

**V.      The damages awarded are unconscionable and must be set aside or remitted.**

      **A.  Plaintiff is not entitled to double recovery.**

Plaintiff argues, without citation to any authority, that the compensatory damages

awarded under Counts One and Two must be viewed separately. (Obj. p.26, 29) This position is

mistaken because "the rule against double recovery is designed to afford a plaintiff full, but only

one, recovery for his compensable injury even where brought under distinct causes of action or

in different forums[.]" *Restivo v. Hessemann*, 846 F.3d 547, 596 (2d Cir. 2017); *Gilead Cmty.*

*Servs., Inc. v. Town of Cromwell*, 432 F. Supp. 3d 46, 82 (D. Conn. 2019) ("In general, plaintiffs

are not entitled to double recovery of compensatory damages for the same injuries.").

      **B.  Economic damages are not supported by the evidence.**

Compensatory damages must be supported by "sufficient evidence." *Perry v. City of New*

*York*, 78 F.4th 502, 527 (2d Cir. 2023). Although damages need not be proven with mathematical

precision, a jury must still only award damages based on what was proven with sufficient

evidence. Without citation to authority, Plaintiff argues that the Court should give "deference to

the jurors' common sense[.]" (Obj. p.26). Plaintiff, however, fails to offer *any* explanation

regarding how the jury could have arrived at an award of damages higher than the requested

$60,200 without speculation or sympathy.

Regarding the $60,200, Plaintiff argues that she established the value of the sick days by

testifying that they were "about $26,000, based on the information the union gave [her] at the

per-day rate." (Obj. p.27). Because Plaintiff failed to offer evidence of the per diem rate and the exact number of days taken, and failed to offer evidence connecting all "66 lost sick days" to Defendants' conduct that was found to be retaliatory, the award must be vacated or reduced.

Regarding the full $34,200 value of Ms. Ventura's bills, Plaintiff argues that Ms. Ventura treated her for work related stressors caused by Defendants' conduct. (Obj. p. 27-28). Even if the jury relied on Ms. Ventura's notes, they establish, at most, that work stressors were discussed at approximately 40% of Plaintiff's appointments. Moreover, it is undisputed that Ms. Venture treated Plaintiff for many perceived slights, almost all of which the jury found not to be retaliatory. The award related to Ms. Ventura's fees should be reduced accordingly.

### C. Emotional distress damages are not supported by the evidence.

Emotional distress damages are compensatory, *Fort v. White*, 530 F.2d 1113, 1116 (2d Cir. 1976), and therefore they are thus subject to the bar on double recovery. *See supra* Section VII.A.I. Accordingly, Plaintiff's argument that the Court must consider the awards on each count separately lacks merit. The Court must thus consider whether emotional distress damages of $650,000 are excessive here, and, by any measurable standard, they are.

Plaintiff's argument that the award is not excessive relies on the assumption that Defendants were found liable for the entire range of conduct she alleged. (Obj. p. 29-30) Defendants were not, however. At trial, Plaintiff failed to identify evidence connecting her emotional distress to the TEVAL meeting or classroom shadowing. Instead, as the Objection itself demonstrates, Plaintiff and Ms. Ventura testified about Plaintiff's emotional distress related to all of the acts Plaintiff believed were retaliatory, which created the feeling that she was being "pushed out." (*Id.*) Because Defendants were not found liable for the totality of the circumstances, they cannot be held liable for the totality of the alleged emotional distress.

Plaintiff also does not offer any authority to support that, even if Defendants were liable for the totality of the circumstances, an award of $650,000 would be appropriate. She does nothing more than attempt to distinguish the precedent supporting Defendants' position, each of which contain elements helpful to guide the Court's analysis, and each of which establish that the award of emotional distress damages here shock the conscience and must be remitted.

### D.  There was no evidentiary basis for punitive damages.

Plaintiff argues that punitive damages were warranted because "there was nothing 'normal' or 'routine'" about the conduct of Principal Gethings and Ms. Clarino, and their "actions were reprehensible, egregious and outrageous." (Obj. p.32) Plaintiff fails, however, to identify evidence in the record to support this assertion, or to explain how a lack of normalcy demonstrates evil motive, reckless or callous indifference, or a positive element of conscious wrongdoing. *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 115 (2d Cir. 2015); *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 538 (1999). At best, the evidence shows employers taking action "to protect itself[,]" which is insufficient to rise to the requisite level of "egregious" to support an award of punitive damages. *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 236 (2d Cir. 2000)($900,000 punitive award vacated). Moreover, courts do "not hesitate" to remit awards to lower amounts "where the … conduct was not sufficiently reprehensible or egregious to warrant the higher amount." *Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274 (S.D.N.Y. 2008).

The cases Plaintiff relies on to oppose Defendants' post-trial motion are inapplicable or unpersuasive. For example, in *Manzo v. Sovereign Motor Cars, Ltd.*, 2010 WL 1930237 (E.D.N.Y. May 11, 2010), *aff'd,* 419 F. App'x 102 (2d Cir. 2011), punitive damages were awarded when defendant engaged in a pattern of egregious sexual harassment, which is not present here. In *Brabson v. The Friendship House of W. New York*, 46 F. App'x 14 (2d Cir.

2002), the defendant attempted to falsify sexual harassment accusations to support a pretextual termination, which the court agreed was "outrageous and shocking and in reckless disregard of [plaintiff's] rights." That is not comparable to this case. Finally, in *Tse*, 568 F. Supp. 2d 274, the court remitted a $3,000,000 punitive damages award to $300,000, characterizing even the remitted award as "designedly generous[,]" but finding that a lower amount would not "be a significant enough penalty to such a large entity as UBS as to make it an effective tool for deterrence of future discrimination." *Id.* at 318. A public board of education and public servant are in a significantly different financial position than a global financial services firm.

**VI.    The defamation verdict cannot survive the motion for a directed verdict.**

Defendants argued that Plaintiff failed to provide any evidence that her reputation was injured by the defamatory statement in a closed Zoom meeting. (Ecf. 121-1 p. 23-24) The Objection points to a similar statement in Principal Gethings' reply to Plaintiff's complaint, but that has nothing to do reputational harm. Plaintiff cites Ms. Morrison allegedly unfriending her on Facebook as evidence of reputational harm. Plaintiff testified however to a strained relationship with Ms. Morrison before the TEVAL meeting, and that she believed that Ms. Morrison was not representing her at that meeting. *See* Ex. C (Tr. 72:13-16; 374:11-25). Ms. Morrison also raised concerns to Principal Gethings about Plaintiff's March 2021 Facebook posts, before the TEVAL meeting. (*Id.*) Being unfriended by one person on Facebook on an unspecified date, when there was not a good relationship between those individuals, falls well short of evidence of reputational harm caused by one statement in a meeting.[7]

---

[7] Plaintiff testified that she noticed she was unfriended around May 2021, but she provided no evidence or testimony establishing when she was actually unfriended.

DEFENDANTS,

NEW HAVEN BOARD OF EDUCATION
and MARGARET-MARY GETHINGS


By    /s/ *Peter J. Murphy*
      Peter J. Murphy (ct26825)
      Shipman & Goodwin LLP
      One Constitution Plaza
      Hartford, CT  06103-1919
      Telephone: (860) 25l-5950
      Facsimile: (860) 251-5316
      pjmurphy@goodwin.com
      Their Attorney