## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **JESSICA LIGHT** | **CIVIL ACTION NO:** |
| | **3:22-CV-00425 (JBA)** |
|     **Plaintiff,** | |
|  **v.** | |
| **NEW HAVEN BOARD OF EDUCATION &** | |
| **MARGARET-MARY GETHINGS in her** | |
| **individual capacity** | |
|     **Defendants.** | **JULY 31, 2025** |

### PLAINTIFF'S SUPPLEMENTAL MEMORANDUM

Pursuant to this Court's request on July 23, 2025, the Plaintiff, Jessica Light, hereby

submits this supplemental memorandum addressing "whether or how *Tangreti v. Bachmann*, 983

F.3d 609 (2d Cir. 2020), impacts consideration of Count 2."

## I.    BRIEF SUMMARY OF *TANGRETI*

The plaintiff, an incarcerated person, brought a 42 U.S.C. § 1983 action against eight prison

supervisors alleging they violated the Eighth Amendment "by displaying deliberate indifference to

the substantial risk of sexual abuse." *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020). The

district court granted summary judgment in favor of seven defendants. The eighth prison

supervisor, Bachman, appealed the Court's denial of qualified immunity. The Second Circuit held

that there is no special rule for supervisory liability. Instead, "a plaintiff must plead and prove that

each Government-official defendant, through the official's own actions, has violated the

Constitution." (internal quotations and citations omitted) *Id.* at 618. The Court further stated that

"[t]he focus is on what the *supervisor* did or caused to be done…" (emphasis in original) *Id.*

The *Tangreti* decision is distinguishable, amongst other reasons set forth below, in that it is

a Second Circuit decision regarding an interlocutory appeal after the trial court denied defendant's

motion for summary judgment. The issue on appeal was whether the defendant was "immune from suit under the doctrine of qualified immunity because her actions did not violate a statutory or constitutional right that was clearly established at the time of the challenged conduct." (internal quotations and citation omitted) *Id.* at 614. In our case, Count Two survived summary judgment and the jury found liability as to Defendant Gethings. Specifically, the jury identified two retaliatory actions: (1) an "extended" teacher evaluation, and (2) the Assistant Principal, Jenny Clarino, excessively shadowing Plaintiff from August 2021 through October 2021.

## II.    **DEFENDANTS FAILED TO RAISE OR RELY UPON *TANGRETI* AND SUCH STANDARD WAS NOT INCLUDED IN THE COURT'S JURY INSTRUCTIONS**

In Count Two, Plaintiff alleges that her supervisor, Defendant Gethings, retaliated against Plaintiff in violation of 42 U.S.C. § 1983. The jury instructions stated, *inter alia*: "To prevail on this claim, Ms. Light must prove by a preponderance of the evidence the following four elements: (1) Ms. Gethings acted under color of state law; (2) Ms. Light engaged in protected speech; (3) Ms. Light suffered one or more adverse employment actions; (4) There was a causal connection between Ms. Light's protected speech and one or more of the adverse employment actions." *ECF Doc. 114 at p. 7.* With regard to "adverse employment action," the jury was instructed:

> To prove the third element of her claim, Ms. Light must show by a preponderance of the evidence that she experienced at least one adverse employment action by May 2022. An "adverse employment action" means an action that is taken by an employer against an employee that is significant enough that it would deter a reasonable and similarly situated person of ordinary firmness from exercising his or her constitutional right to free speech. If you find that an action was imposed in order to retaliate against free speech and would deter a reasonable and similarly situated individual of ordinary firmness from exercising her constitutional right to free speech, then you may conclude it was an "adverse action." On the other hand, harassment for exercising the right of free speech is not actionable if it was unlikely to deter a person of ordinary firmness from that exercise.
>
> You may find that Ms. Light has satisfied this element **if she has proved that she experienced at least one employment action of this sort**. You may also find that Ms. Light has satisfied this element if she proves she experienced a combination of seemingly minor incidents that reached a critical mass. In order to assess the impact of these more minor incidents, you must consider whether the totality of

MONARCH LAW LLC
363 NEW BRITAIN ROAD, FIRST FLOOR, BERLIN, CONNECTICUT 06037
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

those incidents would objectively make the working environment unreasonably inferior, hostile, or adverse to the employee when compared to a typical or normal workplace.

(emphasis added) *ECF Doc. 114 at pp. 7-8.*

Based on this instruction, the jury identified two adverse employment actions: "Extended teval conversation not regarding Ms. Light's teaching," and "Ms. Carino's excessively shadowing Ms. Light from Aug – Oct 2021 prior to FMLA absence." *ECF Doc. 110 at p. 2*. Had the parties or this Court desired to have the *Tangreti* standard applied, then the jury instructions should have stated such standard. Further, the defendants never raised such standard, including at summary judgment and trial. It is unfair to apply this standard when it was never presented to the jury.

## III.    DEFENDANT GETHINGS AND MS. CLARINO ARE ONE IN THE SAME

Testimony shows, however, that Ms. Gethings was directly involved in and the cause of the adverse employment actions identified by the jury. Ms. Clarino was referred to often as having engaged in conduct and meetings with Ms. Gethings, carrying out Ms. Gethings' scheme of retaliation as one.

> **Q.** Okay. When you say, "we," who's "we"?
> **A. Ms. Clarino and I.**

(emphasis added) *08/08/24 Tr., p. 658: 5-6*. Ms. Clarino's actions were directly caused by Ms. Gethings. Misses Gethings and Clarino worked in tandem to perpetrate the scheme of retaliation, and together, their actions constitute the plan of Ms. Gethings, including both co-signing a retaliatory complaint against Plaintiff, and both attending all the meetings with Plaintiff. Ms. Gethings testified:

> **Q.** And why did Ms. Clarino attend that T-Eval meeting with you?
> **A.** Ms. Clarino attended the T-Eval meeting -- that was one of several that she had attended or that, simply said, we attended together. ***We work closely together*** and **we** knew that we would be sharing with some teachers that their grade may be changing, and **we** knew Ms. Light's grade was going to change . . .

(emphasis added) *08/08/24 Tr., p. 649: 21-25*. Gethings further testified, "It wasn't just a T-Eval

…that's sacred time for **us** to have one-to-one with **our** teacher. **And we wanted to discuss other**

**issues**." (emphasis added) *8/8/24 Tr., pp. 650-651:20-22*. Gethings and Clarino's conduct was

entwined, both involved in each step of the retaliatory plan.

> **Q.** Are you friends with Jessica Light on Facebook?
> **A.** No, I'm not.
> **Q.** Are you friends with Jenny Clarino?
> **A.** Yes, I am.

*08/08/24 Tr., p. 692: 16-19*. "So **Ms. Clarino and I** were going into our second year

of **working together**, and **we** were looking at some changes that **we** would be making." (emphasis

added) *08/08/24 Tr., p. 653: 11-13*.

> **Q.** It's not normal protocol for **a principal and assistant principal** to sit on a
> parent-teacher conference; right?
> **A.** Actually, it is **our** protocol. **We do it all the time**. **We** wish we could sit on
> every conference. **We** spend the week of conferences trying to get as many as
> **we** possibly can...

(emphasis added) *08/08/24 Tr., pp. 728: 23-25; 729: 1-6*. Plaintiff's testimony further demonstrates

that even the superintendent viewed Ms. Gethings and Ms. Clarino as working together as one.

> **Q.** And just so that we're clear, what did Ms. Gethings say to you specifically
> during this November meeting as it related to your comments at the, I guess,
> New Haven Board of Ed sponsored parent meeting?
> **A.** That my speaking made her look bad…and the superintendent had told the
> whole -- all of the principals to make sure the teachers are informed so we
> don't have this happen again. And then pulled **her and Jenny Clarino** aside
> and said, "By the way, **that example I gave you was you**."

(emphasis added) *08/05/24 Tr., p. 54: 6-18*. Gethings and Clarino were "the administration":

> **Q.** Who was the administration at that time?
> **A. Ms. Gethings and Ms. Clarino.**

(emphasis added) *08/06/24 Tr., p. 388: 19-20*. Ms. Gethings, as Principal, was the leader of

Worthington Hooker. She worked closely with Ms. Clarino and the jury could have reasonably

concluded that Ms. Gethings caused Ms. Clarino to excessively shadow Plaintiff.

These facts are distinguishable from those in *Tangreti*, where the conduct of the supervisor was not so intricately entwined with that of the subordinate to constitute actions by her in violation of a constitutional right. The Second Circuit concluded: "Applying the proper standard, we conclude that there is insufficient evidence…that Bachmann, through her own actions, displayed deliberate indifference to the substantial risk of sexual abuse…**the pretrial record does not support the inference that Bachmann had subjective knowledge that Tangreti was at a substantial risk of sexual abuse.**" (emphasis added) *Id.* at 612. In contrast, Ms. Gethings and Ms. Clarino worked together as one to advance and achieve Ms. Gethings' plan of retaliation. The facts relied upon by the Court in *Tangreti* are different from the facts in our case.

## IV. CASES INTERPRETING *TANGRETI*

Recent cases interpreting *Tangreti* are instructive. In *Miller v. Carroll,* No. 3:21-CV-14 (VLB), 2022 U.S. Dist. LEXIS 55064 (D.Conn. March 28, 2022), the plaintiff, a suspended attorney, brought claims against a judge alleging that delays in her bar reinstatement process were discriminatory and unconstitutional. The court dismissed the claims for failure to allege facts showing the judge's own personal involvement in any constitutional violation. The court relied on *Tangreti* and held that the plaintiff failed to reasonably allege that the judge personally participated in the unconstitutional act. The Court stated: "The Second Circuit recently adopted the Tenth Circuit's explanation that '[t]o establish a violation of § 1983 by a supervisor, as with everyone else, [ ], **the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights**.' Tangreti, 983 F.3d at 618…." *Id.* at *31. In our case, the evidence presented during trial establishes that Ms. Gethings engaged in a deliberate plan of retaliation against Plaintiff – with the **assistance** of her Facebook friend and the only Assistant Principal at Worthington Hooker – Jenny Clarino.

MONARCH LAW LLC
363 NEW BRITAIN ROAD, FIRST FLOOR, BERLIN, CONNECTICUT 06037
TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039

In *Harnage v. Dzurenda*, No. 3:14-CV-885 (SRU), 2022 U.S. Dist. LEXIS 59511 (D.Conn. March 31, 2022), the plaintiff, an incarcerated male, alleged that the Connecticut Department of Correction provided legal assistance in civil matters to female inmates, but not male inmates, violating the Equal Protection Clause. The court granted summary judgment and held that the plaintiff failed to present evidence of the defendants' personal involvement in a constitutional violation. The court applied *Tangreti,* with an emphasis that supervisory officials cannot be held liable solely by their role, but also explored exceptions to such rule:

> Recently, in *Tangreti v. Bachman*, the Second Circuit reexamined the requirements for holding a supervisory defendant liable under section 1983…More specifically, "[t]he focus is on **what the supervisor did or caused to be done**…
>
> *Tangreti*, however, …**did not have occasion to address the scope of liability under section 1983 for creation or continuance of a policy under which unconstitutional practices occurred**…. As other courts have recognized, imposing liability for a defendant's role in creating or perpetuating an unconstitutional policy is not necessarily inconsistent with *Tangreti* (or, for that matter, *Iqbal*) **so long as the defendant's actions—not those of her subordinates—afford a basis**.

(emphasis added) *Id.* at *23-25.

As stated in *Harnage*, *Tangreti* does not address the full scope of liability under 42 U.S.C. § 1983. In our case, the documentary evidence and trial testimony support the conclusion that Ms. Gethings' conduct affords a basis for liability. The jury could have found that Ms. Gethings created, promulgated and implemented a retaliatory campaign against the Plaintiff. Her liability does not rest merely on her supervision of others, but on her personal involvement, creation and causation of the retaliatory conduct, including but not limited to, conducting the extended TEVAL meeting and working closely with Ms. Clarino while she "over-shadowed" Plaintiff's first-grade classroom.

In *Raynor v. Feder*, No. 3:20-CV-1343 (SVN), 2023 U.S. Dist. LEXIS 172579 (D.Conn. September 27, 2023), the plaintiff, an inmate, alleged deliberate disregard of his medical needs. He

named medical professionals and correctional staff as defendants. The court granted summary judgment and found no defendant was personally involved in the plaintiff's medical decisions. The court cited *Tangeti* and stated: "[p]ersonal involvement…must be shown by '**direct participation**'…in the conduct…constituting a violation…" *Id*. at *16, ftnt 6.

In our case, trial testimony and evidence establish, by a preponderance of the evidence, that Ms. Gethings was personally involved, coordinated and caused the "retaliatory acts." Ms. Gethings dictated Ms. Clarino's actions. Ms. Gethings and Ms. Clarino were not mere co-workers or manager-subordinate, as seen in the cases applying the *Tangreti* decision, but they acted as one. For example, they co-signed communications, attended meetings concerning Plaintiff, filed a retaliatory complaint against Plaintiff, communicated with HR concerning Plaintiff's start of the 2021-2022 school year and Plaintiff's return to work after medical leave in early 2022.

Most recently, in *Frischling v. Radford,* No. 3:24-CV-198 (MPS), 2025 U.S. Dist. LEXIS 414407 (D.Conn. March 7, 2025), the Court expressed: "[U]se of the term 'personal involvement,' coupled with [the parties'] citation of *Tangreti,* only muddies the waters here, and is not helpful… Second Circuit cases addressing 'personal involvement' have generally concerned whether a supervisory official's actions are enough to make that official liable for a constitutional violation that stemmed from the conduct of an underling." *Id.* at *17. Again, Ms. Clarino worked closely with and at the direction of Ms. Gethings. Thus, the impact of *Tangreti* is minimized by the evidence presented at trial and the jury's decision.


THE PLAINTIFF,


By: */s/ Anthony J. Interlandi*
    Anthony J. Interlandi (ct27512)
    tony@monarchlaw.com

**MONARCH LAW LLC**
**363 NEW BRITAIN ROAD, FIRST FLOOR, BERLIN, CONNECTICUT 06037**
**TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039**

## CERTIFICATION OF SERVICE

I hereby certify that on July 31, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing as indicated below. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filings as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Anthony J. Interlandi*
Anthony J. Interlandi

**MONARCH LAW LLC**
**363 NEW BRITAIN ROAD, FIRST FLOOR, BERLIN, CONNECTICUT 06037**
**TELEPHONE: (860) 969-2909 • FACSIMILE: (860) 909-0039**