UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JESSICA LIGHT,  Plaintiff, | : : : | CIVIL ACTION NO. 3:22-cv-00425 (JBA) |
| v. | : : | |
| NEW HAVEN BOARD OF EDUCATION, MARGARET-MARY GETHINGS  Defendants. | : : : | July 31, 2025 |

**DEFENDANTS' SUPPLEMENTAL BRIEF**

Pursuant to the Court's request, defendants New Haven Board of Education and Margaret-Mary Gethings submit this supplemental brief "addressing whether or how *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), impacts consideration of Count 2."

**I.      RELEVANT BACKGROUND**

Plaintiff brought a four-count complaint against the Board and Principal Gethings. At issue in this brief is Count Two, a First Amendment retaliation claim brought against Principal Gethings pursuant to 42 U.S.C. § 1983. Following trial, the jury rendered a verdict in favor of Plaintiff on Count Two, answering the following question on the Jury Verdict Form in the affirmative: "(4) Do you find that Plaintiff Jessica Light has proven that Defendant Margaret-Mary Gethings took adverse employment action against her?" (ECF 110 at 2). Because the jury answered that question in the affirmative, it was also asked to "list each act that you found to be an adverse employment action." (*Id.*). In response, the jury identified two acts: (1) "Extended teval [sic] conversation not regarding Ms. Light's teaching" and (2) "Ms. Clarino excessively shadowing Ms. Light from Aug - Oct 2021 prior to FMLA absence[.]" (*Id.*). The jury further responded in the affirmative to the question that asked whether it found "that Plaintiff Jessica

Light has proven that her protected speech was a substantial or motivating factor in the adverse employment actions taken against her by Defendant Margaret-Mary Gethings?" (*Id.*).

Based on this verdict on Count Two alone, the jury awarded $75,000.00 in economic damages and $350,000.00 in non-economic damages (ECF 110 at 5). It further found that "plaintiff Jessica Light [has] proven that punitive damages against Defendant Margaret-Mary Gethings are warranted" and awarded "punitive damages to Plaintiff Jessica Light for Defendant Margaret-Mary Gethings' violation of 42 U.S.C. § 1983" in the amount of $200,000.00, for a total damages award of $625,000.00 on Count Two. (*Id.*). Defendants filed a post-trial motion to vacate the verdict or alternatively to substantially reduce the verdict. (ECF 121, 127).

## II.     ANALYSIS

### A.     Principal Gethings cannot be held liable for Ms. Clarino's conduct.

Defendants' post-trial motion demonstrated that the verdict on Count Two (and the entire verdict) cannot stand because it was improper to use Ms. Clarino's conduct to hold Principal Gethings liable for retaliation. *Tangreti* provides additional support for that argument, as that case clarifies that "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'… The violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 618 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Under *Tangreti* it is not sufficient for a supervisor to have known, or even should have known, of her subordinate's conduct to establish liability under Section 1983. *Id.* at 612. In other words, "[g]overnment officials may not be held liable for the

2

unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Id.* at 616 (quoting *Iqbal*, 556 U.S. at 676).[1]

Here, Ms. Light failed to allege in the Complaint that Ms. Gethings was involved in excessive shadowing, as required by *Tangreti*. Because it was not alleged in the Complaint or discussed by Plaintiff's counsel at any time before the jury's verdict, Ms. Light presented no evidence establishing that Principal Gethings was personally involved in the "excessive shadowing" by Ms. Clarino. Rather, Ms. Light's limited testimony on this topic stated only that Ms. Clarino "observed [her] well over four [times] in the first two months" after she began teaching at the Little School, even though, in her anecdotal experience, a teacher is only observed "two to maybe four" times a year. Tr. 8/5/24, 132:19-133:19. Plaintiff did not testify or present any other evidence that Principal Gethings was involved in Ms. Clarino's decision to conduct classroom observations or even was aware of when Ms. Clarino was conducting classroom observations. Both Principal Gethings and Ms. Light testified that Ms. Clarino was located in and was in charge of the Little School, which is in a separate building than the Big School portion of Worthington Hooker School, and that Principal Gethings was located in and in charge of the Big School. Tr. 8/9/24, 650:4-13; Tr. 8/5/24, 129:16-20. During closing arguments, Plaintiff's counsel acknowledged that Principal Gethings was only the "administrator in charge" of the Big School. Tr. 8/9/24, 765:2-7. In cross examination, Ms. Light admitted that she was unaware of the standard practice for classroom observations at the Little School, having only worked at the Big School with Principal Gethings until that school year. Tr. 8/6/24, 327:10-13.

---

[1] *Tangreti* eliminated the "five categories of evidence that may establish the liability of a supervisory official for a subordinate's conduct under § 1983" set forth previously in *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). At no point prior to the verdict did Plaintiff raise liability under *Trangreti* or *Colon*.

Plaintiff did not name Ms. Clarino as a defendant, and never alleged or argued to the jury that Ms. Clarino's conduct could be used as a basis to find liability against Principal Gethings. As a result, Plaintiff never—as noted above—presented evidence establishing that Principal Gethings was involved, in any way, in Ms. Clarino's observations of Plaintiff's teaching in Fall 2021—Plaintiff's first months in Ms. Clarino's building. There also was no factual basis for the jury even to infer that Ms. Gethings was involved in any decisions related to Ms. Clarino's shadowing. *See Felciano v. Town of E. Hartford*, No. 3:18-CV-1932 (OAW), 2023 WL 4826465, at *6 (D. Conn. July 27, 2023) (where supervisor was not involved in the act giving rise to the Section 1983 claim, "after-the-fact conduct[,]" including a purported "coverup" and deficient investigation, "would not allow a jury reasonably to conclude that the supervisory defendants had sufficient mens rea and direct involvement in the" act giving rise to the Section 1983 claim). Moreover, such an inference would violate the principle that a "violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 618. Without evidence of Principal Gethings's personal involvement in the "excessive shadowing," Principal Gethings cannot be held personally liable for such conduct. *Tangreti*, 983 F.3d at 618.

In her post-trial brief, Plaintiff stated that Principal Gethings and Ms. Clarino "acted as one" or were "working lockstep with" each other. (ECF 124 at 12, 16). Plaintiff failed to plead a conspiracy claim or argue it to the jury, and she cannot do that in post-trial motions for the first time. Even if she had brought a conspiracy claim, there was simply no evidence to establish that "an agreement existed between" Principal Gethings and Ms. Clarino to act in concert to inflict an unconstitutional injury through excessive shadowing. *See Vega v. Artus*, 610 F. Supp. 2d 185, 199, 202 (N.D.N.Y. 2009) ("[W]here the personal involvement of a defendant in a Section 1983 violation is premised upon a claim of conspiracy, '[i]t is incumbent on a plaintiff to state more

4

than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive him of his constitutional rights.'" (quoting *Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990)).

      **B.**      **Principal Gethings is entitled to qualified immunity on Count Two.**

In their post-trial motions, Defendants argued that Principal Gethings was entitled to qualified immunity on Count Two. *See* ECF 121, 127. *Tangreti* again strengthens that argument. In *Tangreti*, the district court denied qualified immunity to one prison guard, finding that there was a genuine issue of material fact as to whether she was grossly negligent, and therefore not entitled to qualified immunity. On appeal, the Second Circuit reversed, concluding that the employee was entitled to qualified immunity because her actions did not violate a statutory or constitutional right, let alone one that was clearly established at the time of the challenged conduct. *Tangreti*, 983 F.3d at 615-16. As noted previously, *Tangreti* changed the standard in this Circuit for holding a supervisor liable under § 1983, and then addressed whether that employee as a supervisor could be held liable for Eighth Amendment violations. Just as the scope of supervisor liability under § 1983 for Eighth Amendment violations was not clearly established at the time of the challenged conduct in *Tangreti*, Plaintiff has not demonstrated that the scope of supervisor liability under § 1983 for supervisor liability for First Amendment violations was clearly established at the time of the challenged conduct in this case. At a minimum, though, following *Tangreti* it was clearly established that a supervisor cannot be held liable for conduct she was not personally involved with, like here. Therefore, Principal Gethings is entitled to qualified immunity. *See* ECF 121, 127.

      **C.**      **The Already-Unsupported Verdict on Count Two Cannot Survive Without the "Excessive Shadowing."**

Because Principal Gethings cannot be held liable for Ms. Clarino's alleged conduct, the only finding left to support the jury's verdict on Count Two is the "[e]xtended teval [sic]

conversation not regarding Ms. Light's teaching" (ECF 110 at 2). As established in the Defendants' post-trial briefing, however, the extended TEVAL meeting alone is not sufficient to support the verdict because, as the jury was instructed, for the extended TEVAL meeting to constitute an adverse employment action sufficient to support a claim for retaliation, it must be "an action that is taken by an employer against an employee that is significant enough that it would deter a reasonable and similarly situated person of ordinary firmness from exercising his or her constitutional right to free speech." *See* ECF 121-1 at 15-17; ECF 114 at 5. One TEVAL meeting between a teacher, a Principal, and an Assistant Principal, standing alone, is the exact type of de minimis incidents that would not deter a reasonable, similarly-situated person or ordinary firmness from exercising her constitutional rights. *See*, *e.g.*, *Deal v. Seneca Cnty.*, No. 07-CV-6497 MAT, 2012 WL 13661, at *12 (W.D.N.Y. Jan. 4, 2012) ("[R]elatively *de minimis* incidents standing alone will not give rise to a First Amendment retaliation claim[.]"); *Monsour v. New York State Off. for People with Developmental Disabilities*, No. 1:13-CV-0336 TJM CFH, 2014 WL 975604, at *7 (N.D.N.Y. Mar. 12, 2014) (claims that employer "caused unfavorable information to be included in his personnel file[,]" was "involved in investigating an incident in which Plaintiff" was involved, and "yelled at Plaintiff to tell him to stop harassing Human Resources personnel[]" were insufficient to state a claim of adverse employment action).

In addition, there is no way to determine whether the jury would have reached the same verdict without the "excessive shadowing." The jury was instructed that it could find "that Ms. Light has satisfied this [adverse employment action] element if she has proved that she experienced at least one employment action of this sort[]" *or* "if she proves she experienced a combination of seemingly minor incidents that reached a critical mass." (ECF No. 114 at 8). As noted in Defendants' post-trial motions, Plaintiff's argument and evidence presented to the jury

6

and in response to the motion for a directed verdict was limited to the critical mass argument. The jury must have considered the two acts to be a "critical mass," and it likely would have had a different verdict if the only act it found to be adverse was the extended TEVAL meeting.

Moreover, given that the jury awarded economic, non-economic, and punitive damages on Count Two based on *both* acts, there is no way to determine how the jury intended to allocate those damages between those acts. If anything, it appears that the jury put specific emphasis on Ms. Clarino's alleged excessive shadowing when awarding damages, as they included it in the verdict despite no argument about it from Plaintiff's counsel and they also noted that the shadowing was just "prior to [Plaintiff's] FMLA leave"—suggesting they viewed the shadowing as a significant cause of Ms. Light's alleged emotional distress, and not the TEVAL meeting six months earlier. As established in Defendants' post-trial briefing, the inability to allocate the jury's award of damages makes upholding the entire verdict on Count Two untenable, and in fact, calls into question the jury's entire verdict (ECF 121-1 at 9-10). Because Principal Gethings *cannot* be held liable for a portion of the conduct that formed the basis for this award, the jury's award of damages based on that conduct cannot stand.[2]

### III. CONCLUSION

For the reasons set forth herein, as well as those in Defendant's previously-submitted post-trial motion, Principal Gethings cannot be held liable for the conduct of Ms. Clarino, and the Court should grant the relief sought in Defendants' post-trial motion (ECF No. 121).

---

[2] As argued in Defendants' post-trial motion, all the reasons for vacating the verdict on Count Two apply to Count One as well. *See*, *e.g.*, ECF 121, pg. 10. Without repeating all of them here, Defendants note there is no basis for the Court to find that the retaliation claim in Count One was based on anything other than the same two acts that formed the basis of the jury's verdict on Count Two. Just like with Count Two, therefore, the verdict on Count One must be vacated. Nothing in this supplemental brief is intended to waive any argument addressing to Count One.

DEFENDANTS,

NEW HAVEN BOARD OF EDUCATION
and MARGARET-MARY GETHINGS

By  /s/ *Peter J. Murphy*
    Peter J. Murphy (ct26825)
    Chelsea C. McCallum (ct31586)
    Shipman & Goodwin LLP
    One Constitution Plaza
    Hartford, CT  06103-1919
    Telephone: (860) 25l-5950
    Facsimile: (860) 251-5316
    pjmurphy@goodwin.com
    cmccallum@goodwin.com
    Their Attorneys